Mario Tafur, Esq. (SBN: 329899)
BULLDOG LAW, P.C.
500 N. Central Avenue, Ste. 610
Glendale, CA 91203
Email: mario@thebulldog.law
elsy@thebulldog.law
Telephone: (949) 649-3007

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL HEABEART, JOEL MILLER, DYLAN MICHAUD, KYLE KELLEY, JUSTIN MORAN, MARÍA CECILIA LUCANERA, NOEL YOUNT, ISRAEL ALATRIZ, AARON DUNCAN, DYLAN MYBURGH, JAMES MICHAEL SMITH, and EDWARD C. ET AL. | Case No.: 4:25-cv-04473-DMR |
| Plaintiff, | PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF DEMAND FOR JURY TRIAL |
| v. | |
| COINBASE, INC., COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and DOES 1–100, | |
| Defendant. | |

## INTRODUCTION

1. This action arises from Coinbase's deliberate, reckless, or negligent conduct surrounding the catastrophic collapse of the Terra blockchain ecosystem in May 2022, specifically relating to the Wrapped LUNA ("WLUNA") token. Coinbase, the largest cryptocurrency exchange in the United States, markets itself as a reliable custodian, trusted by retail investors for accurate information, stable trading operations, and prudent management of digital assets. In reality,

Coinbase consistently places its own financial interests and strategic partnerships above its legal and contractual obligations to retail customers.

2. Coinbase maintained a close and conflicted relationship with Terraform Labs, the creator and primary controller of the Terra blockchain and its associated cryptocurrency, LUNA. Coinbase was not only privy to substantial private information through joint projects and direct communications but also held a substantial financial position in Terra's assets, creating an inherent conflict of interest analogous to major traditional financial scandals. Coinbase's conduct mirrors past well-known episodes involving institutions such as Enron and Lehman Brothers, where internal conflicts of interest and opacity harmed retail investors by obstructing the disclosure of material information and manipulating markets at critical junctures.

3. In May 2022, Coinbase announced what it falsely represented as a temporary trading suspension of WLUNA due to market conditions. In reality, Coinbase deliberately, recklessly, or negligently maintained an outage following this suspension, during which Coinbase materially altered the token designation from WLUNA to WLUNC, and refused to honor the immutable, publicly known smart-contract peg to the newly-issued LUNA token. This misrepresentation and failure to properly handle the digital asset conversion process unfairly benefited Coinbase at the direct expense of retail investors, who were deprived of millions of dollars of potential gains due to Coinbase's actions.

4. Coinbase compounded this wrongdoing by providing customers with false and misleading account records and tax documents that demonstrated dramatic discrepancies compared to blockchain data. For instance, Coinbase's internal documentation inaccurately showed purchases vastly exceeding actual investor transactions. One investor's 2021 tax documents indicated an impossibly high transaction value of approximately $76 million highlighting Coinbase's systematic use of inaccurate internal records distinct from verifiable blockchain ledgers.

5.  Plaintiffs are individual retail investors who placed trust in Coinbase's public assurances and market representations and have suffered substantial losses resulting from Coinbase's misconduct. Plaintiffs seek relief pursuant to federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), and applicable state common-law claims to hold Coinbase and associated defendants accountable for their deceptive conduct, breach of contract, and manipulation of digital asset trading, and to recover damages directly arising from Coinbase's wrongful actions.

## PARTIES

**Plaintiffs**

6.  **María Cecilia Lucanera** is an individual residing in California. At all relevant times, Ms. Lucanera was a Coinbase customer who purchased and held significant amounts of WLUNA through Coinbase's platform. Ms. Lucanera suffered substantial financial damages directly due to Coinbase's misconduct as described herein, particularly Coinbase's failure to honor the immutable smart contract peg to LUNA following the May 2022 suspension.

7.  **Kyle Kelley** is an individual residing in Florida. Mr. Kelley was a Coinbase customer and investor in WLUNA, who relied on Coinbase's representations about WLUNA's equivalence to Terra's native token, LUNA. Mr. Kelley suffered substantial financial harm directly attributable to Coinbase's false representations and its mishandling of the asset during and following the May 2022 outage.

8.  **Noel Yount** is an individual residing in Missouri. Ms. Yount held WLUNA tokens purchased via Coinbase. Her reliance on Coinbase's representations and assurances regarding WLUNA resulted in substantial financial losses after Coinbase suspended trading, maintained the subsequent outage, and improperly altered the asset designation.

9. **Israel Alatriz** is an individual residing in Nevada and an active-duty member of the United States military. While serving full-time, Mr. Alatriz relied on Coinbase's public representations that WLUNA was securely pegged 1:1 to Terra's native LUNA token through an immutable smart contract. Based on these assurances, he maintained a WLUNA position during the suspension period. Coinbase's failure to honor the smart contract peg and its subsequent asset reclassification prevented Mr. Alatriz from realizing substantial gains that would have occurred had the asset been handled in accordance with its contractual blockchain protocol. Despite Mr. Alatriz's numerous attempts to obtain information from Coinbase, he received no meaningful response. He spent his limited free time over the course of three years monitoring WLUNA's movements via blockchain explorers such as Etherscan, persistently searching for answers. His repeated efforts were met with silence, resulting in years of uncertainty, lost opportunity, and wasted time trying to recover what Coinbase had a duty to clarify and resolve.

10. **Edward C. Toal** is an individual residing in New Jersey. Mr. Toal purchased WLUNA through Coinbase. His losses are directly attributable to Coinbase's negligent or intentional conduct following the suspension, including Coinbase's improper and inaccurate internal record-keeping practices and Coinbase's obstruction of customer access to assets.

11. **James Michael Smith** is an individual residing in South Carolina, a single parent raising a son and a Veteran of the United States Army, honorably discharged. Believing Coinbase was a legitimate company and that WLUNA would regain strength, he purchased 6,103,107.33 WLUNA tokens as an investment based on its immutable smart contract before May 27, 2022. Following the suspension of WLUNA trading the day before the new LUNA launched, his investment peaked at $152,577,682.75 at $19 per coin, then fluctuated to around $7 before falling significantly. Mr. Smith attempted multiple times to withdraw his assets, submitting his South Carolina driver's license and concealed weapons permit over a hundred times, but

Coinbase's customer support claimed the images were "too fuzzy." Customer support also stated that WLUNA purchased before the suspension followed the new native token, yet his account now shows his holdings as worth $100.79. Three weeks after the suspension, Mr. Smith suffered an accident, exacerbating financial hardships, including risks of losing his home, vehicle, food, and medical care, and challenges in raising his son. He seeks recovery beyond the peak value of his investment, with interest and punitive damages, due to Coinbase's misconduct.

12. **Justin Moran** is a teacher residing in California, who invested in WLUNA during May 2022 based on Coinbase's representations that the token was equivalent to Terra Luna and secured by a 1:1 peg through an immutable smart contract. Relying on Coinbase's promotional materials and reputation as a regulated exchange, Mr. Moran viewed WLUNA as a long-term investment opportunity. His significant financial losses were incurred when Coinbase suspended trading and committed fraud, breach of contract, and misrepresentation.

13. **Aaron Duncan** is an individual residing in California, a United States Navy Veteran honorably discharged, husband to an active-duty Navy service member, business owner, and Chief Operating Officer of a nonprofit organization. As a disciplined investor, he relied on Coinbase's reputation as a secure and compliant platform. Trusting its assurances that WLUNA was a 1:1 wrapped version of Terra's LUNA token backed by an immutable smart contract, Mr. Duncan acquired 8,880,255.10 WLUNA tokens prior to the May 27, 2022 trading suspension. At its post-crash recovery peak, his investment reached $757,928,713.65 according to Coinbase's tax records and transaction documentation. Coinbase's misleading temporary suspension—immediately before the new LUNA token launched—stripped Mr. Duncan of his ability to convert or withdraw these assets. Despite numerous attempts and submission of identification, Coinbase failed to respond meaningfully. Coinbase later rebranded WLUNA to WLUNC and falsely reported his holdings as worth less than $150. Mr. Duncan received tax documents and

account summaries that grossly misrepresented his assets, adding financial and legal complications. For over three years, he was reassured to check the Coinbase platform or social media for updates that never came. As a family man supporting a military household and community, he endured significant emotional and financial strain. He seeks recovery of losses, interest, and punitive damages totaling nearly $758 million, backed by blockchain records and Coinbase's data.

14. **Joel Heabeart** is an individual from Michigan working in on-site operations management in the automotive industry. As a professional bound by accountability and integrity, he relied on Coinbase's reputation as a secure and compliant platform. Trusting its assurances that WLUNA was a 1:1 wrapped version of Terra's LUNA token backed by an immutable smart contract, Mr. Heabeart purchased WLUNA tokens prior to the May 27, 2022 trading suspension, directly from his bank account. At its post-crash recovery peak, his assets were worth $111,523,934.29 at $19.54 per token, validated via Etherscan and Ethvalidate. Coinbase's misleading temporary suspension immediately before the new LUNA token launched on May 28, 2022 stripped Mr. Heabeart of his ability to convert or withdraw these assets. Despite numerous attempts, Coinbase failed to respond meaningfully. Coinbase later rebranded WLUNA to WLUNC and falsely reported his holdings as worth significantly less. For over three years, he was reassured to check the Coinbase platform or social media for updates that never came. As a family man supporting his community, he endured significant emotional and financial strain. He seeks recovery of losses, interest, and punitive damages totaling $111,523,934.29, backed by blockchain records.

15. **Dylan Michaud** is an individual residing in Minnesota, who firmly believes that maintaining the 1:1 peg between Wrapped LUNA (WLUNA), an ERC-20 token, and Terra Luna (LUNA) is critical to preserving trust and functionality within crypto. He holds Coinbase accountable for the immutability of the asset and its binding investment contract. Coinbase's failure to uphold its

word and advertisements resulted in significant financial losses, financial hardships, and mental and emotional damage to himself and others. These assets and contracts are advertised as immutable and trustless and must remain so.

16. **Joel Miller** is an individual residing in Louisiana, a small business owner and father of two. Mr. Miller invested in WLUNA in April and May 2022, trusting Coinbase's representations of its equivalence to Terra Luna and the security of its smart contract. As a Coinbase customer, he relied on its platform's assurances, promotional emails, and blog posts touting WLUNA's stability. His investment, intended to fund his children's education, was decimated by Coinbase's May 28, 2022 suspension and conversion to WLUNC, which rendered his holdings nearly worthless. Despite contacting Coinbase support, he received no resolution, suffering significant financial loss and emotional distress. Mr. Miller seeks full recovery of his losses, estimated at millions based on Luna 2's $6–$20 range, plus punitive damages for Coinbase's fraud and negligence.

17. **Dylan Myburgh** is an individual from New Zealand, a freelance graphic designer and cryptocurrency enthusiast, who invested in WLUNA in early May 2022, drawn by Coinbase's assurances of its 1:1 peg to Terra Luna and its secure custodial services. As a resident of New Zealand, he relied on Coinbase's global reputation, promotional materials, and platform interface, which emphasized WLUNA's stability and Ethereum-backed security. His investment, intended to support his career transition and family, was obliterated by Coinbase's May 28, 2022 suspension and conversion to WLUNC, which devalued his holdings to near zero. Mr. Myburgh's attempts to access his transaction history were thwarted by Coinbase's disabled "arrow" feature, and his inquiries to support went unanswered, causing significant financial loss and emotional distress. He seeks full recovery of his losses, estimated at millions based on Luna 2's $6–$20 range, plus punitive damages for Coinbase's deceptive and negligent conduct.

## DEFENDANTS

18. **Coinbase, Inc.** is a corporation incorporated under the laws of Delaware, with its principal place of business in San Francisco, California. Coinbase, Inc. operates as one of the largest cryptocurrency exchanges and custodial platforms in the United States. Coinbase, Inc. is responsible for all actions and misconduct alleged herein, including fraudulent misrepresentations, improper handling of WLUNA tokens, breaches of contract, and improper asset conversions.

19. **Coinbase Global, Inc.** is a publicly traded holding company incorporated in Delaware, which wholly owns and controls Coinbase, Inc. Coinbase Global, Inc. exercises direct oversight and control over Coinbase, Inc. and was involved in, and had knowledge of, the misconduct described herein.

20. **Brian Armstrong** is an individual who, at all relevant times, served as the Chief Executive Officer and Chairman of Coinbase Global, Inc. and Coinbase, Inc. Mr. Armstrong had direct oversight, decision-making authority, and control over the corporate defendants and was responsible for approving, directing, or otherwise participating in the actions leading to Plaintiffs' losses as detailed herein.

21. **Does 1–100** are currently unknown entities, affiliates, officers, directors, employees, or agents of Coinbase, Inc. and Coinbase Global, Inc., who directly or indirectly participated in or facilitated the wrongful actions alleged herein, including fraudulent misrepresentations, mishandling of WLUNA tokens, improper record-keeping, and related misconduct. Plaintiffs will seek to identify and amend this Complaint to name these defendants once their identities and specific roles in the misconduct have been revealed through discovery.

22. Although Plaintiffs reside in different states, purchased and held varying amounts of WLUNA, and relied upon Coinbase's representations through individually distinct means and at different times, all of their claims arise from the same common nucleus of operative facts. Specifically, each Plaintiff's harm resulted directly from Coinbase's misconduct related to the suspension of WLUNA trading on May 27, 2022, Coinbase's subsequent improper maintenance of an outage affecting WLUNA, its misleading representations regarding the temporary nature of the suspension, its systematic failure to correctly process the immutable smart contract peg to the new LUNA token, and Coinbase's internal use of inaccurate records and tax documentation distinctly separate from verifiable blockchain ledgers. These uniform acts and omissions by Coinbase caused the direct, foreseeable, and common harm experienced by all Plaintiffs, thereby justifying permissive joinder of their claims under Rule 20 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

23. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically, violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78t(a)), Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

24. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all related state-law claims because they form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state-law claims are integrally connected to, and derive from, the same nucleus of operative facts as their federal claims.

25. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Coinbase maintains its principal place of business in this district, and a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this district. Specifically,

Coinbase's decisions regarding the listing, suspension, subsequent outage, and improper handling of WLUNA tokens took place at Coinbase's headquarters in San Francisco, California.

26. This Court has personal jurisdiction over Defendants Coinbase, Inc. and Coinbase Global, Inc., as they maintain continuous, systematic, and substantial business operations in California, including operating their primary headquarters and directing the activities giving rise to Plaintiffs' claims within this district.

27. This Court has personal jurisdiction over Defendant Brian Armstrong because, at all relevant times, he directed, participated in, or oversaw the misconduct described herein from Coinbase's headquarters located within this judicial district. Armstrong's decisions and conduct directly and foreseeably impacted Plaintiffs, thus satisfying California's long-arm statute and constitutional due-process requirements.

28. This Court further has jurisdiction over Defendants Does 1–100 because their identities, once ascertained through discovery, are anticipated to reveal individuals or entities who reside in, or have substantial minimum contacts with, California, and whose wrongful acts or omissions substantially affected Plaintiffs within this jurisdiction.

**FACTUAL BACKGROUND**

29. Plaintiffs' claims arise from Coinbase's misconduct in connection with its handling of the Wrapped LUNA ("WLUNA") token, a cryptocurrency asset issued as an Ethereum-based counterpart of Terra's native cryptocurrency, LUNA. This section provides an overview of the relevant background necessary to understand Coinbase's relationship with Terraform Labs, the technical characteristics and representations associated with WLUNA, and Coinbase's improper handling of WLUNA before, during, and after the May 2022 collapse of the Terra ecosystem. Specifically, this section will demonstrate Coinbase's conflicts of interest arising from its direct

relationship and financial involvement with Terraform Labs, Coinbase's materially misleading statements and omissions about the nature of WLUNA and the purported temporary suspension of trading, Coinbase's subsequent maintenance of an outage that benefited its own financial interests to the detriment of retail investors, and Coinbase's systematic failure to correctly process WLUNA's immutable smart contract peg to the new LUNA token. Additionally, this section will describe Coinbase's use of misleading internal recordkeeping distinct from blockchain data, and its active concealment of material information from Plaintiffs. The harm and damages suffered by each Plaintiff will be described to demonstrate the common injury resulting from Coinbase's wrongful conduct, which collectively gives rise to Plaintiffs' claims.

## TERRA, LUNA, AND THE WLUNA TOKEN

30. The events underlying this case involve the Terra blockchain, a cryptocurrency ecosystem developed by Terraform Labs. Terra's primary native cryptocurrency, LUNA, was widely marketed as a digital asset enabling users to participate in decentralized financial protocols and algorithmic stablecoins, such as UST. Coinbase, one of the largest and most influential cryptocurrency exchanges in the United States, closely collaborated with Terraform Labs, benefiting both from early knowledge of developments and from strategic financial positions it took in Terra-related assets.

31. To facilitate greater accessibility to LUNA within Ethereum's broader blockchain ecosystem, Terraform Labs introduced "Wrapped LUNA" or WLUNA—an Ethereum-compatible ERC-20 token purportedly pegged at a consistent 1:1 ratio with Terra's native LUNA token. This pegged relationship was immutable and encoded into the blockchain, assuring retail investors that each unit of WLUNA was always redeemable or exchangeable for one unit of native LUNA, maintaining price equivalence.

32. Coinbase listed WLUNA on its exchange and prominently promoted it to customers as directly equivalent to, and effectively interchangeable with, the native LUNA token. Coinbase repeatedly marketed WLUNA's pegged status and liquidity, explicitly leveraging this supposed stability and transparency to encourage retail investors, including Plaintiffs, to invest. Plaintiffs relied heavily on Coinbase's representations of WLUNA's stability, 1:1 peg, and easy convertibility.

33. Crucially, Coinbase maintained a close financial and operational relationship with Terraform Labs. Coinbase had direct and privileged access to non-public information regarding Terra's blockchain development, market strategies, and potential vulnerabilities. Coinbase also held substantial positions in Terra assets, placing it in an inherently conflicted position between its fiduciary obligations to retail customers and its strategic, proprietary financial interests. This conflict of interest set the stage for Coinbase's subsequent misconduct surrounding the May 2022 collapse of the Terra ecosystem and the WLUNA token.

**THE MAY 2022 TERRA COLLAPSE AND COINBASE'S SUSPENSION OF WLUNA**

34. In early May 2022, the Terra blockchain ecosystem experienced a rapid and catastrophic collapse, triggered by severe instability in its primary algorithmic stablecoin, UST. This event precipitated a near-total crash in the market value of Terra's native cryptocurrency, LUNA, and consequently, its Ethereum-wrapped counterpart, WLUNA. As a result of this collapse, retail investors holding WLUNA faced significant financial losses.

35. On May 27, 2022, Coinbase announced via public statements, including its official website and social media channels, that trading in WLUNA would be "temporarily" suspended due to market conditions. Coinbase explicitly characterized this action as provisional, implying that normal trading operations would resume after a brief pause. This representation was materially misleading because Coinbase never intended, or subsequently failed, to restore WLUNA trading.

36. Following the initial suspension announcement, Coinbase maintained an outage, deliberately or recklessly prolonging a suspension of WLUNA trading and preventing accurate conversion of WLUNA to the newly issued LUNA tokens as stipulated by the immutable smart contract protocol. Coinbase further exacerbated investor confusion by altering the displayed asset name from "WLUNA" to "Wrapped LUNA Classic (WLUNC)" on its exchange platform, thereby effectively severing the publicly guaranteed peg to the new LUNA token. Coinbase's refusal to properly honor or execute the pegged conversion benefited Coinbase financially at the expense of Plaintiffs and other retail investors.

37. Coinbase's misleading communications, subsequent prolonged outage, improper asset renaming, and mishandling of WLUNA's smart contract peg collectively deprived Plaintiffs of the opportunity to realize substantial potential recoveries through timely and proper conversion of WLUNA holdings into new LUNA tokens. Coinbase's conduct during this critical period thus directly resulted in substantial and quantifiable economic harm to each Plaintiff.

## COINBASE'S DECEPTIVE POST-SUSPENSION CONDUCT

38. Following the May 27, 2022, suspension and prolonged outage of WLUNA trading, Coinbase engaged in a pattern of deceptive conduct designed to obscure its mishandling of investor assets and minimize public awareness of its internal failures. Coinbase consistently provided false, misleading, and incomplete communications to investors regarding the status of WLUNA and their associated accounts. Notably, Coinbase represented to its customers that WLUNA holdings were accurately maintained and documented, despite Coinbase's internal records deviating substantially from publicly verifiable blockchain data.

39. For example, Coinbase issued materially inaccurate tax and account statements to certain Plaintiffs, most notably Plaintiff Lucanera, whose Coinbase-issued 2021 tax documents falsely indicated an impossible acquisition cost of approximately $76 million in WLUNA tokens

dramatically contradicting blockchain ledger entries. This discrepancy reveals that Coinbase's internal documentation systems were entirely separate from blockchain-validated records, undermining Coinbase's repeated representations of transparency, accuracy, and blockchain-backed reliability.

40. Coinbase further impeded customer attempts to access, transfer, or convert WLUNA assets. Coinbase's actions effectively blocked Plaintiffs' ability to independently execute trades or conversions of WLUNA into new LUNA tokens elsewhere, exacerbating Plaintiffs' financial harm and directly benefiting Coinbase by minimizing its own exposure to market losses and conversion obligations.

41. Coinbase additionally suppressed and failed to respond adequately to investor complaints and inquiries regarding WLUNA assets. Coinbase systematically disregarded, provided misleading responses to, or inadequately addressed customer inquiries about the WLUNA outage, thereby concealing its misconduct and further aggravating the harm suffered by Plaintiffs.

42. Through these actions, Coinbase profited directly or indirectly from the WLUNA market collapse, suspension, prolonged outage, and improper handling of the asset conversion process, at Plaintiffs' expense. Coinbase's deceptive conduct and deliberate or reckless failure to accurately process the immutable smart contract and subsequent asset conversion deprived Plaintiffs of significant economic opportunities and caused substantial financial losses.

## HARM AND DAMAGE TO PLAINTIFFS

43. As a direct and proximate result of Coinbase's deliberate, reckless, or negligent misconduct surrounding the suspension, prolonged outage, misrepresentations, and improper handling of WLUNA, each Plaintiff suffered substantial financial harm. Coinbase's false representations regarding WLUNA's status, Coinbase's failure to accurately and timely execute the immutable

smart contract peg to new LUNA, and Coinbase's systematic obstruction of Plaintiffs' access to their assets prevented Plaintiffs from realizing significant economic gains or mitigating their substantial losses.

44. Plaintiffs each experienced economic injuries particularized by the specific amount and timing of their WLUNA investments, but uniformly arising from Coinbase's singular course of misconduct. Had Coinbase accurately processed WLUNA conversions pursuant to the immutable blockchain protocol and provided timely and accurate information, each Plaintiff could have realized substantial value through prompt conversion to the newly issued LUNA token, consistent with Coinbase's prior public representations.

45. The specific harms and financial damages experienced by each Plaintiff, detailed in the individual descriptions above, reflect the common injury stemming from Coinbase's wrongful actions. While the precise amounts and timings of losses differ among Plaintiffs, each Plaintiff's injury arises from the identical wrongful conduct by Coinbase, its improper handling of WLUNA assets, false communications, and failure to accurately and timely execute the immutable token peg and associated conversions.

46. Plaintiffs thus seek recovery of their damages, including but not limited to lost value and opportunities arising from Coinbase's improper suspension and outage, failure to process asset conversions accurately, misrepresentation of the token's status, and deliberate or negligent obstruction of Plaintiffs' access to their investments. The damages claimed herein represent the direct and foreseeable consequence of Coinbase's misconduct as described throughout this Complaint.

///

///

# CLAIMS FOR RELIEF

## First Cause of Action: Violation of § 10(b) of the Exchange Act and SEC Rule 10b-5

### (Securities Fraud) Against All Defendants

47. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

48. Coinbase knowingly, recklessly, or negligently disseminated materially false and misleading statements to Plaintiffs concerning the WLUNA token. Specifically, Coinbase falsely represented WLUNA's 1:1 peg to Terra's native LUNA token and explicitly labeled the May 27, 2022, trading suspension as temporary, while knowing or recklessly disregarding the truth that Coinbase would not reinstate WLUNA trading, nor honor the token's conversion pursuant to the immutable blockchain protocol.

49. Coinbase's representations and omissions were materially false and misleading at the time made because: a. Coinbase described the suspension of WLUNA trading as temporary, misleading investors into believing the token's trading and conversion functionalities would resume, despite Coinbase's internal knowledge that it would not restore trading or properly process conversions. b. Coinbase misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token. After the collapse, Coinbase failed to honor or accurately implement this peg, rendering its prior assurances materially false. c. Coinbase's account statements and tax documentation provided to Plaintiffs were materially inaccurate, generated from internal systems distinct from blockchain-ledger records, further misleading investors regarding their holdings and transaction histories.

50. Coinbase had actual knowledge or recklessly or negligently disregarded the falsity of these statements and omissions. Coinbase maintained a close relationship and substantial investment positions with Terraform Labs and possessed significant, non-public knowledge regarding WLUNA's vulnerabilities, market conditions, and the impending and ongoing collapse of the

Terra ecosystem. Coinbase therefore either knew, should have known, or acted with reckless disregard to the truth when making materially false and misleading representations about WLUNA and the suspension.

51. Coinbase made these false and misleading statements with the intent to deceive, manipulate, or defraud investors, including Plaintiffs, or, at minimum, with reckless disregard for the truth. Coinbase directly benefited from the prolonged suspension and outage, minimizing its financial exposure at Plaintiffs' expense.

52. Plaintiffs justifiably relied upon Coinbase's representations and assurances when deciding to hold or purchase WLUNA, reasonably expecting that Coinbase's information regarding WLUNA and its suspension was accurate and truthful.

53. Plaintiffs suffered direct and substantial economic harm as a result of Coinbase's misrepresentations, omissions, and wrongful conduct. Had Plaintiffs known the truth that Coinbase would not honor WLUNA's immutable smart contract peg nor resume trading they would have mitigated their losses or avoided investing entirely.

54. Coinbase's fraudulent conduct directly and proximately caused Plaintiffs' substantial financial losses. Plaintiffs are therefore entitled to damages, interest, attorneys' fees, and costs as provided under applicable federal securities laws, specifically Section 10(b) of the Exchange Act and SEC Rule 10b-5.

**Second Cause of Action: Violation of § 20(a) of the Exchange Act (Control Person Liability)**

**Against Coinbase Global and Brian Armstrong**

55. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

56. Defendants Coinbase Global, Inc. and Brian Armstrong acted as controlling persons of Coinbase, Inc. within the meaning of Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)). Coinbase

Global, Inc. is the parent entity that wholly owns and directly controls Coinbase, Inc., exercising managerial, operational, financial, and strategic control over Coinbase, Inc. Brian Armstrong, as CEO and Chairman, exercised day-to-day authority, decision-making, and oversight over Coinbase, Inc. and Coinbase Global, Inc., directing corporate policies, actions, and communications, including those giving rise to Plaintiffs' injuries.

57. Coinbase Global, Inc. and Brian Armstrong had the power to influence, direct, control, and manage Coinbase, Inc.'s deceptive and wrongful conduct, including the materially misleading public statements about the temporary nature of the WLUNA trading suspension, the improper maintenance of the outage, Coinbase's inaccurate internal accounting and record-keeping practices, and Coinbase's refusal to honor the immutable smart contract peg conversion. These Defendants directly or indirectly caused Coinbase, Inc. to disseminate materially false and misleading statements to Plaintiffs, as detailed above.

58. Coinbase Global, Inc. and Brian Armstrong either knew, or should have known, of Coinbase, Inc.'s materially misleading statements and fraudulent omissions regarding WLUNA and the suspension's true nature. These Defendants possessed actual knowledge, or recklessly or negligently disregarded, the falsity of Coinbase, Inc.'s public assurances and representations due to their positions of authority and direct oversight of Coinbase, Inc.'s operations.

59. By virtue of their direct control, influence, and oversight, Coinbase Global, Inc. and Brian Armstrong are liable as controlling persons under Section 20(a) of the Exchange Act for Coinbase, Inc.'s violations of Section 10(b) and SEC Rule 10b-5.

60. Plaintiffs suffered significant economic harm directly resulting from Coinbase, Inc.'s underlying securities fraud violations. Therefore, Coinbase Global, Inc. and Brian Armstrong, as control

persons, are jointly and severally liable to Plaintiffs for damages, attorneys' fees, costs, interest, and other appropriate relief provided by law under Section 20(a).

### Third Cause of Action: Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c)) Against All Defendants

61. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

62. Coinbase, Inc., Coinbase Global, Inc., Brian Armstrong, and Does 1–100, as detailed herein, constitute an enterprise under 18 U.S.C. § 1961(4). Defendants maintained an ongoing, coordinated, and systematic relationship functioning collectively as a continuous enterprise, designed and operated to benefit financially from the repeated improper handling and manipulation of digital asset transactions, specifically with respect to WLUNA tokens.

63. Defendants engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961(1) and (5), involving multiple related predicate acts committed intentionally, recklessly, or negligently. These predicate acts include, but are not limited to: a. **Wire fraud (18 U.S.C. § 1343):** Defendants intentionally, recklessly, or negligently used interstate wire communications, including but not limited to website announcements, emails, social media postings, and electronic dissemination of false account statements and tax documents, to materially misrepresent the nature and status of WLUNA, the temporary nature of the trading suspension, and Coinbase's ability and willingness to execute conversions under WLUNA's immutable smart contract, with the intent of inducing Plaintiffs to hold or purchase WLUNA. b. **Mail fraud (18 U.S.C. § 1341):** Defendants intentionally, recklessly, or negligently distributed materially false, misleading, or fraudulent account records, tax documents, and related communications to Plaintiffs through the U.S. mail or private mail carriers, directly furthering the fraudulent scheme to obscure Coinbase's misconduct, misrepresent asset valuations and trading histories, and deprive Plaintiffs of accurate asset information.

64. Defendants' predicate acts constitute a pattern of racketeering activity, as they were not isolated occurrences but rather related events with a common purpose, participants, victims, and methods of commission, executed repeatedly over a substantial period, affecting multiple retail investors, including Plaintiffs. Coinbase's systematic mishandling and manipulation of immutable smart-contract protocols, inaccurate record-keeping, materially false public and private representations, and related fraudulent activities demonstrate continuity, repeated conduct, and intentional or reckless disregard for the truth.

65. Defendants conducted or participated, directly or indirectly, in the management or operation of the enterprise through the pattern of racketeering activity described above. Defendants used the Coinbase enterprise to unlawfully enrich themselves at the direct expense of Plaintiffs, who reasonably relied on Coinbase's public assurances, transparent record-keeping representations, and commitments regarding the accurate execution of WLUNA transactions and conversions.

66. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiffs suffered substantial financial injuries, including lost opportunities, diminished asset values, and economic harm directly arising from Defendants' misconduct.

67. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages, attorneys' fees, costs, and other relief that the Court deems just and proper.

**Fourth Cause of Action: Breach of Contract Against Coinbase, Inc.**

68. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

69. Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement. Under the User Agreement, Coinbase explicitly agreed, among other things, to accurately and timely execute customer transactions, process digital asset conversions correctly in accordance with applicable blockchain protocols, provide truthful and

accurate account statements and tax documentation, and maintain clear and transparent communication with Plaintiffs regarding their digital assets.

70. Coinbase breached the User Agreement through multiple wrongful actions and omissions, including, but not limited to: a. Improperly suspending WLUNA trading on May 27, 2022, while falsely characterizing such suspension as temporary and failing to resume trading or provide timely and accurate conversion options; b. Refusing or failing to execute the immutable smart-contract-based conversion of WLUNA into the new LUNA token in accordance with the terms of Coinbase's representations and blockchain protocols; c. Failing to maintain accurate and verifiable records of Plaintiffs' transactions, holdings, and associated financial data, instead issuing materially false account and tax statements; d. Failing to provide Plaintiffs with accurate and timely information regarding WLUNA's status and associated trading and conversion capabilities.

71. Coinbase's breaches of contract directly deprived Plaintiffs of significant economic opportunities and caused Plaintiffs to suffer substantial financial losses. Plaintiffs were unable to mitigate their damages or recover the expected value from their WLUNA holdings due directly to Coinbase's improper contractual breaches.

72. As a direct and proximate result of Coinbase's contractual breaches, Plaintiffs have suffered substantial damages and are entitled to monetary relief, including consequential and compensatory damages, attorneys' fees, interest, and costs, in amounts to be determined at trial.

///

///

///

## Fifth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing

## Against Coinbase, Inc.

73. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

74. Under California law, every contract contains an implied covenant of good faith and fair dealing, obligating each party to the contract to act honestly, fairly, and reasonably, and not to take actions that undermine the other party's contractual rights and benefits.

75. Coinbase's User Agreement with Plaintiffs implicitly required Coinbase to act in good faith when performing its contractual obligations, including accurately processing transactions, truthfully communicating the status of digital assets, transparently maintaining accurate internal records, and timely executing blockchain-based conversions of Plaintiffs' digital assets.

76. Coinbase breached this implied covenant by, among other acts and omissions: a. Falsely characterizing the suspension of WLUNA trading as temporary, despite knowing, or recklessly or negligently disregarding, that Coinbase would not resume trading or properly handle WLUNA's asset conversion according to blockchain protocol; b. Intentionally, recklessly, or negligently maintaining an outage and obstructing Plaintiffs' ability to access, transfer, or convert their WLUNA holdings, thereby unfairly benefiting Coinbase at Plaintiffs' expense; c. Utilizing and disseminating materially false account statements and tax documentation generated through internal systems separate from verifiable blockchain data, undermining Plaintiffs' ability to properly manage and accurately report their financial positions; d. Refusing or failing to honor the WLUNA immutable smart contract peg conversion to new LUNA tokens, thereby depriving Plaintiffs of contractual benefits inherent in their agreement and investment expectations.

77. Coinbase's actions directly undermined Plaintiffs' contractual expectations and rights to fair, honest, and reasonable treatment and deprived Plaintiffs of significant economic benefits and opportunities they reasonably anticipated receiving under the User Agreement.

78. As a direct and proximate result of Coinbase's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered substantial financial harm, including lost value, economic opportunity costs, and other consequential damages.

79. Plaintiffs are therefore entitled to monetary damages, attorneys' fees, interest, costs, and such other relief as the Court deems just and proper.

### Sixth Cause of Action: Conversion Against Coinbase, Inc.

80. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

81. At all relevant times, Plaintiffs possessed clear and rightful ownership interests in their WLUNA tokens and the rights associated with converting these tokens to the newly issued LUNA token, pursuant to the immutable smart contract protocol. Plaintiffs' property rights were clearly established and verifiable on the blockchain ledger.

82. Coinbase wrongfully interfered with Plaintiffs' ownership rights by improperly maintaining the prolonged outage following the purportedly temporary trading suspension, failing or refusing to execute Plaintiffs' rightful conversion of WLUNA tokens to the new LUNA tokens, and obstructing Plaintiffs' timely and proper access to these assets. Coinbase exercised unauthorized dominion and control over Plaintiffs' property by intentionally, recklessly, or negligently failing to process and honor these conversions pursuant to the immutable smart contract terms.

83. Coinbase's interference deprived Plaintiffs of the ability to access, control, transfer, or realize the full economic value of their WLUNA tokens, including the opportunity to convert such tokens

into the newly issued LUNA tokens at the established 1:1 peg ratio. Coinbase's actions therefore constitute conversion under California law.

84. Coinbase's unauthorized interference with Plaintiffs' rightful ownership and possessory interests in their WLUNA tokens and associated conversion rights directly and foreseeably caused Plaintiffs substantial economic harm, loss of value, and other consequential financial damages.

85. Plaintiffs are therefore entitled to damages in an amount sufficient to fully compensate for their economic losses resulting from Coinbase's acts of conversion, along with attorneys' fees, interest, costs, and any other relief deemed appropriate by the Court.

### Seventh Cause of Action: Unjust Enrichment Against Coinbase, Inc.

86. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

87. As detailed throughout this Complaint, Coinbase wrongfully and unjustly benefited at the direct expense of Plaintiffs through its improper conduct related to the suspension and prolonged outage of WLUNA trading, failure to process conversions pursuant to immutable smart-contract protocols, materially misleading representations about the temporary nature of the suspension, and the systematic use and dissemination of materially inaccurate internal records and tax documents distinct from publicly verifiable blockchain data.

88. Coinbase's wrongful conduct allowed Coinbase to unjustly retain economic benefits, including but not limited to transaction fees, management fees, and other economic gains associated with holding Plaintiffs' WLUNA tokens during the outage period, as well as avoiding financial losses or obligations Coinbase would have incurred had it accurately and timely honored the WLUNA-to-LUNA conversion.

89. Coinbase accepted and retained these benefits under circumstances that make it inequitable and unjust for Coinbase to retain them without compensating Plaintiffs, as Coinbase's misconduct

was intentional, reckless, or negligent, directly resulting in substantial economic harm and lost value to Plaintiffs.

90. Plaintiffs lack an adequate remedy at law fully addressing Coinbase's unjust enrichment; thus, equity and good conscience demand restitution of all amounts by which Coinbase was unjustly enriched at Plaintiffs' expense.

91. Plaintiffs are therefore entitled to restitution, disgorgement of Coinbase's improperly obtained profits and benefits, attorneys' fees, costs, interest, and any other relief the Court deems just and proper.

**Eighth Cause of Action: Fraud (Intentional Misrepresentation) Against Coinbase, Inc.**

92. Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

93. Coinbase knowingly or recklessly made materially false representations and omissions concerning WLUNA, the nature and status of its trading suspension, and Coinbase's willingness and ability to execute conversions pursuant to WLUNA's immutable smart-contract peg to the new LUNA tokens.

94. Coinbase specifically made materially false statements, including but not limited to: a. Representing WLUNA as permanently and reliably pegged at a 1:1 ratio with Terra's native LUNA token, despite Coinbase's subsequent deliberate refusal or reckless failure to honor or execute the conversion as promised; b. Falsely characterizing the suspension of WLUNA trading as temporary, knowing or recklessly disregarding that Coinbase would never reinstate trading or properly process the conversions as required; c. Providing materially inaccurate account statements and tax documentation, falsely representing Plaintiffs' asset values, transaction histories, and acquisition costs such as Plaintiff Lucanera's 2021 tax document falsely indicating

purchases totaling approximately $76 million in direct contradiction of blockchain-verified ledger entries.

95. Coinbase knew, should have known, or recklessly disregarded the falsity of these representations at the time they were made. Coinbase maintained a close relationship with Terraform Labs and possessed significant private information regarding the WLUNA token, market conditions, and the impending or ongoing collapse, placing Coinbase in a position to know, or recklessly or negligently disregard, the falsity of its representations.

96. Coinbase intended that Plaintiffs rely upon these materially false and misleading statements and omissions, encouraging Plaintiffs to invest in, hold, or refrain from transferring their WLUNA tokens based upon the belief that trading and conversion functions would be accurately and timely restored.

97. Plaintiffs justifiably relied on Coinbase's materially false representations and omissions, reasonably believing Coinbase's publicly disseminated information and assurances regarding WLUNA's status, the temporary nature of its suspension, and Coinbase's blockchain-supported accuracy. Plaintiffs would not have acted as they did—purchasing, holding, or refraining from transferring WLUNA had they known the truth.

98. Coinbase's fraudulent misrepresentations and omissions directly and proximately caused Plaintiffs substantial financial harm, including significant economic losses and lost opportunities, as detailed herein.

99. Coinbase's conduct was fraudulent, intentional, reckless, oppressive, malicious, and carried out with conscious disregard of Plaintiffs' rights. As a result, Plaintiffs are entitled to compensatory damages, punitive damages, attorneys' fees, costs, interest, and any further relief deemed appropriate by the Court.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, granting the following relief: 100. An award of compensatory damages sufficient to fully and fairly compensate Plaintiffs for all economic losses sustained as a direct and proximate result of Defendants' wrongful acts and omissions alleged herein, including lost investment value, consequential damages, and lost economic opportunities; 101. An award of punitive damages sufficient to punish Coinbase's intentional, reckless, oppressive, fraudulent, and malicious conduct and to deter similar future misconduct; 102. Restitution and disgorgement of all amounts by which Defendants were unjustly enriched at Plaintiffs' expense; 103. Pre-judgment and post-judgment interest at the maximum rate allowed by law; 104. Attorneys' fees, expert fees, costs, and expenses incurred in pursuing this action; 105. Such other and further relief as this Court deems just, equitable, and proper.

# DEMAND FOR JURY TRIAL

106.      Plaintiffs hereby demand a trial by jury on all claims and issues so triable.


Date: July 22,  2025                            Respectfully submitted,


                                                 _/s/ Mario Tafur_____
MARIO TAFUR, SBN 329899
500 N. CENTRAL AVENUE, SUITE 610
GLENDALE, CA 91203
PHONE: 855-216-3990
Email: Mario@thebulldog.law;
elsy@thebulldog.law
Attorney for Plaintiffs