Randall Scott Luskey (SBN: 240915)
rluskey@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Additional Counsel Listed on Following Page*

*Attorneys for Defendants*
*Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOEL HEABEART, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>COINBASE, INC., *et al.*,<br><br>*Defendants*. | Case No.: 3:25-cv-04473-JD<br><br>Private Securities Litigation Reform Act<br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 30, 2025<br>Time: 10:00 AM<br>Judge Hon. James Donato |

Paul D. Brachman (admitted *pro hac vice*)
pbrachman@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7440
Facsimile: (202) 379-4098

Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)
kbunting@paulweiss.com
mpisem@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........................ - 1 -

II. STATEMENT OF ISSUES TO BE DECIDED ........................ - 3 -

III. FACTUAL BACKGROUND ........................ - 3 -

IV. LEGAL STANDARD ........................ - 5 -

V. ARGUMENT ........................ - 6 -

A. Plaintiffs and Coinbase Agreed to Final and Binding Individual Arbitration. ........................ - 7 -

B. The Arbitration Agreement in the 2025 User Agreement Is Valid and Enforceable, and it Applies to Plaintiffs' Claims ........................ - 8 -

1. The Arbitration Agreement in the User Agreement Is Valid and Enforceable. ........................ - 8 -

2. Plaintiffs' Claims in Counts III through VIII Fall Within the Scope of the Arbitration Agreement in the 2025 User Agreement. ........................ - 9 -

C. In the Alternative, the 2022 User Agreement Requires Arbitration. ........................ - 11 -

D. This Case Should Be Stayed Pending Completion of Plaintiffs' Individual Arbitration Proceedings. ........................ - 12 -

VI. CONCLUSION ........................ - 13 -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarwal* v. *Coinbase, Inc.*,
685 F. Supp. 3d 867 (N.D. Cal. 2023) ....................11, 12

*Alfia* v. *Coinbase Glob., Inc.*,
2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022)....................9, 11

*AT&T Techs., Inc.* v. *Commc'n Workers of Am.*,
475 U.S. 643 (1986)....................7

*B.D.* v. *Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (Cal Ct. App. 2022) ....................7

*Cape Flattery Ltd.* v. *Titan Mar., LLC*,
647 F.3d 914 (9th Cir. 2011) ....................9

*Chiron Corp.* v. *Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....................6

*Cordero* v. *Coinbase, Inc.*,
2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025)....................2, 7, 11, 12

*Donovan* v. *Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) ....................11, 12

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................8

*Ghazizadeh* v. *Coursera, Inc.*,
737 F.Supp.3d 911, 933-34 (N.D. Cal. 2024)....................8

*Gilmer* v. *Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................6, 9

*Goldman, Sachs & Co.* v. *City of Reno*,
747 F.3d 733 (9th Cir. 2014) ....................7

*Green Tree Fin. Corp.* v. *Randolph*,
531 U.S. 79 (2000)....................9

*Holl* v. *United Parcel Service, Inc.*,
2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ....................12

*J.J. Ryan & Sons, Inc.* v. *Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988) ....................3

*Kamath* v. *Coinbase, Inc.*,
2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) .......... 1, 8, 11, 12

*Mahmoud* v. *Coinbase, Inc.*,
2022 WL 18799657 (Cal. Super. Oct. 19, 2022) .......... 11

*Marselian* v. *Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......... 3

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 9

*Neurosigma, Inc.* v. *De Salles*,
2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) .......... 9

*Nghiem* v. *NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994) .......... 7

*Nguyen* v. *Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 7

*Nguyen* v. *Tran*,
157 Cal. App. 4th 1032 (Cal. Ct. App. 2007) .......... 3

*Pearl* v. *Coinbase Glob., Inc.*,
2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023) .......... 11, 12

*Portland Gen. Elec. Co.* v. *U.S. Bank Trust Nat'l Ass'n*,
218 F.3d 1085 (9th Cir. 2000) .......... 5

*Rent-A-Center, West, Inc.* v. *Jackson*,
561 U.S. 63 (2010) .......... 9, 12

*Sadlock* v. *Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 8

*Sam Reisfeld & Son Import Co.* v. *S.A. Eteco*,
530 F.2d 679 (5th Cir. 1976) .......... 3

*Shearson/Am. Express, Inc.* v. *McMahon*,
482 U.S. 220 (1987) .......... 9

*Smith* v. *Spizzirri*,
601 U.S. 472 (2024) .......... 12

*United States* v. *Sutcliffe*,
505 F.3d 944 (9th Cir. 2007) .......... 6

*Tamsco Props., LLC* v. *Langemeier*,
597 F. Appx. 428 (9th Cir. 2015) .......... 3

*Tracer Research Corp.* v. *Nat'l Envtl. Servs. Co.*,
42 F.3d 1292 (9th Cir. 1994) .......... 9

*In re Uber Techs., Inc.*,
2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) .......... 8

*Volt Info. Scis., Inc.* v. *Bd. of Trustees of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989) .......... 6

**Statutes**

9 U.S.C. §§ 1 *et seq.* .......... *passim*

9 U.S.C. § 2 .......... 5, 6, 7, 9

9 U.S.C. § 3 .......... 12

18 U.S.C. §§ 1961–1968 .......... 5, 10

**Other Authorities**

FRCP 7.1 .......... 3

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 30, 2025 at 10:00 AM or as soon thereafter as this matter may be heard, in the courtroom of the Honorable James Donato, Courtroom 11, 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Coinbase, Inc. ("Coinbase"), Coinbase Global, Inc. and Brian Armstrong (together, "Defendants") will and hereby do move this Court (1) to compel individual arbitration of all arbitrable claims of Plaintiffs Joel Heabeart, Joel Miller, Dylan Michaud, Kyle Kelley, Justin Moran, María Cecilia Lucanera, Noel Yount, Israel Alatriz, Aaron Duncan, James Michael Smith, and Edward C. Toal (together, "Plaintiffs")[1] in the Amended Complaint (Dkt. 16) (the "AC"); and (2) to stay this case pending completion of arbitration proceedings.

Coinbase makes this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), on the basis of Plaintiffs' agreements to submit specified "Disputes" to individual arbitration. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations of Randall S. Luskey ("Luskey Decl.") and Aleksandar Totkov ("Totkov Decl.") and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any other argument or evidence that may be received by the Court upon hearing of this Motion.

Dated: September 22, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Randall S. Luskey*

Randall Scott Luskey
Paul D. Brachman (admitted *pro hac vice*)
Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)

*Attorneys for Defendants Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*

---

[1] Plaintiff Myburgh is alleged to be a resident of New Zealand and did not have a business relationship with Defendants. Plaintiffs filed a notice of voluntary dismissal earlier today, pursuant to FRCP 41(a), dismissing Plaintiff Myburgh from the case. *See* Dkt. 51.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Coinbase's motion to compel arbitration should be granted because all Coinbase users, including Plaintiffs, agree to resolve certain specified "Disputes" exclusively through binding arbitration.

There is no dispute that Coinbase and Plaintiffs formed an agreement to arbitrate. Plaintiffs allege—and thus concede—that "Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement." AC ¶ 69. The facts confirm this. Each Plaintiff agreed to the then-operative version of the Coinbase User Agreement when creating their Coinbase accounts. Totkov Decl. ¶¶ 6–22. Each Plaintiff also accepted an updated version of the User Agreement in 2022. *Id.* at ¶¶ 23–38. The arbitration agreement in the 2022 User Agreement, like prior versions, informed users that Coinbase could modify the terms of the agreement and that continued use of the Coinbase platform would constitute acceptance of the updated terms. *Id.*, Ex. 14, at Preamble, "Amendment of these Terms." Between April 9, 2025 and April 12, 2025, Coinbase sent each Plaintiff an email providing notice that the User Agreement was being updated, and providing a link to the updated terms. *Id.* at ¶¶ 40–53. Each Plaintiff continued to use Coinbase's platform after the updated User Agreement took effect. *Id.* at ¶¶ 54–65. "The email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement. *See Kamath* v. *Coinbase, Inc.*, 2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) (same with respect to 2022 user agreement update).

The 2025 version of the User Agreement was in effect when Plaintiffs filed this lawsuit. It provides that "all Disputes," including any claim "arising out of" or "relating in any way to" Coinbase's services, website, or "any products or services sold or distributed"[2] through the Coinbase website, must be resolved through individual arbitration. Counts III through VIII fall

[2] Coinbase does not and has never conceded that WLUNA transactions on its platform constitute securities transactions. They were not. The phrase "sold or distributed" in the User Agreement helps broadly capture all interactions on Coinbase's platform within the arbitration provision, but does not state a conclusion as to the legal status of digital assets, or the legal regime applicable to trades made by users on Coinbase's exchange.

within that definition because they all relate to Plaintiffs' use of Coinbase's website to make transactions in the cryptocurrency WLUNA. Plaintiffs allege that Coinbase made "misleading communications," about WLUNA, "mishandle[ed] WLUNA's smart contract peg," improperly suspended trading of WLUNA, and made "false, misleading, and incomplete communications to investors regarding the status of WLUNA and their associated accounts." AC ¶¶ 37–38. All of their claims in Counts III through VIII thus "aris[e] out of or relat[e] to" Coinbase's services, transactions they made "through the Coinbase site," or the communications Plaintiffs allegedly received from Coinbase. As a result, those claims must be resolved through individual arbitration.

The only exception in the 2025 User Agreement's arbitration agreement that is relevant here applies to claims under the federal securities laws, such as Plaintiffs' claims in Counts I and II. Plaintiffs, however, have taken the position in the course of the parties' meet and confers that it is the 2022 version of the User Agreement that applies in this case, because that is the agreement that was in force when Plaintiffs incurred their alleged injuries. That is incorrect. What matters for purposes of this motion (and Coinbase's motion to transfer venue filed today) is the version of the User Agreement that was in effect when Plaintiffs filed this case. But it makes no difference for this motion. The arbitration agreement in the 2022 User Agreement contains no carveout for securities claims, like those in Plaintiffs' Counts I and II, and includes a broad delegation clause that requires all disputes about the scope and enforceability of the arbitration agreement to be decided by an arbitrator, and not in court. And courts in this District (and elsewhere) have repeatedly granted Coinbase's motions to compel arbitration on the basis of the 2022 agreement. *Cordero* v. *Coinbase, Inc.*, 2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025) (collecting cases enforcing Coinbase 2022 arbitration agreement). Under that agreement, all of Plaintiffs' claims, and any disputes about arbitrability, are subject to arbitration.

Before filing this motion, Coinbase provided Plaintiffs with evidence of their agreements to arbitrate and encouraged them to stipulate to arbitration of their claims. *See* Luskey Decl., Ex. 3 (excerpt of September 22, 2025 email chain with Plaintiffs' counsel, pointing to specific arbitration provisions covering this dispute and requesting that Plaintiffs stipulate to arbitration in accord with the 2025 User Agreement on Aug. 25 and Sept. 10); *see also* Dkt. 41 at ¶ 15. Plaintiffs did not

agree, necessitating this motion. Because there is no dispute that the parties entered into an enforceable arbitration agreement, Coinbase's motion should be granted.

## II. STATEMENT OF ISSUES TO BE DECIDED

The Court must decide whether to (1) compel arbitration of certain of Plaintiffs' claims, and (2) stay this case pending the completion of arbitration.

## III. FACTUAL BACKGROUND

Coinbase Global, Inc.[3] is the parent company of wholly owned subsidiary Coinbase, Inc. Totkov Decl. ¶ 5; Def. Coinbase, Inc.'s FRCP 7.1 Disclosure Statement, at 2, Dkt. 46. Coinbase, Inc. operates an online platform for buying, selling, and transferring cryptocurrencies like Bitcoin and WLUNA, the digital asset at the center of Plaintiffs' claims. Totkov Decl. ¶ 4.

To access Coinbase's services, all prospective users are required to create an account and agree to Coinbase's User Agreement. *Id.* at ¶ 7. Plaintiffs Lucanera, Kelley, Alatriz, Toal, Smith, Heabeart, Michaud, Moran, Duncan, and Miller first created their accounts and accepted the Coinbase User Agreement between January 6, 2015 and October 27, 2021. *Id.* at ¶¶ 12–21. Each of them subsequently agreed to an updated version of the Coinbase User Agreement in February 2022. *Id.* at ¶¶ 25–34. When they attempted to log in to their Coinbase accounts, they were routed to a landing page announcing that Coinbase was "updating our User Agreement," and prompting the user to "review and accept your updated terms and conditions to continue using your Coinbase account." *Id.* at ¶ 23–24. Immediately beneath that prompt was a scroll-box containing the full

---

[3] Coinbase Global, Inc. has no independent business relationship with the Plaintiffs and is not a proper defendant in this case. *See* Mem. in Supp. of Mot. to Dismiss (the "MTD Br.") at 15. Nevertheless, Plaintiffs' claims against Coinbase Global, Inc. are subject to arbitration because "charges against a parent company and its subsidiary [that] are based on the same facts and are inherently inseparable" are arbitrable "even if the parent is not formally a party to the arbitration agreement." *Marselian* v. *Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021) (quotation marks omitted). And for good reason. "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Sam Reisfeld & Son Import Co.* v. *S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *accord J.J. Ryan & Sons, Inc.* v. *Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).

The same is true with respect to Coinbase's CEO, Defendant Armstrong. *See, e.g.*, *Nguyen* v. *Tran*, 157 Cal. App. 4th 1032, 1036-37 (Cal. Ct. App. 2007) (arbitration agreement enforceable when "when a nonsignatory and one of the parties to the agreement have a preexisting agency relationship that makes it equitable to impose the duty to arbitrate on either of them"); *Tamsco Props., LLC* v. *Langemeier*, 597 F. Appx. 428, 429 (9th Cir. 2015).

text of the updated Agreement. *Id.* at ¶ 23. At the bottom of the page was a large blue button that users could click to "[a]ccept terms." *Id.* Existing users could not access their Coinbase account without accepting the updated User Agreement. *Id.* Coinbase's records show that Plaintiffs Lucanera, Kelley, Alatriz, Toal, Smith, Heabeart, Michaud, Moran, Duncan, and Miller logged in to their accounts and accepted the updated 2022 User Agreement by clicking the large blue acceptance button on various dates between February 3, 2022 and February 22, 2022. *Id.* at ¶¶ 25–34.

Plaintiff Yount signed up for her Coinbase account and accepted the User Agreement in May 2022. *Id.* at ¶¶ 22, 36–38. New prospective Coinbase users who created an account during that time period were required to sign up by entering their name, email address, and proposed password into a fillable form. *Id.* at ¶ 36, Ex. 30. Before they could complete their registration and account, prospective users like Plaintiff Yount were also required to affirmatively click a checkbox next to a sentence reading, "I certify that I am 18 years of age or older, and agree to the User Agreement and Privacy Policy." *Id.*, Ex. 30. The phrase "User Agreement" was blue and contained a hyperlink to the full terms of the User Agreement. *Id.*

The 2022 User Agreement informed Plaintiffs that Coinbase could "amend or modify [the] Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to" Plaintiffs, and that "continued use of [Coinbase's] Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." Totkov Decl., Ex. 14, at Preamble, "Amendment of these Terms." Consistent with that provision, Coinbase emailed Plaintiffs in mid-April 2025, to notify them of an update to the User Agreement. *Id.* at ¶ 41. Coinbase's records show that this email was sent to Plaintiffs between April 9, 2025 and April 12, 2025. *Id.* at ¶¶ 41, 43–53.

The email specifically stated that Coinbase revised the arbitration provisions of the User Agreement, and that those terms would "apply only to disputes that you or we initiate after May 15, 2025." *Id.*, Ex. 16. The email provided a hyperlink to the full terms of the updated User Agreement and encouraged users to "make sure [to] read the updated User Agreement." *Id.* The 2025 User Agreement also expressly states that continued use of Coinbase's services constitutes

acceptance of the updated agreement. *Id.*, Ex. 15, Preamble, "Amendment of these Terms." Coinbase's records confirm that Plaintiffs Lucanera, Kelley, Yount, Alatriz, Smith, Moran, Duncan, Heabeart, Michaud, and Miller each logged into their Coinbase accounts and made transactions after receiving the 2025 update. *Id.,* at ¶¶ 55–57, 60–65. Plaintiff Toal has continued to hold WLUNA and at least three other digital assets in Coinbase after receiving the 2025 update. *Id.* at ¶ 59; Ex. 15, § 2.1 (discussing digital wallet service provided by Coinbase).

Appendix 5 of the 2025 User Agreement contains the arbitration agreement, which broadly provides that "[y]ou and we agree to arbitrate all Disputes in binding arbitration." *Id.*, Ex. 15, Appendix 5, "Arbitration Agreement." "'Disputes' are defined as any dispute, claim, or disagreement arising out of relating in any way to our relationship with you, the Services, the Coinbase Site, any Communications you receive, any products or services sold or distributed through the Coinbase Site, or the User Agreement. The term 'Disputes' is intended to be interpreted broadly." *Id.,* Appendix 5, "Disputes Defined." There are limited exceptions, only one of which is relevant here. Specifically, the parties agreed in the 2025 User Agreement that "Disputes about whether you or we have violated state or federal securities laws…shall be resolved by a court of competent jurisdiction." *Id.*, Appendix 5, "Arbitration Agreement," ¶ 5.

Plaintiffs filed this lawsuit on May 27, 2025. *See* Dkt. 1. Plaintiffs allege that Coinbase's suspension of trading in WLUNA on the Coinbase exchange in May 2022, and various other related alleged statements and actions, caused Plaintiffs substantial financial harm. *See, e.g.*, AC ¶¶ 1–5; 43–46. Plaintiffs bring eight causes of action, alleging violations of federal securities laws (Counts I-II), a civil violation of RICO (Count III), and various state-law claims (Counts IV–VIII). *Id.* at ¶¶ 47–99.

## IV. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* applies to "any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Portland Gen. Elec. Co.* v. *U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2).

Here, the alleged transactions involved interstate commerce because Plaintiffs variously contracted in multiple states to do business over the internet with Coinbase, a Delaware corporation. AC ¶¶ 6–18. The use of internet technologies to purchase or transfer digital currencies satisfies the "interstate commerce" requirement. *See United States* v. *Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). Accordingly, the FAA governs the User Agreements' arbitration clause. *See also* Totkov Decl., Ex. 15, Appendix 5, "Arbitration Procedure" ("You and we agree that the User Agreement evidences a transaction involving interstate commerce and notwithstanding any other provision with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and federal arbitration law (not state arbitration law) will govern any proceedings regarding enforcement of this Arbitration Agreement."); Ex. 14, Appendix 5 § 1.4 (same, 2022 User Agreement).

The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has emphasized that the FAA creates a strong, liberal federal policy that favors arbitration. *See, e.g.*, *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Court has authority to examine two gateway issues only: "(1) whether a valid agreement to arbitrate exists and…(2) whether the agreement encompasses the dispute at issue." *Chiron Corp.* v. *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Any ambiguities relating to the scope of the arbitration clause must be resolved in favor of arbitration. *See Volt Info. Scis., Inc.* v. *Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## V. ARGUMENT

Coinbase's motion should be granted because there is no dispute that Plaintiffs agreed to the 2025 User Agreement, which contains a binding and enforceable arbitration provision. Even if Plaintiffs had not agreed to the 2025 User Agreement, or if they argue that the 2022 User Agreement applies to this case, the arbitration provision in the 2022 User Agreement would compel the same result.

**A. Plaintiffs and Coinbase Agreed to Final and Binding Individual Arbitration.**

"[A]rbitration is a matter of contract," *AT&T Techs., Inc.* v. *Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply "general state-law principles of contract interpretation" to determine whether an agreement to arbitrate exists. *Goldman, Sachs & Co.* v. *City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted). An arbitration agreement need only be in writing, and no signature by either party is necessary. 9 U.S.C. § 2; *Nghiem* v. *NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994). Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract." *B.D.* v. *Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (Cal Ct. App. 2022) (quotation omitted); *see also* Totkov Decl., Ex. 14, § 9.5 ("You agree that the laws of the State of California, without regard to principles of conflict of laws, will govern this Agreement and any dispute, except to the extent governed by federal law."); Ex. 15, 2025 User Agreement at § 9.5 (same).

Plaintiffs repeatedly assented to the Coinbase User Agreement and its arbitration provisions. All iterations of Coinbase's User Agreement contain an arbitration provision, Totkov Decl. ¶ 7, and Plaintiffs allege—and thus do not contest—that they "entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement." AC ¶ 69. Plaintiffs accepted the 2022 version of the Coinbase User Agreement by affirmatively clicking a blue button or checkbox indicating their acceptance of the Agreement after being presented with the Agreement's terms. Totkov Decl. ¶¶ 23–37. Courts routinely find contract formation, including in cases involving Coinbase, where "users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen* v. *Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014); *Cordero*, 2025 WL 2223495, at *6 (collecting cases enforcing Coinbase 2022 arbitration agreement).

Plaintiffs again assented to the 2025 User Agreement. The 2022 Agreement provided that Coinbase could update the Agreement's terms by giving notice to Coinbase users and that continued use of Coinbase's services would constitute acceptance of the updated terms. Totkov Decl., Ex. 14, Preamble, "Amendment of these Terms." Each Plaintiff received an email expressly advising them that Coinbase was updating the Agreement and providing a link to the full text of

the updated terms. *Id.* at ¶ 41–53; Ex. 16. And each Plaintiff thereafter continued using Coinbase's services. *Id.* at ¶¶ 55–65. In so doing, they manifested their assent to the 2025 User Agreement. "The email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 agreement. *See Kamath*, 2024 WL 950163, at *4 (same with respect to Coinbase 2022 update). Indeed, courts routinely find that continued use of a website—particularly after receiving email notice of updated terms and conditions—constitutes acceptance. *Ghazizadeh* v. *Coursera, Inc.*, 737 F.Supp.3d 911, 933–34 (N.D. Cal. 2024) ("Plaintiff's consent to the 2015 TOU, which contained a 'continuing use' provision, combined with Plaintiff's continued use of Coursera's services, is sufficient to demonstrate manifestation of consent to the [January 2021] updated terms sent directly to the email address Plaintiff had on file with Coursera"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (concluding that email regarding updates to the user agreement and continued use is enough for notice and assent); *Sadlock* v. *Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (holding user unambiguously manifested assent to a subscriber agreement by continuing to use website following an email of the update to the terms and conditions); *In re Uber Techs., Inc.*, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) ("Courts have found that when consumers receive [update] emails" that "continued use of the service or product constitutes assent to the updated terms.").

In sum, there is no dispute that Plaintiffs and Coinbase formed an arbitration agreement.

### B. The Arbitration Agreement in the 2025 User Agreement Is Valid and Enforceable, and it Applies to Plaintiffs' Claims.

The arbitration agreement within the 2025 User Agreement is valid and enforceable and Plaintiffs' claims fall squarely within its scope.

#### 1. The Arbitration Agreement in the User Agreement Is Valid and Enforceable.

As explained above, Plaintiffs and Coinbase consented to final and binding individual arbitration by agreeing to the 2022 User Agreement, and later, the 2025 User Agreement. Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Express, Inc.* v. *McMahon*, 482 U.S. 220, 226–27 (1987). This reflects Congress's

intent to enact a "liberal federal policy favoring arbitration agreements." *See Gilmer*, 500 U.S. at 25 (citations omitted); *see also Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA therefore mandates enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the Coinbase arbitration agreement is presumptively valid and enforceable. *Alfia* v. *Coinbase Glob., Inc.*, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022) (holding that the arbitration agreement in Coinbase's 2017 User Agreement is "not unconscionable and is therefore enforceable.").

To the extent that Plaintiffs argue otherwise, they bear the burden of showing that the arbitration provisions are not enforceable. *See Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 91–92 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63, 72 (2010).

**2. Plaintiffs' Claims in Counts III through VIII Fall Within the Scope of the Arbitration Agreement in the 2025 User Agreement.**

Claims "arise[] under" an agreement when they "relat[e] to the interpretation and performance of the contract itself." *Tracer Research Corp.* v. *Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (citation omitted). And "an agreement that requires the parties to arbitrate 'any dispute arising out of or relating to' an agreement is intended 'to reach all aspects of their relationship.'" *Neurosigma, Inc.* v. *De Salles*, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (quoting *Schoenduve Corp.* v. *Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)).

The scope of the arbitration clause at issue here is broad. Plaintiffs and Coinbase agreed to arbitrate "any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any product sold or distributed through the Coinbase Site, the Services, or the User Agreement." Totkov Decl., Ex. 15, Appendix 5, "Disputes Defined." These terms applied to all disputes initiated after May 15, 2025. *Id.*, Ex. 16. The broad language in the arbitration clause covers all disputes among the parties, unless the parties carve out specific exceptions. *See Cape Flattery Ltd.* v. *Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a broad arbitration

provision, they provide for arbitration 'arising out of or relating to' the agreement." (citation omitted)).

The claims in Counts III through VIII fall squarely within the scope of the agreement because they specifically arise out of or relate to Coinbase's provision of services to Plaintiffs, Plaintiffs' transactions in WLUNA on the Coinbase platform, and communications that Coinbase allegedly made about that service and those transactions. Plaintiffs' fourth and fifth causes of action assert breach of contract and breach of the implied covenant of good faith and fair dealing, in connection with *the User Agreement itself*. AC ¶¶ 69–70; 75–76. Plaintiffs' sixth cause of action asserts conversion, alleging that Coinbase "wrongfully interfered with Plaintiffs' ownership rights" in WLUNA, a digital asset they allege they bought and held on Coinbase's exchange. *Id.* at ¶ 82. Plaintiffs' seventh cause of action asserts unjust enrichment, alleging that Coinbase was "wrongfully and unjustly benefited at the direct expense of Plaintiffs through its improper conduct related to the suspension and prolonged outage of WLUNA trading, failure to process conversions pursuant to immutable smart-contract protocols, materially misleading representations about the temporary nature of the suspension, and the systematic use and dissemination of materially inaccurate internal records and tax documents distinct from publicly verifiable blockchain data." *Id.* at ¶ 87. Plaintiffs' eighth cause of action asserts fraudulent misrepresentation, alleging that "Coinbase knowingly or recklessly made materially false representations and omissions concerning WLUNA, the nature and status of its trading suspension, and Coinbase's willingness and ability to execute conversions pursuant to WLUNA's immutable smart-contract peg to the new LUNA tokens." *Id.* at ¶ 93. And Plaintiffs' RICO claim (Count III) alleges predicate mail and wire fraud acts based on these same allegations. *Id.* at ¶ 63. Plaintiffs' claims thus arise directly from transactions in WLUNA that Plaintiffs made through Coinbase, from Coinbase's services, and from the User Agreement itself.

Because each of Plaintiffs' claims in Counts III through VIII focuses on Coinbase's provision of services and products to users, and communications that Coinbase allegedly made to its users about WLUNA, those claims arise out of or relate to "[Coinbase's] relationship with [Plaintiffs], the Services, the Coinbase Site, any Communications [Plaintiffs] receive, any products

or services sold or distributed through the Coinbase Site, or the User Agreement." Totkov Decl., Ex. 15, Appendix 5, "Disputes Defined." Each of Counts III through VIII are thus covered "Disputes" under the 2025 Arbitration Agreement and must be resolved through individual arbitration.

**C. In the Alternative, the 2022 User Agreement Requires Arbitration.**

Even if Plaintiffs dispute their acceptance of the 2025 User Agreement, or maintain that the 2022 User Agreement applies to this case, arbitration is still required.

Plaintiffs assented to the 2022 User Agreement between February and May 2022. Totkov Decl. ¶¶ 23–37. Courts routinely find that the 2022 Coinbase User Agreement is evidence of an agreement to arbitrate. *See e.g.*, *Cordero*, 2025 WL 2223495, at *1 (finding 2022 User Agreement accepted when user was presented with scrollable text, and clicked a button to accept); *Kamath*, 2024 WL 950163, at *2, *8 (same); *Aggarwal* v. *Coinbase, Inc.*, 685 F. Supp. 3d 867, 873 (N.D. Cal. 2023) (finding users accepted User Agreement by clicking on "Accept terms" button); *Pearl* v. *Coinbase Glob., Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023) (where there was "no dispute that plaintiffs agreed to the 2022 User Agreement," motion to compel arbitration was granted); *Donovan* v. *Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) (same); *Alfia*, 2022 WL 3205036, at *2 (finding plaintiff assented by clicking a "check box" with agreement available via hyperlink); *Mahmoud* v. *Coinbase, Inc.*, 2022 WL 18799657, at *1 (Cal. Super. Oct. 19, 2022). And the arbitration provision in the 2022 User Agreement, like the 2025 Agreement, broadly requires that "any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement…will be resolved by binding arbitration, rather than in court." Totkov Decl., Ex. 14, Appendix 5, § 1.1. Unlike the 2025 agreement, however, the arbitration provision in the 2022 User Agreement contains no exception for claims under the securities laws. Thus, Plaintiffs would be required to arbitrate all of their claims in this case under the 2022 Agreement, even if the 2025 User Agreement was deemed inapplicable.

Under the 2022 User Agreement, the parties also expressly agreed to delegate to the arbitrator questions related to the interpretation, scope and enforceability of the arbitration agreement. *Id.*, Ex. 14, Appendix 5, § 1.6. Such "delegation clauses" are separate, antecedent arbitration agreements. *See Rent-A-Center*, 561 U.S. at 70. Courts analyzing the 2022 User Agreement uniformly hold that the delegation clause in the 2022 User Agreement is clear and unmistakable, and requires questions regarding the scope and enforceability of the arbitration agreement in the 2022 User Agreement to be decided by an arbitrator, not a court. *Cordero*, 2025 WL 2223495, at *8 ("The arbitration agreement [in the 2022 User Agreement] requires the Court to refer all remaining disputes to an arbitrator."); *Kamath*, 2024 WL 950163, at *9 (delegation clause in 2022 User Agreement is "valid and enforceable"); *Aggarwal*, 685 F. Supp. 3d at 882 (delegation clause is "enforceable"); *Pearl*, 2023 WL 1769190, at *7 (Plaintiff "failed to show that the Delegation Clause in the Arbitration Agreement is unenforceable as unconscionable."); *Donovan*, 649 F. Supp. 3d at 954 ("[T]he delegation provision is enforceable, and the Court finds that the Coinbase Plaintiffs' challenges to arbitrability have been delegated to the arbitrator.").

Accordingly, Coinbase's motion should be granted—and any disputes over the arbitrability of Plaintiffs' claims referred to arbitration—even if they did not accept the 2025 User Agreement.

### D. This Case Should Be Stayed Pending Completion of Plaintiffs' Individual Arbitration Proceedings.

If an issue referable to arbitration under an agreement to arbitrate is brought in federal court, the court must stay the federal action on application of one of the parties. 9 U.S.C. § 3. Because the parties formed a valid arbitration agreement and Plaintiffs' claims fall "within the scope of the arbitration agreement," this proceeding should be stayed. *Smith* v. *Spizzirri*, 601 U.S. 472, 476 (2024) ("When § 3 says that a court 'shall…stay' the proceeding, the court must do so."); *Holl* v. *United Parcel Service, Inc.*, 2017 WL 11520143, at *3 (N.D. Cal. Sept. 18, 2017) ("[F]ederal district courts are required to stay judicial proceedings and compel arbitration of claims covered by an enforceable arbitration agreement"). Coinbase therefore respectfully requests that the Court stay this case pending the completion of arbitration.

## VI. CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court compel arbitration of all arbitrable claims in the Amended Complaint and stay this case pending the completion of arbitration.

Dated: September 22, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Randall S. Luskey*
Randall Scott Luskey
Paul D. Brachman (admitted *pro hac vice*)
Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)

*Attorneys for Defendants Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*