Randall Scott Luskey (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Additional Counsel Listed on Following Page*

*Attorneys for Defendants Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOEL HEABEART, *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>COINBASE, INC., *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-04473-JD<br><br>Private Securities Litigation Reform Act<br><br>**DEFENDANTS COINBASE, INC., COINBASE GLOBAL, INC. AND BRIAN ARMSTRONG'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: October 30, 2025<br>Time: 10:00 AM<br>Judge: Hon. James Donato |

Paul D. Brachman (admitted *pro hac vice*)
pbrachman@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7440
Facsimile: (202) 379-4098

Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)
kbunting@paulweiss.com
mpisem@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

## TABLE OF CONTENTS


STATEMENT OF ISSUES TO BE DECIDED ..... 1

INTRODUCTION ..... 1

I. THE PARTIES FORMED AN AGREEMENT TO ARBITRATE ..... 3

II. THE PARTIES' ARBITRATION AGREEMENT IS ENFORCEABLE ..... 5

- A. The Parties' Arbitration Agreement Is The Product of Fair Dealing ..... 5
- B. The Parties' Arbitration Agreement Is Not Unfairly One-Sided ..... 7
- C. Under the 2022 Agreement, Questions About Enforceability Are Arbitrable ..... 10

III. PLAINTIFFS' CLAIMS ARE ARBITRABLE ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases**

*Aggarwal* v. *Coinbase, Inc.*,
685 F. Supp. 3d 867 (N.D. Cal. 2023) .......... 2–3, 7, 8–9

*Alltel Corp.* v. *Rosenow*,
2014 Ark. 375 (Ark. 2014) .......... 8

*Bielski* v. *Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 6, 7, 8, 9

*Chavarria* v. *Ralphs Grocery Co.*,
733 F.3d 916 (9th Cir. 2013) .......... 7

*Cordero* v. *Coinbase, Inc.*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) .......... 1, 4, 7, 8–9

*Dean Witter Reynolds, Inc.* v. *Byrd*,
470 U.S. 213 (1985) .......... 3, 9

*Donovan* v. *Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) .......... 5, 7

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951, *as modified* (Cal. 1997) .......... 2, 4, 5

*Flores* v. *Coinbase, Inc.*,
2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) .......... 2–3, 7, 8

*Green Tree Fin. Corp.* v. *Randolph*,
531 U.S. 79 (2000) .......... 2

*Harris* v. *Blockbuster Inc.*,
622 F. Supp. 2d 396 (N.D. Tex. 2009) .......... 9

*Kamath* v. *Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024) .......... 2, 4

*Kattula* v. *Coinbase Glob., Inc.*,
2023 WL 4373385 (N.D. Ga. July 6, 2023) .......... 7, 8

*Kramer* v. *Coinbase*,
326 Cal. Rptr. 3d 217 (Cal. Ct. App. 2024) .......... 10

*Lane* v. *Francis Capital Mgmt. LLC*,
168 Cal. Rptr. 3d 800 (Cal. Ct. App. 2014) .......... 6

*Lovinfosse* v. *Lowe's Home Centers, LLP*,
2024 WL 3732436 (E.D. Va. Aug. 8, 2024) ..................... 9

*Mills* v. *Facility Solutions Group, Inc.*,
300 Cal. Rptr. 3d 833 (Cal. Ct. App. 2022) ..................... 8

*Morris* v. *Redwood Empire Bancorp*,
27 Cal. Rptr. 3d 797 (Cal. Ct. App. 2005) ..................... 6

*O'Donoghue* v. *Super. Ct.*,
161 Cal. Rptr. 3d 609 (Cal. Ct. App. 2013) ..................... 6

*Pearl* v. *Coinbase Glob., Inc.*,
2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ..................... 2, 7

*Ramirez* v. *Charter Commc'ns, Inc.*,
551 P.3d 520 (Cal. 2024) ..................... 8

*Sanchez* v. *Valencia Holding Co.*,
353 P.3d 741 (Cal. 2015) ..................... 5

*Serpa* v. *Cal. Sur. Investigations, Inc.*,
Cap. Rptr. 3d 506 (Cal. Ct. App. 2013) ..................... 5–6

*Shearson/Am. Express, Inc.* v. *McMahon*,
482 U.S. 220 (1987) ..................... 2

*Totten* v. *Kellogg Brown & Root, LLC*,
152 F. Supp. 3d 1243, 1267 (C.D. Cal. 2016) ..................... 9

*Wayne* v. *Staples, Inc.*,
37 Cal. Rptr. 3d 544, 556 (Cal. Ct. App. 2006) ..................... 6

*Woody* v. *Coinbase Glob., Inc.*,
2023 WL 6882750 (N.D. Cal. Oct. 17, 2023), *vacated in part on other grounds*, 2024 WL 4532909 (9th Cir. Oct. 21, 2024) ..................... 1, 3, 4, 10

## STATEMENT OF ISSUES TO BE DECIDED

The Court must decide whether to (1) compel arbitration of certain of Plaintiffs' claims, and (2) stay this case pending the completion of arbitration.

## INTRODUCTION

Defendants' motion to compel arbitration should be granted because the undisputed evidence shows that the parties entered into an arbitration agreement and Plaintiffs have not carried their burden to show that agreement is unenforceable. To the contrary, the record confirms that each Plaintiff repeatedly accepted the Coinbase User Agreement,[1] which includes an arbitration agreement that is fully enforceable and applicable in this case.[2]

***The parties formed an agreement to arbitrate.*** Plaintiffs alleged that "Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement." ¶ 69. They have never withdrawn or retracted that allegation and thus concede that the parties formed an agreement to arbitrate. Plaintiffs also do not dispute or rebut the evidence Defendants submitted in support of their motion which proves that each Plaintiff accepted the User Agreement on multiple occasions. That evidence shows that each Plaintiff agreed to the 2022 version of the User Agreement through a classic "clickwrap" process that this Court and many others have found sufficient to show "the formation of an agreement to arbitrate." *Woody* v. *Coinbase Glob., Inc.*, 2023 WL 6882750, at *2 (N.D. Cal. Oct. 17, 2023), *vacated in part on other grounds*, 2024 WL 4532909 (9th Cir. Oct. 21, 2024); *see also Cordero* v. *Coinbase, Inc.*, 2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025) (collecting cases enforcing Coinbase 2022 arbitration agreement). The undisputed evidence also shows that Coinbase sent each Plaintiff an email in April 2025 advising that Coinbase was updating the terms of the User Agreement and that

[1] Capitalized terms, ¶, and other abbreviations have the same meaning as in Defendants' Motion to Compel Arbitration and Stay Proceedings ("MTCA Br."), Dkt. 56, unless otherwise noted.

[2] Plaintiffs' brief includes extraneous arguments opposing Defendants' motion to dismiss and motion to transfer venue. *See* Plaintiffs' Opposition to Defendants' Compel [sic] Arbitration and Stay Proceedings ("Pls.' MTCA Opp."), Dkt. 63, 3–4, 5–6. Defendants address those arguments in their replies in further support of those motions. Plaintiffs also address the merits of their RICO and state law claims, Pls.' MTCA Opp. 4–5, even though Defendants have moved to compel arbitration of those claims and reserved the right to move to dismiss them if they are not sent to arbitration. *See* MTD Br. (Dkt. 57), 1 n.1. The merits of those claims are not at issue at this time.

each Plaintiff thereafter continued using Coinbase's services. Plaintiffs do not dispute those facts either, and "[t]he email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement. *Kamath* v. *Coinbase, Inc.*, 2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) (same as to 2022 User Agreement update).

Plaintiffs vaguely assert that their agreements with Coinbase are "void" under a fraudulent inducement theory because Coinbase's alleged "WLUNA misrepresentations induced assent." Pls.' MTCA Opp. 7 (citation omitted). That argument fails for multiple reasons. The case Plaintiffs cite explains that a party opposing a motion to compel arbitration on a fraudulent inducement theory "must show that the asserted fraud claim goes specifically to the making of the agreement to arbitrate, rather than to the making of the contract in general." *Engalla* v. *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, *as modified* (Cal. 1997) (cited at Pls.' MTCA Opp. 3, 7). Plaintiffs cannot meet that standard because they do not argue that Coinbase made any misrepresentation about the terms of the arbitration agreement and have submitted no evidence that could support such a theory. Instead, Plaintiffs reiterate the allegation—irrelevant in this context—that Coinbase made misrepresentations about *WLUNA*. And, in any event, Plaintiffs agreed to the 2025 User Agreement long after any alleged misrepresentations about WLUNA were made in 2022.

***The parties' arbitration agreement is enforceable.*** The parties' arbitration agreement is presumptively valid and enforceable, *see Shearson/Am. Express, Inc.* v. *McMahon*, 482 U.S. 220, 226–27 (1987), and Plaintiffs bear the burden to show otherwise, *Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 91–92 (2000). Plaintiffs have not carried their burden. Plaintiffs argue the Coinbase User Agreement is procedurally unconscionable and unenforceable because it was offered on a take-it-or-leave-it basis. Pls.' MTCA Opp. 8–9. That argument fails because Coinbase was not the only option available to consumers interested in trading cryptocurrency. *See, e.g.*, *Pearl* v. *Coinbase Glob., Inc.*, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023). Plaintiffs alternatively argue that the arbitration agreement is substantively unconscionable because it allows Coinbase to modify the terms of the agreement unilaterally, lacks mutuality, and/or would result in piecemeal adjudication of Plaintiffs' claims. Pls.' MTCA Opp. 7–11. Courts have rejected each of those arguments, too. *See Aggarwal* v. *Coinbase, Inc.*, 685 F. Supp. 3d 867, 875–77 (N.D. Cal. 2023)

(rejecting challenge to unilateral modification provision in Coinbase arbitration agreement); *Flores* v. *Coinbase, Inc.*, 2023 WL 3564756, at *6–7 (C.D. Cal. Apr. 6, 2023) (holding Coinbase arbitration agreement sufficiently bilateral); *see also Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 217 (1985) (holding courts must "compel arbitration…even where the result would be the possibly inefficient maintenance of separate proceedings").

***Plaintiffs' claims are arbitrable.*** Plaintiffs do not dispute that Counts III through VIII of the AC fall within the scope of the arbitration clause in the 2025 User Agreement. They argue that "the complaint includes two counts that cannot be arbitrated, as they seek public injunctive relief under California law, which is non-arbitrable and cannot be waived by contract," Pls.' MTCA Opp. 10, but do not specify which counts they are referring to. If Plaintiffs are referring to Counts I and II, the argument is irrelevant—those claims are already carved out from the arbitration agreement in the 2025 User Agreement. In any event, contrary to Plaintiffs' assertion, none of the claims in the AC seek public injunctive relief—indeed, Plaintiffs seek no injunctive relief whatsoever. *See* AC, Prayer for Relief.[3] Where, as here, Plaintiffs seek only damages that would benefit individual Coinbase users, and not injunctive relief that would benefit "the general public as a more diffuse whole," all of their claims are arbitrable. *Woody*, 2023 WL 6882750, at *4 (citation omitted).

In short, there is no dispute that the parties formed an arbitration agreement, that Plaintiffs' claims fall within the scope of that agreement, and that the agreement is fully enforceable. Accordingly, Defendants' motion to compel arbitration should be granted.

## I. THE PARTIES FORMED AN AGREEMENT TO ARBITRATE

There is no dispute that each Plaintiff agreed to the 2022 and 2025 Coinbase User Agreements, each of which contains a binding arbitration provision.

Defendants submitted evidence in support of their motion showing that Plaintiffs agreed to the User Agreement on multiple occasions. That evidence shows that each Plaintiff agreed to the User Agreement in 2022 by affirmatively clicking a button indicating his or her assent after being presented with a pop-up window containing the contract terms or a link to the contract terms.

[3] Contrary to Plaintiffs' assertion, MTCA Opp. 7, AC ¶ 105 does not seek "public injunctive relief," but requests only "[s]uch other and further relief as this Court deems just, equitable, and proper."

Totkov Decl. (Dkt. 60) ¶¶ 23–38. Plaintiffs have submitted no countervailing evidence of their own calling these facts into question. And multiple courts, including this one, have found the 2022 process sufficient to prove "the formation of an agreement to arbitrate." *Woody*, 2023 WL 6882750, at *2; *see Cordero*, 2025 WL 2223495, at *6 (collecting cases).

The 2022 User Agreement, like prior versions, informed users that Coinbase could modify the terms of the agreement and that continued use of the Coinbase platform would constitute acceptance of the updated terms. Totkov Decl., Ex. 14, Preamble, "Amendment of these Terms." Defendants submitted evidence that, between April 9, 2025 and April 12, 2025, Coinbase sent each Plaintiff an email providing notice of the User Agreement update and providing a link to the updated terms. *Id.* at ¶¶ 40–53. Each Plaintiff continued to use Coinbase's platform after the updated User Agreement took effect. *Id.* at ¶¶ 54–65. Again, Plaintiffs have come forward with no evidence of their own calling into question any of these facts. Nor do they attempt to distinguish any of the cases cited in Defendants' motion holding that "email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement. *See Kamath*, 2024 WL 950163, at *4; *see also* MTCA Br. 8 (collecting cases).

Plaintiffs assert, without elaboration, that "[t]he clause is void under *Engalla* v. *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 973 (1997), as WLUNA misrepresentations induced assent." Pls.' MTCA Opp. 7 (citation omitted). To the extent Plaintiffs are claiming that no arbitration agreement exists because their assent was fraudulently induced, that argument is directly contradicted by their allegation that "Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement." AC ¶ 69. Plaintiffs also cannot meet the standard for fraudulent inducement articulated in the case they cite. *Engalla* holds that a party opposing a motion to compel arbitration on a fraudulent inducement theory "must show that the asserted fraud claim goes specifically to the making of the agreement to arbitrate, rather than to the making of the contract in general." 15 Cal. 4th at 973. In that case, the party resisting arbitration came forward with evidence showing that the defendant represented that it would conduct the arbitration on a particular timeline but "entered into the arbitration agreement with knowledge that it would not comply with" those requirements. *Id.* at 974. Plaintiffs, in contrast, have come forward

with no evidence showing that Coinbase made any false representations about the arbitration agreement in order to induce Plaintiffs' assent. Nor do Plaintiffs explain how any supposed misrepresentations about WLUNA induced their assent to the User Agreement generally or to the arbitration clause specifically, as *Engalla* requires. Plaintiffs also do not explain how any alleged misrepresentations about WLUNA in 2022 could have induced their assent to the 2025 User Agreement, years after the WLUNA price drop that allegedly caused their injuries. Plaintiffs thus have not shown they were fraudulently induced to assent to the Coinbase arbitration agreement.

In sum, the undisputed evidence shows that Plaintiffs agreed to the 2022 and 2025 Coinbase User Agreements, each of which contains a binding arbitration agreement, and no evidence supports Plaintiffs' assertion that their assent to the arbitration agreement was fraudulently induced. The parties thus formed an agreement to arbitrate.

## II. THE PARTIES' ARBITRATION AGREEMENT IS ENFORCEABLE

The parties' arbitration agreement is enforceable because it was the product of fair dealing and its terms are not unfairly one-sided.

Plaintiffs argue the agreement is unenforceable because it is unconscionable. An arbitration agreement is unenforceable only if it is both procedurally and substantively unconscionable. *Sanchez* v. *Valencia Holding Co.*, 353 P.3d 741, 748 (Cal. 2015). The two forms of unconscionability work as a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion the term is unenforceable, and vice versa." *Id.* Plaintiffs bear the burden of showing unconscionability. *Donovan* v. *Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 952 (N.D. Cal. 2023) ("The party resisting arbitration bears the burden of demonstrating unconscionability." (citation omitted)). Plaintiffs have not carried their burden.

### A. The Parties' Arbitration Agreement Is the Product of Fair Dealing

"Procedural unconscionability focuses on the elements of oppression and surprise." *Serpa* v. *Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 511 (Cal. Ct. App. 2013) (citing cases). "Oppression arises from an inequality of bargaining power which results in no real negotiation and

an absence of meaningful choice," while "[s]urprise involves the extent to which the terms of the bargain are hidden." *Id.* (citations omitted).

Plaintiffs do not argue that the arbitration agreement in the User Agreement was a hidden surprise, nor could they. The User Agreement immediately alerts users in all-caps, bold text that Appendix 5 "**INCLUDES AN AGREEMENT TO ARBITRATE**" and urges users to "**READ… CAREFULLY**." Totkov Decl., Ex. 15, Preamble, "Dispute Resolution." "**APPENDIX 5: DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT…)**" is clearly labeled and easy to identify. *Id.* at Appendix 5. And the subsections of the arbitration agreement are legible and presented in the same font size as the rest of the agreement. *Id.* These plainly labeled provisions are not "hidden in a prolix printed form or [] otherwise beyond the reasonable expectation of the weaker party." *Morris* v. *Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 808 (Ct. App. 2005). Indeed, the Ninth Circuit has specifically rejected the argument that Coinbase's arbitration agreement was the product of unfair surprise in bargaining. *Bielski* v. *Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023). Plaintiffs cite *Bielski* for the proposition that the Coinbase arbitration agreement is "predatory" and "unenforceable," Pls.' MTCA Opp. 8, but that case holds the opposite. The Ninth Circuit held that the Coinbase arbitration agreement was "clearly presented" and "written in plain language and in a legible-sized font," and found it enforceable. *Bielski*, 87 F.4th at 1014. The arbitration agreement in the 2025 User Agreement is equally clear and fairly presented. There is no unfair surprise here.

Plaintiffs principally argue that the agreement is unenforceable because it is an oppressive contract of adhesion. Pls.' MTCA Opp. 8. That argument fails because "courts have consistently held that [a contract of adhesion] alone is insufficient to invalidate an arbitration agreement," *Lane* v. *Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 810 (Cal. Ct. App. 2014), and the "adhesive aspect of a contract is not dispositive on the issue of unconscionability," *O'Donoghue* v. *Super. Ct.*, 161 Cal. Rptr. 3d 609, 620 (Cal. Ct. App. 2013) (cleaned up). Rather, "[t]here can be no oppression establishing procedural unconscionability, ***even assuming unequal bargaining power and an adhesion contract***, when the customer has meaningful choices." *Wayne* v. *Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Cal. Ct. App. 2006) (emphasis added).

Plaintiffs had meaningful choices. Courts have repeatedly rejected the assertion that "Coinbase was [the] only option for crypto currency services" available to investors like Plaintiffs. *E.g.*, *Pearl*, 2023 WL 1769190, at *7; *Aggarwal*, 685 F. Supp. 3d at 881 ("[N]othing in the record suggests that Coinbase was Plaintiffs' only option for cryptocurrency services."). As a result, a string of courts has found "at most, a minimal degree of procedural unconscionability" arising from the fact that the User Agreement is offered on a take-it-or-leave-it basis. *E.g.*, *Pearl*, 2023 WL 1769190, at *7; *Donovan*, 649 F. Supp. 3d at 953 (same); *Flores*, 2023 WL 3564756, at *6 (same); *Aggarwal*, 685 F. Supp. 3d at 881 (same); *Kattula* v. *Coinbase Glob., Inc.*, 2023 WL 4373385, at *5 (N.D. Ga. July 6, 2023) (same). As the Ninth Circuit has explained, such minor imbalances in bargaining power "fail to tip the scales to render the provision unconscionable and therefore unenforceable." *Bielski*, 87 F.4th at 1015. Simply put, there is no procedural unconscionability that would render the arbitration agreement unenforceable "because Coinbase users were not beholden to the website nor forced to accept its terms." *Cordero*, 2025 WL 2223495, at *7.

### B. The Parties' Arbitration Agreement Is Not Unfairly One-Sided

A contract is substantively unconscionable only when it is so unjustifiably one-sided that it "shocks the conscience." *Chavarria* v. *Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013). This is an extremely high bar that Plaintiffs cannot clear.

Plaintiffs argue the arbitration agreement is substantively unconscionable because its terms are unfairly one-sided, Pls.' MTCA Opp. 8–9, because Coinbase can modify the terms unilaterally, *id.* at 8, and because arbitrating some of Plaintiffs' claims but not others would result in piecemeal adjudication, *id.* at 10–11.[4] Those arguments fail, whether considered separately or together.

*First*, the agreement is not unfairly one-sided. Plaintiffs argue, without citation, that the arbitration agreement is "drafted to protect the defendant[s] from any and all liability, regardless of their own misconduct." Pls.' MTCA Opp. 8. Not even close. The arbitration agreement simply

[4] Plaintiffs also claim that "[f]ee-shifting (User Agreement § 9.7) imposes $757M costs on Duncan," rendering the agreement "substantively unfair." Pls.' MTCA Opp. 7. Section 9.7 of the agreement is not a fee-shifting provision. Rather, it clarifies that "Coinbase is an independent contractor for all purposes." Totkov Decl., Ex. 15, § 9.7. Nor do Plaintiffs explain how any fee-shifting provision could or would impose $757 million in costs on a single Plaintiff.

requires Coinbase and its users—on a bilateral basis—to resolve certain categories of claims in arbitration rather than in court. Totkov Decl., Ex. 15, Appendix 5. Courts analyzing the 2022 version of the Coinbase arbitration agreement have thus concluded that the agreement does "not lack mutuality" because it applies to "all disputes between the user and Coinbase" with "limited, mutual exceptions." *Kattula,* 2023 WL 4373385, at *5; *see also Flores*, 2023 WL 3564756, at *6 ("The arbitration provision within the 2022 User Agreement appears to satisfy bilaterality requirements imposed by California law."). The same is true here. The arbitration agreement in the 2025 User Agreement likewise applies to "all Disputes" on a bilateral basis, with a number of limited but mutual exceptions. Totkov Decl., Ex. 15, Appendix 5. Even if the agreement lacked mutuality—and it does not for the reasons just explained—that would not be enough. As the Ninth Circuit explained in *Bielski*, "a one-sided contract is not necessarily unconscionable," and "something more than the absence of mutuality is required for us to find the provision unconscionable." 87 F.4th at 1015 (citation omitted).

Plaintiffs' cases are distinguishable. In *Ramirez* v. *Charter Commc'ns, Inc.*, the agreement included a patchwork of exclusions that resulted in "claims that would typically be initiated by an employee" being directed to arbitration, while "only a small subset of claims that would typically be initiated by" the employer were directed to arbitration. 551 P.3d 520, 533–34 (Cal. 2024). Likewise, in *Alltel Corp.* v. *Rosenow*, one party to the agreement "reserved to itself the option of pursuing remedies other than arbitration," while limiting its customers to "pursuing relief…in the form of arbitration." 2014 Ark. 375, 8 (Ark. 2014). The Coinbase agreement creates no such imbalance. The arbitration provision and its exclusions apply on a mutual and bilateral basis.[5]

*Second*, Coinbase's ability to modify the terms of the User Agreement does not render the agreement "shockingly" one-sided. Two courts have considered this issue in the context of the 2022 Coinbase User Agreement and each have concluded that the unilateral modification provision

---

[5] The agreement in *Mills* v. *Facility Solutions Group, Inc.*, 300 Cal. Rptr. 3d 833 (Cal. Ct. App. 2022), included multiple unfair provisions requiring plaintiffs to pay various fees, imposing limits on attorney-fee recovery that conflicted with state law, narrowly circumscribing discovery, and shortening the limitations period. Plaintiffs point to no analogous provisions here.

does not render the arbitration agreement unenforceable. *Aggarwal*, 685 F. Supp. 3d at 875–77; *Cordero*, 2025 WL 2223495, at *7. As the *Cordero* court explained, the modification provision is not unconscionable because it permits Coinbase to make changes only with notice to its users, who were free to transfer their cryptocurrency to another platform if they did not agree. 2025 WL 2223495, at *7. As in that case, Plaintiffs here "were not improperly pressured or coerced into agreeing to the new terms," *id.*—rather, Coinbase transparently emailed Plaintiffs to advise that the User Agreement was being updated, and Plaintiffs elected to continue using Coinbase's services thereafter. Totkov Decl. ¶¶ 40–65. That fundamentally distinguishes Coinbase's provision from the agreements in the cases cited by Plaintiffs, which allowed one party to modify terms without any notice to the other. *See Harris* v. *Blockbuster Inc.*, 622 F. Supp. 2d 396, 398 (N.D. Tex. 2009) (permitting Blockbuster to modify terms "with or without notice"); *Lovinfosse* v. *Lowe's Home Centers, LLP*, 2024 WL 3732436, at *7 (E.D. Va. Aug. 8, 2024) (defendant retained "unfettered discretion…to modify or revoke the provision without notice").[6]

*Third*, that some of Plaintiffs' claims will be resolved in arbitration while others are resolved in court does not render the agreement unenforceable. As Plaintiffs admit, Pls.' MTCA Opp. 11, the Supreme Court has held that courts must compel arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings." *Byrd*, 470 U.S. at 217.

In sum, the arbitration agreement in the 2025 User Agreement is enforceable because, whether considered alone or together, none of the provisions cited by Plaintiffs "shock the conscience." *See Bielski*, 87 F.4th at 1015 (holding that "low level of substantive unconscionability" does not render Coinbase arbitration agreement unenforceable).

[6] In *Totten* v. *Kellogg Brown & Root, LLC*, the court held a unilateral modification provision was unconscionable but severed it as "collateral" to the arbitration provision and ***granted*** the defendant's motion to compel arbitration of plaintiff's individual claims. 152 F. Supp. 3d 1243, 1267 (C.D. Cal. 2016). The Coinbase User Agreement contains a severability clause which expressly provides that "[i]f any provision of this Agreement shall be determined to be invalid or unenforceable…the validity or enforceability of any other provision of this Agreement shall not be affected." Totkov Decl., Ex. 15, § 9.3. Thus, even if the modification provision in the User Agreement was unconscionable—and it is not—it would not impair the arbitration agreement.

### C. Under the 2022 Agreement, Questions About Enforceability Are Arbitrable

If the Court concludes that the 2022 User Agreement applies to Plaintiffs' claims, then disputes about the enforceability of the arbitration agreement are delegated to the arbitrator. The 2022 arbitration agreement contains a clear delegation provision that has been repeatedly and uniformly enforced. MTCA Br. 12 (collecting cases). Plaintiffs do not discuss the delegation provision in the 2022 agreement or argue that it is unenforceable.

## III. PLAINTIFFS' CLAIMS ARE ARBITRABLE

Plaintiffs do not dispute that Counts III through VIII in the AC fall within the scope of the arbitration agreement in the 2025 User Agreement. They argue that "the complaint includes two counts that cannot be arbitrated, as they seek public injunctive relief." Pls.' MTCA Opp. 10. If Plaintiffs are referring to their securities claims in Counts I and II, that argument is beside the point because those claims are excepted from the 2025 arbitration agreement.[7]

Further, Plaintiffs are simply incorrect they are seeking public injunctive relief. Plaintiffs seek only damages for injuries they allegedly suffered, *see* AC, Prayer for Relief, and have told this Court they are pursuing "***personal*** claims for losses." Amended Case Management Statement (Dkt. 66) at 10:10–11 (emphasis added); Dkt. 44 at 10:5–8 (same). Where, as here, Plaintiffs' "requests stand to benefit only Coinbase customers and not the general public as a more diffuse whole, they are not requests for public injunctive relief." *Woody*, 2023 WL 6882750, at *4 (cleaned up). *Kramer* v. *Coinbase*, *see* Pls.' MTCA Opp. 10, does not compel a different conclusion. As *Kramer* explains, the determinative issue is whether the relief sought "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the public." 326 Cal. Rptr. 3d 217, 220 (Cal. Ct. App. 2024) (citation omitted). Here, Defendants' alleged misrepresentations about WLUNA happened years ago, and Plaintiffs seek only a retrospective remedy for their own alleged financial injuries. *Kramer* thus confirms that Plaintiffs do not seek public injunctive relief.

## <u>CONCLUSION</u>

Defendants' motion to compel arbitration and stay proceedings should be granted.

---

[7] If the Court concludes the 2022 User Agreement applies, then the arbitrability of all of Plaintiffs' claims would be decided by an arbitrator, not by the Court. *See* MTCA Br. 11–12.

Dated: October 24, 2025

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Randall Scott Luskey*

Randall Scott Luskey
Paul D. Brachman (admitted *pro hac vice*)
Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)

*Attorneys for Defendants Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*