**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOEL HEABEART, *et al.*,

                                    Plaintiffs,

                    vs.

COINBASE, INC., *et al.*,

                                    Defendants.

1:25-cv-09197(JSR)(SN)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

Randall Scott Luskey (admitted *pro hac vice*)
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000

*Attorneys for Defendants Coinbase, Inc., Coinbase
Global, Inc. and Brian Armstrong*

<u>**TABLE OF CONTENTS**</u>

**Page**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND.............................................................................3

     A.     Plaintiffs Repeatedly Agreed to the Coinbase User Agreement............................3

     B.     The 2025 Coinbase User Agreement Contains an Arbitration Agreement .............5

III.   PROCEDURAL HISTORY ................................................................................6

IV.  LEGAL STANDARD .......................................................................................7

V.    ARGUMENT......................................................................................................8

     A.     Plaintiffs Accepted the Arbitration Agreement in the 2025 User Agreement.........8

           1.     The Transferor Court Already Determined That Plaintiffs Assented to the 2025 User Agreement and There Is No Compelling Reason to Revisit That Decision ..............................................................................9

           2.     The Undisputed Facts Show That Plaintiffs Assented to the Arbitration Agreement in the 2025 User Agreement ................................11

     B.     The Arbitration Agreement in the 2025 User Agreement Is Valid and Enforceable and Applies to Plaintiffs' Claims.............................................................13

           1.     The Arbitration Agreement in the User Agreement Is Presumptively Valid and Enforceable ......................................................13

           2.     Plaintiffs' Claims in Counts III through VIII Are Within the Scope of the Arbitration Agreement in the 2025 User Agreement ......................14

     C.     The 2022 User Agreement Also Requires Arbitration. ........................................15

     D.     Arbitrable Claims Should Be Stayed Pending Completion of Plaintiffs' Individual Arbitration Proceedings.........................................................................................18

VI.  CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarwal* v. *Coinbase, Inc.*,
    685 F. Supp. 3d 867 (N.D. Cal. 2023) ........................................................12, 16, 17

*Alfia* v. *Coinbase Glob., Inc.*,
    2022 WL 3205036 (N.D. Cal. July 22, 2022) ...........................................12, 13, 16

*AT&T Techs., Inc.* v. *Commc'n Workers of Am.*,
    475 U.S. 643 (1986) ....................................................................................................11

*Aubrey* v. *New Sch.*,
    624 F. Supp. 3d 403 (S.D.N.Y. 2022) ......................................................................16

*B.D.* v. *Blizzard Ent., Inc.*,
    76 Cal. App. 5th 931 (Cal Ct. App. 2022) ..............................................................11

*Cordero* v. *Coinbase, Inc.*,
    2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) ...........................................12, 16, 17

*Cosgrove* v. *Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ......................................................................16

*David L. Threlkeld & Co., Inc.* v. *Metallgesellschaft Ltd. (London)*,
    923 F.2d 245 (2d Cir. 1991)........................................................................................14

*In re Diebold Nixdorf Inc. Sec. Litig.*,
    2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ..........................................................5

*Donovan* v. *Coinbase Glob., Inc.*,
    649 F. Supp. 3d 946 (N.D. Cal. 2023) ....................................................12, 16, 17

*E.G.L. Gem Lab Ltd.* v. *Gem Quality Inst., Inc.*,
    1998 WL 314767 (S.D.N.Y. June 15, 1998) ..........................................................14

*Edmundson* v. *Klarna, Inc.*,
    85 F.4th 695 (2d Cir. 2023) ......................................................................................18

*Frazier* v. *X Corp.*,
    155 F.4th 87 (2d Cir. 2025) ..........................................................................................7

*Ghazizadeh* v. *Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................................................................12

*Gilmer* v. *Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ................................................................................8, 13

*Green Tree Fin. Corp.* v. *Randolph*,
531 U.S. 79 (2000) ......................................................................................13

*Hird* v. *iMergent, Inc.*,
2011 WL 43529 (S.D.N.Y. Jan. 6, 2011) ...................................................14

*Imptex Int'l Corp.* v. *Lorprint, Inc.*,
625 F. Supp. 1572 (S.D.N.Y. 1986) ...........................................................11

*Kamath* v. *Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024)..........................................*passim*

*Mahmoud* v. *Coinbase, Inc.*,
2022 WL 18799657 (Cal. Super. Oct. 19, 2022) ..................................12, 16

*Meyer* v. *Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..............................................................3, 8, 11, 12

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ....................................................................................14

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................................13

*Pearl* v. *Coinbase Glob., Inc.*,
2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ......................................12, 16, 17

*Rent-A-Center, West, Inc.* v. *Jackson*,
561 U.S. 63 (2010) ................................................................................13, 17

*Reznik* v. *Coinbase, Inc.*,
2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) ..........................................12, 13, 16

*Russul Corp.* v. *Zim Am. Integrated Shipping Servs.*,
2009 WL 3247141 (S.D.N.Y. Oct. 5, 2009) ...............................................10

*Shearson/Am. Express, Inc.* v. *McMahon*,
482 U.S. 220 (1987) ....................................................................................13

*Smith* v. *Spizzirri*,
601 U.S. 472 (2024)......................................................................................18

*Sultan* v. *Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) ...........................................................7

*In re Uber Techs., Inc.*,
2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) .......................................................13

*United States* v. *Cheng Le*,
902 F.3d 104 (2d Cir. 2018) ................................................................................7

*Vitzethum* v. *Dominick & Dominick Inc.*,
1996 WL 19062 (S.D.N.Y. Jan. 18, 1996) ...........................................................3

*Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989) ...........................................................................................8

*Wall St. Assocs., L.P.* v. *Becker Paribas, Inc.*,
818 F. Supp. 679 (S.D.N.Y. 1993) ......................................................................9

*Whalen* v. *NBA Props., Inc.*,
2025 WL 3013144 (S.D.N.Y. Oct. 28, 2025) ...............................................10–11

**Statutes and Rules**

9 U.S.C. §§ 1 *et seq.* .............................................................................*passim*

Fed. R. Evid. 201 ....................................................................................................5

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 4478.4 (3d ed.) ..............................................................................9

# I.    INTRODUCTION

Defendants Coinbase, Inc. ("Coinbase"), Coinbase Global, Inc. ("Coinbase Global"), and Brian Armstrong (together with Coinbase and Coinbase Global, "Defendants") move to compel arbitration of Counts III through VIII of the Amended Complaint because Plaintiffs each agreed that such "Disputes" would be resolved exclusively through individual arbitration. The Court should grant the motion because there is no dispute that Plaintiffs assented to Coinbase's 2025 User Agreement, which contains an arbitration agreement, and no dispute that the arbitration agreement applies to Counts III through VIII.

Plaintiffs initially filed this case in the District Court for the Northern District of California (the "transferor court"). Defendants moved to transfer the case to this Court pursuant to a forum selection clause contained in Coinbase's 2025 User Agreement. The transferor court (Donato, J.) granted Defendants' motion after concluding, based on the undisputed evidence, that Plaintiffs had each "accept[ed] the May 15, 2025, [U]ser [A]greement" and that the forum selection clause in that Agreement was applicable and enforceable. Luskey Decl., Ex. 3 at 4:19–5:19, 6:10–9:9.

The transferor court's ruling that Plaintiffs accepted the 2025 User Agreement is the law of the case and conclusively establishes that Plaintiffs assented to the arbitration agreement within the User Agreement. Even if that issue had not already been settled, the undisputed evidence confirms that Plaintiffs and Coinbase formed an arbitration agreement. Each Plaintiff, like all Coinbase users, agreed to the then-operative version of the Coinbase User Agreement when they first created their Coinbase accounts. *See* Declaration of Aleksandar Totkov ("Totkov Decl.") ¶¶ 6–22. Coinbase's records show that each Plaintiff also accepted an updated version of the User Agreement in 2022. *Id.* at ¶¶ 23–38. The 2022 User Agreement, like prior versions, informed users that Coinbase could modify the terms of the agreement and that continued use of the Coinbase platform would constitute acceptance of the updated terms. *Id.*, Ex. 14, Preamble,

"Amendment of these Terms." Between April 9, 2025 and April 12, 2025, Coinbase sent each Plaintiff an email providing notice that the User Agreement was being updated and providing a link to the updated terms. *Id.* at ¶¶ 40–54. Each Plaintiff continued to use Coinbase's platform after the updated User Agreement took effect. *Id.* at ¶¶ 55–66. "The email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement. *See Kamath* v. *Coinbase, Inc.*, 2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) (same with respect to 2022 User Agreement update). Plaintiffs "made no challenges to these specific facts" and did not "contest that" they "received notice of and consented to the May 15, 2025, [U]ser [A]greement." Luskey Decl., Ex. 3 at 6:18–23.

The 2025 User Agreement contains an arbitration agreement that applies to Counts III through VIII of the Amended Complaint (ECF No. 16) (the "AC"). The arbitration agreement provides, with limited exceptions,[1] that "all Disputes," including any claim "arising out of" or "relating in any way to" Coinbase's services, website, or "any products or services sold or distributed" through the Coinbase website, must be resolved through individual arbitration. Totkov Decl. ¶ 40, Ex. 15, Appendix 5. Plaintiffs allege that Coinbase made "misleading communications," about the cryptocurrency WLUNA, "mishandle[ed] WLUNA's smart contract peg," improperly suspended trading of WLUNA, and made "false, misleading, and incomplete communications to investors regarding the status of WLUNA and their associated accounts." AC ¶¶ 37–38. All of Plaintiffs' claims in Counts III through VIII thus "aris[e] out of or relat[e] to" Coinbase's services, to transactions they made "through the Coinbase site," or to the

---

[1] The only exception in the 2025 User Agreement's arbitration agreement that is relevant here applies to claims under the federal securities laws, such as Plaintiffs' claims in Counts I and II. Defendants filed a separate motion today to dismiss those Counts for failure to state a claim.

communications Plaintiffs allegedly received from Coinbase.  Accordingly, those claims must be resolved through individual arbitration.

## II.     FACTUAL BACKGROUND

Coinbase Global[2] is the parent company of wholly owned subsidiary Coinbase. Totkov Decl. ¶ 5; Def. Coinbase, Inc.'s Fed. R. Civ. P. 7.1 Disclosure Statement (ECF No. 46) at 2. Coinbase operates an online platform for buying, selling, and transferring cryptocurrencies like WLUNA, the digital asset at the center of Plaintiffs' claims.  Totkov Decl. ¶ 4.

### A.     Plaintiffs Repeatedly Agreed to the Coinbase User Agreement

To access Coinbase's services, all prospective users are required to create an account and agree to Coinbase's User Agreement.  *Id.* at ¶ 7.  Plaintiffs Lucanera, Kelley, Alatriz, Toal, Smith, Heabeart, Michaud, Moran, Duncan, and Miller first created their accounts and accepted the Coinbase User Agreement between January 6, 2015 and October 27, 2021.  *Id.* at ¶¶ 12–21.  Each of them subsequently agreed to an updated version of the Coinbase User Agreement in February 2022.  *Id.* at ¶¶ 27–36.  When they attempted to log into their Coinbase accounts, each of the aforementioned Plaintiffs was routed to a landing page announcing that Coinbase was "updating our User Agreement" and prompting the user to "review and accept your updated terms and conditions to continue using your Coinbase account."  *Id.* at ¶ 23(a).  Immediately beneath that

---

[2] Coinbase Global, Inc. has no independent business relationship with the Plaintiffs and is not a proper defendant in this case.  *See* Mem. in Supp. of Mot. to Dismiss (the "MTD Br.") at 24. Nevertheless, Plaintiffs' claims against Coinbase Global, Inc. are subject to arbitration because "charges against a parent company and its subsidiary [that] are based on the same facts and are inherently inseparable" are arbitrable "even though the parent is not formally a party to the arbitration agreement." *Vitzethum* v. *Dominick & Dominick Inc.*, 1996 WL 19062, at *7 (S.D.N.Y. Jan. 18, 1996) (quotation marks omitted).  Plaintiffs' claims against Coinbase's CEO, Defendant Armstrong, also are arbitrable.  "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 80 n.11 (2d Cir. 2017) (holding that Uber executive could enforce the arbitration agreement in Uber's Terms and Conditions even though he was not a party to that agreement (quotations omitted)).

prompt was a scroll-box containing the full text of the updated 2022 Agreement. *Id.* At the bottom of the page was a large blue button that users could click to "[a]ccept terms." *Id.* Existing users were required to accept the updated 2022 User Agreement or take steps to transfer their cryptocurrency holdings to a different platform provider. *Id.* at ¶ 23. If any Plaintiff did not want to agree to the 2022 User Agreement, they were offered the option of contacting Coinbase Support to close their account and move their funds off-platform. *Id.* at ¶ 23(b)–(c). Instead of closing their accounts and moving their funds, Coinbase's records show that Plaintiffs Lucanera, Kelley, Alatriz, Toal, Smith, Heabeart, Michaud, Moran, Duncan, and Miller logged in to their accounts and accepted the updated 2022 User Agreement by clicking the large blue acceptance button on various dates between February 3, 2022 and February 22, 2022. *Id.* at ¶¶ 27–36.

Plaintiff Yount signed up for her Coinbase account and accepted the User Agreement in May 2022. *Id.* at ¶¶ 22, 37–38. New prospective Coinbase users who created an account during that time period were required to sign up by entering their name, email address, and proposed password into a fillable form. *Id.* at ¶ 37, Ex. 29. Before they could complete their registration and account, prospective users like Plaintiff Yount were also required to affirmatively click a checkbox next to a sentence reading, "I certify that I am 18 years of age or older, and agree to the User Agreement and Privacy Policy." *Id.*, Ex. 29. The phrase "User Agreement" was blue and contained a hyperlink to the full terms of the User Agreement. *Id.*

The 2022 User Agreement informed Plaintiffs that Coinbase could "amend or modify [the] Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to" Plaintiffs, and that "continued use of [Coinbase's] Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." Totkov Decl., Ex. 14, Preamble, "Amendment of these Terms." Consistent with that provision, Coinbase emailed

Plaintiffs in mid-April 2025 to notify them of an update to the User Agreement. *Id.* at ¶ 42. Coinbase's records show that this email was sent to Plaintiffs between April 9, 2025 and April 12, 2025. *Id.* at ¶¶ 42, 44–54.

The email specifically stated that Coinbase revised the arbitration provisions of the User Agreement, and that those terms would "apply only to disputes that you or we initiate after May 15, 2025." *Id.*, Ex. 16. The email provided a hyperlink to the full terms of the updated User Agreement and encouraged users to "make sure [to] read the updated User Agreement." *Id.* The 2025 User Agreement also expressly states that continued use of Coinbase's services constitutes acceptance of the updated agreement. *Id.*, Ex. 15, Preamble, "Amendment of these Terms."[3] Coinbase's records confirm that Plaintiffs Lucanera, Kelley, Yount, Alatriz, Smith, Moran, Duncan, Heabeart, Michaud, and Miller each logged into their Coinbase accounts and made transactions after receiving the 2025 update. *Id.* at ¶¶ 56–59, 61–66. Plaintiff Toal has continued to hold WLUNA and at least three other digital assets in Coinbase after receiving the 2025 update. *Id.* at ¶ 60; Ex. 15, § 2.1 (discussing digital wallet service provided by Coinbase).

**B.      The 2025 Coinbase User Agreement Contains an Arbitration Agreement**

Appendix 5 of the 2025 User Agreement contains an arbitration agreement, which provides that "[y]ou and we agree to arbitrate all Disputes in binding arbitration." *Id.*, Ex. 15, Appendix 5, "Arbitration Agreement." "'Disputes' are defined as any dispute, claim, or disagreement arising

---

[3] The Court may consider the 2025 User Agreement under Fed. R. Evid. 201 or under the incorporation by reference doctrine because the AC quotes, cites, or references this agreement, making it an integral part of the AC. *See, e.g.*, AC ¶¶ 69–70. *In re Diebold Nixdorf Inc. Sec. Litig.*, 2021 WL 1226627, at *10 n.14 (S.D.N.Y. Mar. 30, 2021) ("It is proper for the Court to take judicial notice" of documents "quoted and referred to by the [complaint.]"). Defendants previously requested judicial notice of the archived Coinbase webpages and other materials cited herein, which was a motion unopposed by Plaintiffs. *See* Defendants' Request for Consideration of Documents Incorporated by Reference and for Judicial Notice (ECF No. 58).

out of relating in any way to our relationship with you, the Services, the Coinbase Site, any Communications you receive, any products or services sold or distributed through the Coinbase Site, or the User Agreement.  The term 'Disputes' is intended to be interpreted broadly."  *Id.*, Appendix 5, "Disputes Defined."  There are limited exceptions, only one of which is relevant here.  Specifically, the Parties agreed in the 2025 User Agreement that "Disputes about whether you or we have violated state or federal securities laws"—such as Counts I and II of Plaintiffs' Amended Complaint—"shall be resolved by a court of competent jurisdiction."  *Id.*, Appendix 5, "Arbitration Agreement," ¶ 5.

## III.  PROCEDURAL HISTORY

Plaintiffs filed their initial complaint in the United States District Court for the Northern District of California on May 27, 2025.  ECF No. 1.  Plaintiffs subsequently filed the AC on July 22, 2025, pleading eight causes of action for securities fraud (Count I), control person liability (Count II), RICO (Count III), breach of contract (Count IV), breach of implied covenant of good faith and fair dealing (Count V), conversion (Count VI), unjust enrichment (Count VII), and common law fraud (Count VIII).  *See* ECF No. 16.

On September 22, 2025, Defendants filed a motion to transfer venue and a motion to compel arbitration based on the forum selection clause and arbitration provision in the 2025 Coinbase User Agreement.  Defendants also simultaneously filed a motion to dismiss Plaintiffs' securities law claims.  ECF Nos. 55–57.  Plaintiffs opposed each motion.

With respect to the motion to transfer, Plaintiffs "made no challenges to the[] specific facts" showing their assent to the 2025 User Agreement and "did not proffer anything to contest that" they "received notice of and consented to the May 15, 2025, [U]ser [A]greement."  Luskey Decl., Ex. 3 at 6:15–23.  Plaintiffs instead argued that the 2025 User Agreement did not apply to this lawsuit because the events on which their claims were based allegedly occurred before the 2025

User Agreement came into effect. The transferor court rejected that argument, reasoning that it was "perfectly appropriate to apply the forum selection clause entered into as of May 15, 2025, to a lawsuit such as this one that was filed on May 27th, 2025." *Id.* at 8:11–13. The court orally granted Defendants' motion to transfer on October 30, 2025, after concluding that the forum selection clause applied to "all disputes between the parties including disputes about arbitrability," *id.* at 8:14–17, and holding that the forum selection clause was enforceable, *id.* at 8:18–9:9. The court did "not reach any of the other motions." *Id.* at 9:11–12.

The ruling granting Defendants' motion to transfer was memorialized in an order entered on November 3, 2025. ECF No. 71. On November 4, 2025, the case was assigned to Your Honor. *See* Text-Only Entry (Nov. 4, 2025). Defendants now renew their motion to compel arbitration of all arbitrable claims in the Amended Complaint.

## IV. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, applies to any written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." *Frazier* v. *X Corp.*, 155 F.4th 87, 95–96 (2d Cir. 2025) (quoting 9 U.S.C. § 2). Here, the alleged transactions involved interstate commerce because Plaintiffs variously contracted in multiple states to do business over the internet with Coinbase. AC ¶¶ 6–18. The use of internet technologies to purchase or transfer digital currencies satisfies the "interstate commerce" requirement. *See United States* v. *Cheng Le*, 902 F.3d 104, 112 (2d Cir. 2018) ("[T]he internet [is] routinely recognized by this court as an instrumentality of interstate commerce" (citations omitted)); *see also Sultan* v. *Coinbase, Inc.*, 354 F. Supp. 3d 156, 159–160 (E.D.N.Y. 2019) (applying FAA to Coinbase arbitration agreement). Accordingly, the FAA governs the enforceability of the arbitration agreement. *See also* Totkov Decl., Ex. 15, Appendix 5, "Arbitration Procedure" ("You and we agree that the User Agreement evidences a transaction

- 7 -

involving interstate commerce and notwithstanding any other provision with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and federal arbitration law (not state arbitration law) will govern any proceedings regarding enforcement of this Arbitration Agreement."); Ex. 14, Appendix 5 § 1.4 (same, 2022 User Agreement).

The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has emphasized that the FAA creates a strong, liberal federal policy that favors arbitration. *See, e.g.*, *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). On a motion to compel arbitration, the Court has authority to examine two gateway issues: (1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute at issue comes within the scope of the arbitration agreement. *Meyer*, 868 F.3d at 73–74. Any ambiguities relating to the scope of the arbitration clause must be resolved in favor of arbitration. *See Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989).

## V.     ARGUMENT

Coinbase's motion should be granted because there is no dispute that Plaintiffs accepted the arbitration agreement in the 2025 User Agreement and no dispute that the arbitration agreement applies to Counts III through VIII of the Amended Complaint. Alternatively, if Plaintiffs repeat their argument—already rejected by the Northern District of California—that the 2022 User Agreement applies to this case, the arbitration agreement in that User Agreement would require arbitration of all of Plaintiffs' claims.

### A.     Plaintiffs Accepted the Arbitration Agreement in the 2025 User Agreement

In granting Defendants' motion to transfer, the transferor court concluded that Plaintiffs accepted the 2025 User Agreement. That ruling is law of the case and establishes that Plaintiffs

assented to the arbitration agreement, which is contained in the same 2025 User Agreement.  Even if this issue was not settled, the undisputed facts show Plaintiffs' assent.

### 1. The Transferor Court Already Determined That Plaintiffs Assented to the 2025 User Agreement and There Is No Compelling Reason to Revisit That Decision

The transferor court squarely held that Plaintiffs agreed to the 2025 User Agreement.  ECF No. 71; Luskey Decl., Ex. 3 at 4:15–5:19, 6:10–9:9.  That ruling was based on some of the same undisputed evidence discussed above, including evidence showing that Coinbase sent each Plaintiff an email in April 2025 stating that Coinbase was updating the User Agreement and arbitration agreement, Totkov Decl. ¶¶ 44–54; Luskey Decl., Ex. 3 at 4:19–5:4; that the email contained a link to the updated terms of the 2025 User Agreement and encouraged users to read the new terms, Totkov Decl. ¶¶ 41–43; Luskey Decl., Ex. 3 at 4:25–5:9; and that each Plaintiff thereafter continued using Coinbase, Totkov Decl. ¶¶ 56–66; Luskey Decl., Ex. 3 at 5:15–19.  Plaintiffs "made no challenges to these specific facts" and "did not proffer anything to contest that" they "received notice of and consented to the May 15, 2025, [U]ser [A]greement."  Luskey Decl., Ex. 3 at 6:18–23.  Accordingly, the transferor court held that Plaintiffs accepted the 2025 User Agreement.  *Id.* at 5:18–19.

That holding is the law of the case and should not be revisited "unless there are cogent or compelling reasons" to do so, "such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Wall St. Assocs., L.P.* v. *Becker Paribas, Inc.*, 818 F. Supp. 679, 683 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 845 (2d Cir. 1994) (citation omitted); *see also* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.4 (3d ed.) ("The decision of an issue need not be express to establish the law of the case.  Implicit decision suffices…").  There are no such reasons to revisit the transferor court's ruling that Plaintiffs accepted the 2025 User Agreement.  The law and evidence are

unchanged, and there is no error or manifest injustice in need of correction. Indeed, the transferor court's ruling was consistent with others holding that an email from Coinbase notifying users of updates to the User Agreement and "continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent[.]" *See Kamath*, 2024 WL 950163, at *4 (same with respect to 2022 User Agreement update).

Where, as here, a transferor court has transferred a case based on a forum selection clause within a contract between the parties, transferee courts decline to revisit the transferor court's ruling regarding contract formation. In *Russul Corp.* v. *Zim American Integrated Shipping Services*, for example, the transferor court in the Central District of California transferred the case to the Southern District of New York after "finding the forum selection clause in the Bill of Lading enforceable." 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009). The transferee court recognized that, in "transferring th[e] case to this district, [the transferor court] determined that the Bill of Lading controls this transaction[,]" and therefore held, under the law of the case doctrine, that the Bill of Lading was applicable to the merits of the parties' dispute as well. *Id. Whalen* v. *NBA Properties, Inc.*, 2025 WL 3013144 (S.D.N.Y. Oct. 28, 2025), is also instructive. In that case, as here, plaintiffs filed a lawsuit in the Northern District of California, and the defendant simultaneously moved to transfer the case to this Court and to compel arbitration pursuant to provisions of its terms of service agreement with the plaintiffs. *Id.*, at *1. The transferor court granted the motion to transfer, holding that the plaintiffs had accepted the relevant terms of service agreements. In the Southern District of New York, the plaintiffs *conceded* that they could no longer dispute contract formation because the transferor court's rulings were law of the case, *see* Joint Letter, *Whalen* v. *NBA Props., Inc.*, 1:25-cv-06125-JAV (S.D.N.Y. Aug. 27, 2025), ECF No. 48, and the transferee court declined to revisit the transferor court's ruling that the terms of service

were "valid contracts" and that plaintiffs "had sufficient notice of the terms." *Whalen*, 2025 WL 3013144, at *3.

The same deference to the transferor court's contract formation rulings is warranted in this case, and those rulings establish Plaintiffs' assent to the 2025 User Agreement, including its arbitration agreement.

### 2. The Undisputed Facts Show That Plaintiffs Assented to the Arbitration Agreement in the 2025 User Agreement

"[A]rbitration is a matter of contract," *AT&T Techs., Inc.* v. *Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply state law to determine whether an agreement to arbitrate exists. *Meyer*, 868 F.3d at 73–74. An arbitration agreement need only be in writing, and no signature by either party is necessary. 9 U.S.C. § 2; *Imptex Int'l Corp.* v. *Lorprint, Inc.*, 625 F. Supp. 1572, 1572 (S.D.N.Y. 1986). Under California law,[4] "[m]utual assent, or consent, of the parties is essential to the existence of a contract." *B.D.* v. *Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (Cal. Ct. App. 2022) (quotation omitted).

Plaintiffs repeatedly assented to the Coinbase User Agreement and its arbitration provisions. All iterations of Coinbase's User Agreement contain an arbitration provision, Totkov Decl. ¶ 7, and Plaintiffs allege—and thus do not contest—that they "entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement." AC ¶ 69. Plaintiffs accepted the 2022 version of the Coinbase User Agreement by affirmatively clicking a blue button or checkbox indicating their acceptance of the Agreement after being presented with

---

[4] Despite the transfer to this Court, California law applies because both the 2022 and 2025 versions of the User Agreement expressly provide that California law will apply, regardless of choice of law provisions. Totkov Decl., Ex. 14, § 9.5 ("You agree that the laws of the State of California, without regard to principles of conflict of laws, will govern this Agreement and any dispute, except to the extent governed by federal law."); Ex. 15, at § 9.8 (same).

the Agreement's terms.  Totkov Decl. ¶¶ 23–38.  Courts routinely find contract formation, including in cases involving Coinbase, where "users…click an 'I agree' box after being presented with a list of terms and conditions of use."  *Meyer*, 868 F.3d at 75; *Reznik* v. *Coinbase, Inc.*, 2024 WL 1055002, at *4 (S.D.N.Y. Mar. 11, 2024) (collecting cases enforcing Coinbase's 2022 arbitration agreement); *Cordero* v. *Coinbase*, 2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025) (same).  Indeed, courts have repeatedly found that the 2022 Coinbase User Agreement is evidence of an agreement to arbitrate.  *Aggarwal* v. *Coinbase, Inc.*, 685 F. Supp. 3d 867, 873 (N.D. Cal. 2023); *Pearl* v. *Coinbase Glob., Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023); *Donovan* v. *Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) (same); *Alfia* v. *Coinbase Glob. Inc.*, 2022 WL 3205036, at *2 (N.D. Cal. July 22, 2022); *Mahmoud* v. *Coinbase, Inc.*, 2022 WL 18799657, at *1 (Cal. Super. Oct. 19, 2022).

Plaintiffs also assented to the 2025 User Agreement.  The 2022 Agreement provided that Coinbase could update the Agreement's terms by giving notice to Coinbase users and that continued use of Coinbase's services would constitute acceptance of the updated terms.  Totkov Decl., Ex. 14, Preamble, "Amendment of these Terms."  Each Plaintiff received an email expressly advising them that Coinbase was updating the Agreement and providing a link to the full text of the updated terms.  *Id.* at ¶¶ 43–54; Ex. 16.  And each Plaintiff thereafter continued using Coinbase's services.  *Id.* at ¶¶ 56–66.  The email and Plaintiffs' continued use of Coinbase's services is enough to establish "sufficient inquiry notice" and assent to the 2025 User Agreement.  *See Kamath*, 2024 WL 950163, at *4; *Ghazizadeh* v. *Coursera, Inc.*, 737 F. Supp. 3d 911, 933–34 (N.D. Cal. 2024) ("Plaintiff's consent to the 2015 TOU, which contained a 'continuing use' provision, combined with Plaintiff's continued use of Coursera's services, is sufficient to demonstrate manifestation of consent to the [January 2021] updated terms sent directly to the email

address Plaintiff had on file with Coursera"); *In re Uber Techs., Inc.*, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) ("Courts have found that when consumers receive [update] emails" that "continued use of the service or product constitutes assent to the updated terms.").

In sum, there is no dispute that Plaintiffs and Coinbase formed an arbitration agreement.

**B.** **The Arbitration Agreement in the 2025 User Agreement Is Valid and Enforceable and Applies to Plaintiffs' Claims**

The arbitration agreement within the 2025 User Agreement is valid and enforceable and Plaintiffs' claims fall squarely within its scope.

**1.** **The Arbitration Agreement in the User Agreement Is Presumptively Valid and Enforceable**

As explained above, Plaintiffs and Coinbase consented to final and binding individual arbitration by agreeing to the 2022 User Agreement, and later, the 2025 User Agreement. The FAA mandates enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The arbitration agreements at issue here are thus presumptively valid and enforceable. *See Reznik*, 2024 WL 1055002, at *4 (holding that the arbitration agreement in Coinbase's 2022 User Agreement is "valid and enforceable"); *Alfia*, 2022 WL 3205036, at *4 (holding that the arbitration agreement in Coinbase's 2017 User Agreement is "not unconscionable and is therefore enforceable."); *see also Shearson/Am. Express, Inc.* v. *McMahon*, 482 U.S. 220, 226 (1987). This presumption reflects Congress's intent to enact a "liberal federal policy favoring arbitration agreements." *See Gilmer*, 500 U.S. at 25 (citation omitted); *see also Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

To the extent that Plaintiffs argue otherwise, they bear the burden of showing that the arbitration provisions are not enforceable. *Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 91–92 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63, 72 (2010).

- 13 -

### 2. Plaintiffs' Claims in Counts III through VIII Are Within the Scope of the Arbitration Agreement in the 2025 User Agreement

Claims arise under an agreement when they "relat[e] to the interpretation and performance of the contract itself." *E.G.L. Gem Lab Ltd.* v. *Gem Quality Inst., Inc.*, 1998 WL 314767, at *5 (S.D.N.Y. June 15, 1998) (citation omitted). And an agreement that requires the Parties to arbitrate any dispute "arising out of or in relation to a contract" is broad enough to reach all aspects of their relationship. *David L. Threlkeld & Co., Inc.* v. *Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 251 (2d Cir. 1991) (citing *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)); *see also Hird* v. *iMergent, Inc.*, 2011 WL 43529, at *3 (S.D.N.Y. Jan. 6, 2011) (enforcing arbitration clause for "any and all disputes that arise between parties concerning this Agreement, or…any aspect of the [parties'] relationship." (quotations omitted)). The scope of the arbitration clause at issue here is broad. Plaintiffs and Coinbase agreed to arbitrate "any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any product sold or distributed through the Coinbase Site, the Services, or the User Agreement." Totkov Decl., Ex. 15, Appendix 5, "Disputes Defined."

The claims in Counts III through VIII fall squarely within the scope of the Parties' arbitration agreement because they specifically arise out of or relate to Coinbase's provision of services to Plaintiffs, Plaintiffs' transactions in WLUNA on the Coinbase platform, and communications that Coinbase allegedly made about those services and transactions. Plaintiffs' fourth and fifth causes of action assert breach of contract and breach of the implied covenant of good faith and fair dealing in connection with *the User Agreement itself*. AC ¶¶ 69–70; 75–76. Plaintiffs' sixth cause of action asserts conversion, alleging that Coinbase "wrongfully interfered with Plaintiffs' ownership rights" in WLUNA, a digital asset that they allege they bought and held

on Coinbase's exchange. *Id.* at ¶ 82. Plaintiffs' seventh cause of action asserts unjust enrichment, alleging that Coinbase was "wrongfully and unjustly benefited at the direct expense of Plaintiffs through its improper conduct related to the suspension and prolonged outage of WLUNA trading, failure to process conversions pursuant to immutable smart-contract protocols, materially misleading representations about the temporary nature of the suspension, and the systematic use and dissemination of materially inaccurate internal records and tax documents distinct from publicly verifiable blockchain data." *Id.* at ¶ 87. Plaintiffs' eighth cause of action asserts fraudulent misrepresentation, alleging that "Coinbase knowingly or recklessly made materially false representations and omissions concerning WLUNA, the nature and status of its trading suspension, and Coinbase's willingness and ability to execute conversions pursuant to WLUNA's immutable smart-contract peg to the new LUNA tokens." *Id.* at ¶ 93. And Plaintiffs' RICO claim (Count III) alleges predicate mail and wire fraud acts based on these same allegations. *Id.* at ¶ 63. Plaintiffs' claims thus arise directly from transactions in WLUNA that Plaintiffs made through Coinbase, from Coinbase's services and communications, and from the User Agreement itself.

Because each of Plaintiffs' claims in Counts III through VIII focuses on Coinbase's provision of services and products to users and communications that Coinbase allegedly made to its users about WLUNA, those claims arise out of or relate to "[Coinbase's] relationship with [Plaintiffs], the Services, the Coinbase Site, any Communications [Plaintiffs] receive, any products or services sold or distributed through the Coinbase Site, or the User Agreement." Totkov Decl., Ex. 15, Appendix 5, "Disputes Defined." Each of Counts III through VIII are thus covered "Disputes" under the 2025 Arbitration Agreement and must be resolved through arbitration.

### C. The 2022 User Agreement Also Requires Arbitration.

For all the reasons discussed above, Plaintiffs accepted the arbitration agreement in the 2025 User Agreement, and that agreement applies to Plaintiffs' claims in Counts III through VIII.

But even if Plaintiffs could somehow escape those conclusions, it would not change the outcome of this motion because Plaintiffs also accepted the arbitration agreement in the 2022 User Agreement. Indeed, under the 2022 User Agreement, Plaintiffs would be required to arbitrate *all* of their claims, because the arbitration agreement in the 2022 Agreement contains no carveout for federal securities law claims and also includes a delegation clause that delegates all questions of arbitrability to the arbitrator.

Plaintiffs assented to the 2022 User Agreement between February and May 2022. Totkov Decl. ¶¶ 27–38;[5] *see Reznik*, 2024 WL 1055002, at *4; *Cordero*, 2025 WL 2223495, at *1 (finding 2022 User Agreement accepted when user was presented with scrollable text, and clicked a button to accept); *Kamath*, 2024 WL 950163, at *2, *8 (same); *Aggarwal*, 685 F. Supp. 3d at 873 (finding users accepted User Agreement by clicking on "Accept terms" button); *Pearl*, 2023 WL 1769190, at *3 (where there was "no dispute that plaintiffs agreed to the 2022 User Agreement," motion to compel arbitration was granted); *Donovan*, 649 F. Supp. 3d at 956 (same); *Alfia*, 2022 WL 3205036, at *2 (finding plaintiff assented by clicking a "check box" with agreement available via hyperlink); *Mahmoud*, 2022 WL 18799657, at *1 (finding plaintiffs "entered into the 2022 Agreement" and granting motion to compel arbitration and to stay the case).

The arbitration provision in the 2022 User Agreement, like the 2025 User Agreement, broadly requires that "any dispute, claim, disagreements arising out of or relating in any way to

---

[5] The Court may take judicial notice of language that appeared on Coinbase's website. Courts regularly take judicial notice of the contents of webpages available through the Internet Archive's Wayback Machine to consider on a motion to dismiss where, as here, the archived versions of the webpages provide helpful and indisputable factual context omitted from the complaint. *Aubrey* v. *New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022) ("[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned under Federal Rule of Evidence 201." (citation omitted)); *Cosgrove* v. *Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 582 n.5 (S.D.N.Y. 2021) (same).

your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement…will be resolved by binding arbitration, rather than in court." Totkov Decl., Ex. 14, Appendix 5, § 1.1. Unlike the 2025 User Agreement, however, the arbitration provision in the 2022 User Agreement contains no exception for claims under the securities laws. Thus, Plaintiffs would be required to arbitrate *all* of their claims in this case under the 2022 User Agreement if the 2025 User Agreement was deemed inapplicable.

Under the 2022 User Agreement, the Parties also expressly agreed to delegate to the arbitrator questions related to the interpretation, scope, and enforceability of the arbitration agreement. *Id.*, Ex. 14, Appendix 5, § 1.6. Such "delegation clauses" are separate, antecedent arbitration agreements. *See Rent-A-Center*, 561 U.S. at 70. Courts analyzing the 2022 User Agreement uniformly hold that the delegation clause in the 2022 User Agreement is clear and unmistakable, and requires questions regarding the scope and enforceability of the arbitration agreement in the 2022 User Agreement to be decided by an arbitrator, not a court. *Cordero*, 2025 WL 2223495, at *8 ("The arbitration agreement [in the 2022 User Agreement] requires the Court to refer all remaining disputes to an arbitrator."); *Kamath*, 2024 WL 950163, at *9 (delegation clause in 2022 User Agreement is "valid and enforceable"); *Aggarwal*, 685 F. Supp. 3d at 882 (delegation clause is "enforceable"); *Pearl*, 2023 WL 1769190, at *7 (Plaintiff "failed to show the Delegation Clause in the Arbitration Agreement is unenforceable as unconscionable"); *Donovan*, 649 F. Supp. 3d at 954 ("[T]he delegation provision is enforceable, and the Court finds that the Coinbase Plaintiffs' challenges to arbitrability have been delegated to the arbitrator.").

Accordingly, Defendants' motion should be granted—and any disputes over the arbitrability of Plaintiffs' claims referred to arbitration—even if Plaintiffs had not accepted the 2025 User Agreement.

### D. Arbitrable Claims Should Be Stayed Pending Completion of Plaintiffs' Individual Arbitration Proceedings

If an issue referable to arbitration under an agreement to arbitrate is brought in federal court, the court must stay adjudication of that issue pending the completion of arbitration. 9 U.S.C. § 3. Because the Parties formed a valid and enforceable arbitration agreement this motion should be granted and arbitrable issues should be stayed. *Smith* v. *Spizzirri*, 601 U.S. 472, 476 (2024) ("When § 3 says that a court 'shall…stay' the proceeding, the court must do so."); *Edmundson* v. *Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023) (federal courts must "stay adjudication of claims covered by an enforceable arbitration agreement until such arbitration has been had").

## VI. CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court compel arbitration of all arbitrable claims in the Amended Complaint and stay the resolution of any arbitrable issues pending the completion of arbitration.

Dated:     January 9, 2026

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Randall Scott Luskey*

Randall Scott Luskey (admitted *pro hac vice*)

535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100
rluskey@paulweiss.com

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
pbrachman@paulweiss.com

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
kbunting@paulweiss.com
mpisem@paulweiss.com

*Attorneys for Defendants Coinbase, Inc.,
Coinbase Global, Inc. and Brian Armstrong*

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1.  I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 5,983 words.

*/s/ Randall Scott Luskey*
Randall Scott Luskey