**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOEL HEABEART, *et al.*,

                              Plaintiffs,

                    vs.

COINBASE, INC., *et al.*,

                              Defendants.

1:25-cv-09197(JSR)(SN)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP

Randall Scott Luskey (admitted *pro hac vice*)
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000

*Attorneys for Defendants Coinbase, Inc., Coinbase*
*Global, Inc., and Brian Armstrong*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 5

I.      Allegations in the Amended Complaint ................................................................. 5

II.     The User Agreement Explained the Risks of Trading in Digital Assets ............................ 6

III.    The Terra Collapse and Suspension in Trading of WLUNA .......................................... 7

IV.     Procedural History .......................................................................................... 8

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ................................................................................................................. 9

I.      The AC Fails to Allege Securities Fraud ................................................................. 9

        A.      Plaintiffs' Section 10(b) Claims Are Time-Barred ......................................... 10

        B.      The AC Fails to Plead Actionable Misstatements ......................................... 12

        C.      The Complaint Fails to Plead a Strong Inference of Scienter ............................ 16

                1.      Plaintiffs Fail to Allege Motive and Opportunity to Commit Fraud ........ 17

                2.      Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness ........... 17

        D.      Plaintiffs Fail to Allege Reliance on Coinbase's Statements ............................. 20

        E.      Plaintiffs Fail to Plead That Coinbase's Misrepresentations Caused Their Losses
                .................................................................................................. 22

II.     Plaintiffs Fail to Allege a Violation of Section 20(a) (Count II) ..................................... 23

III.    All Claims Against Coinbase Global, Inc. Should be Dismissed ..................................... 23

IV.     Plaintiffs' Securities Law Claims Should be Dismissed with Prejudice ............................ 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah* v. *United States*,
    406 U.S. 128 (1972)..................................................................................20

*Arco Cap. Corp. Ltd.* v. *Deutsche Bank AG*,
    949 F. Supp. 2d 532 (S.D.N.Y. 2013)......................................................10

*Arco Cap. Corp. Ltd.* v. *Deutsche Bank AG*,
    986 F. Supp. 2d 296 (S.D.N.Y. 2013)......................................................11

*Ark. Pub. Emp. Ret. Sys.* v. *Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) .......................................................................9

*ATSI Comms., Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................12

*Aubrey* v. *New Sch.*,
    624 F. Supp. 3d 403 (S.D.N.Y. 2022)....................................................3, 7

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
    2009 WL 4823923 (S.D.N.Y. Dec. 14, 2009) .........................................23

*Batson* v. *Rim San Antonio Acquisition, LCC*,
    2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016)..........................................21

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014)......................................................16

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021)......................................................12

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
    506 F. App'x. 32 (2d Cir. 2012) .................................................................9

*Chleck* v. *Gen. Elec. Co.*,
    287 F. Supp. 2d 457 (S.D.N.Y. 2003)..................................................24–25

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan* v. *Nat'l Gen.
Holdings Corp.*,
    2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ........................................17–18

*In re Converium Holding AG Sec. Litig.*,
    2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) .........................................20

iii

*Cosgrove* v. *Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................................ 3, 7

*In re Diebold Nixdorf Inc. Sec. Litig.*,
    2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ...................................................................... 6

*DiFolco* v. *MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ......................................................................................... 2–3

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ................................................................................ 24

*Dura Pharms., Inc.* v. *Broudo*,
    544 U.S. 336 (2005) ........................................................................................................ 22

*ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase, Co.*,
    553 F.3d 187 (2d Cir. 2009) .................................................................................... *passim*

*First Equity Corp. of Fla.* v. *Standard & Poor's Corp.*,
    869 F.2d 175 (2d Cir. 1989) ............................................................................................ 21

*Frio Energy Partners, LLC* v. *Fin. Tech. Leverage, LLC*,
    2024 WL 4493644 (S.D.N.Y. Oct. 15, 2024) .................................................................... 22

*In re Garrett Motion Inc. Sec. Litig.*,
    2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ...................................................................... 18

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................................................................... 20, 21

*I. Meyer Pincus & Assoc.* v. *Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991) ............................................................................................ 13

*Jackson* v. *Halyard Health, Inc.*,
    2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018) ............................................................... 18, 19

*Kalnit* v. *Eichler*,
    264 F.3d 131 (2d Cir. 2001) ............................................................................................ 17

*Lapin* v. *Goldman Sachs Grp., Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006) ............................................................................... 23

*Lentell* v. *Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ............................................................................................ 22

*In re Lehman Bros. Secs. & ERISA Litig.*,
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) .................................................................... 21

iv

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013).................................................................24

*Louros* v. *Kreicas*,
   367 F. Supp. 2d 572 (S.D.N.Y. 2005).................................................................15

*Lululemon Secs. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)..................................................................13

*Maloney* v. *Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021)...........................................................18, 19

*Merck & Co.* v. *Reynolds*,
   559 U.S. 633 (2010)...................................................................................10, 11

*Nandkumar* v. *AstraZeneca PLC*,
   2023 WL 3477164 (2d Cir. May 16, 2023) ....................................................15–16

*Novak* v. *Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................17, 18

*Onibokun* v. *Chandler*,
   749 F. App'x 65 (2d Cir. 2019) .......................................................................24

*Pearl* v. *Coinbase Global, Inc.*,
   2024 WL 3416505 (N.D. Cal. July 15, 2024)................................................14, 24

*Rodgers-King* v. *Candy Digital Inc.*,
   2024 WL 382092 (S.D.N.Y. Feb. 1, 2024).........................................................12

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)................................................................12–13, 17

*Rothman* v. *Gregor*,
   220 F.3d 81 (2d Cir. 2000)...............................................................................6

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)......................................................................16, 18

*Saltz* v. *First Frontier, L.P.*,
   485 F. App'x 461 (2d Cir. 2012) .....................................................................19

*Satco Inc.* v. *Gas Turbine Controls Corp.*,
   2018 WL 1115777 (S.D.N.Y. Feb. 26, 2018).....................................................11

*Schiro* v. *Cemex, S.A.B. de C.V.*,
   438 F. Supp. 3d 194 (S.D.N.Y. 2020)...............................................................23

*SEC* v. *Terraform Labs Pte. Ltd.*,
    708 F. Supp. 3d 450 (S.D.N.Y. 2023) .................................................................12

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010) ...............................................................23

*In re Shanda Games Ltd. Secs. Litig.*,
    2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019) .................................................20

*Shapiro* v. *TG Therapeutics, Inc.*,
    652 F. Supp. 3d 416 (S.D.N.Y. 2023) ...............................................................25

*Shemian* v. *Res. In Motion Ltd.*,
    570 F. App'x 32 (2d Cir. 2014) ..........................................................................18

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008)..........................................................................16–17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 314 (2007) ...................................................................................16

*Waggoner* v. *Barclays*,
    875 F.3d 79 (2d Cir. 2017).................................................................................20

*Westchester Teamsters Pension Fund* v. *UBS AG*,
    604 F. App'x 5 (2d Cir. 2015) ............................................................................16

*Wilbush* v. *Ambac Fin. Grp.*,
    271 F. Supp. 3d 473 (S.D.N.Y. 2017) .................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
    382 F. Supp. 2d 549 (S.D.N.Y. 2005) ...............................................................21

**Statutes and Rules**

15 U.S.C. § 78j .........................................................................................................12

15 U.S.C. § 78u-4 ....................................................................................1, 9, 13, 16

15 U.S.C. § 78u-5 .......................................................................................................1

28 U.S.C. § 1658 ......................................................................................................10

Fed. R. Civ. P. 9 ....................................................................................................1, 9

Fed. R. Civ. P. 12 ......................................................................................................1

Fed. R. Evid. 201 ..................................................................................................3, 6

Defendants Coinbase, Inc. ("Coinbase"), Coinbase Global, Inc. ("Coinbase Global"), and Brian Armstrong (together with Coinbase and Coinbase Global, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice Counts I and II[1] of Plaintiffs' Amended Complaint (ECF No. 16) (the "AC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, 78u-5, and all other claims against Coinbase Global to the extent not referred to arbitration.

## PRELIMINARY STATEMENT

Plaintiffs are purchasers of WLUNA, a digital asset created by a non-party, Terraform Labs. AC ¶¶ 6–17, 30–31. Plaintiffs suffered losses when Terraform's digital asset ecosystem collapsed, resulting in a crash in the market value of WLUNA. Instead of suing Terraform Labs, Plaintiffs are seeking to recover their losses from Coinbase—the cryptocurrency exchange platform on which they purchased WLUNA—as well as Coinbase's parent company and CEO, by claiming that they somehow defrauded them. Specifically, Plaintiffs allege that Defendants are liable for securities fraud because they misled Plaintiffs into believing that WLUNA was immovably pegged to LUNA and that any suspension in trading on Coinbase's platform would be temporary, and because Defendants purportedly provided certain Plaintiffs with inaccurate tax and accounting documentation. Not only are these claims time-barred, but under the PSLRA and Federal Rule of Civil Procedure 9(b), there is a uniquely high and demanding pleading standard for such claims. Plaintiffs fall well short of meeting this demanding standard because they fail to

---

[1] Defendants are simultaneously moving to compel arbitration of all other causes of action in the Amended Complaint, which must be submitted to arbitration. *See* Declaration of Aleksandar Totkov (the "Totkov Decl."), Ex. 15 at Appendix 5, § 5 (requiring securities law claims be judicially resolved). In the event Defendants' motion to compel arbitration is denied in any part, Defendants will move to dismiss all claims, which are meritless, legally deficient, and should be dismissed.

plead any particularized facts supporting their claims, including any specific statements made by Defendants or any actual facts showing Defendants acted intentionally or recklessly to defraud purchasers. The Court should dismiss this case with prejudice for the following reasons:

*First*, Plaintiffs' securities law claims are barred by the statute of limitations, which expired one year before Plaintiffs filed this action, requiring dismissal of the claims at the threshold. It is apparent on the face of the AC that Plaintiffs discovered the facts giving rise to their claims on or around May 27, 2022, when Coinbase suspended trading in WLUNA. Plaintiffs do not point to *any* facts constituting the alleged violation after this date, except for vague, undated allegations that are insufficient to save their claims. Nor can Plaintiffs' claims be deemed timely due to a later holding as to the security status of WLUNA—if WLUNA was not a security at the time of Plaintiffs' purchases, then their claims fail. And, in any event, a ***legal conclusion*** as to whether WLUNA is a security is not a ***fact*** underlying Plaintiffs' claims and is thus not relevant to determining whether their claims are time-barred, which they plainly are.

*Second*, Plaintiffs fail to identify the "who, what, when and how" of the alleged misrepresentations—making it impossible for the Court to assess their falsity. Although Plaintiffs claim that "Coinbase misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," AC ¶ 49, Plaintiffs do not identify where, when, or how any Defendant made this purported misrepresentation, and the context shows that Plaintiffs' claims are false. At most, Coinbase's website represented that "1 LUNA can be exchanged for 1 WLUNA," that WLUNA was "***intended*** to represent" LUNA on the Ethereum blockchain, and that WLUNA was "***designed*** to track LUNA's value" but never guaranteed this exchange rate. Declaration of

Randall S. Luskey (the "Luskey Decl."), Ex. 1 (emphasis added).[2]  And despite Plaintiffs' claim that "Coinbase described the suspension of WLUNA trading as temporary," *id.* at ¶ 49, Plaintiffs have not specified how or when this statement was made, and they cannot do so, because to Defendants' knowledge, no Defendant ever made any such statement.  Rather, Coinbase's website stated on May 27, 2022 that it had "suspended trading in WLUNA" on May 27, 2022, Luskey Decl., Ex. 2, but made no reference to the length of time that trading would be suspended.  And while Plaintiffs plead that "Coinbase's account statements and tax documentation provided to Plaintiffs" were inaccurate, AC ¶ 49, they do not allege facts showing ***how*** any statements or documents were false or if they were actually misleading.  Because Plaintiffs fail to identify the alleged misrepresentations or explain how any statements misled investors, Plaintiffs' claims fail.

***Third***, Plaintiffs have failed to plead ***any*** particularized facts showing that Defendants intended to deceive investors or were deliberately reckless as to the falsity of their statements. Plaintiffs have not alleged (1) that Defendants had the motive and opportunity to commit fraud, or (2) conscious misbehavior or recklessness.  As to motive and opportunity, the AC vaguely pleads only that Defendants "held substantial positions in Terra assets," AC ¶ 33, and claims Defendants

---

[2]     The Court may take judicial notice of language that appeared on Coinbase's website because the AC "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).  Courts regularly take judicial notice of the contents of webpages available through the Internet Archive's Wayback Machine to consider on a motion to dismiss where, as here, the archived versions of the webpages provide helpful and indisputable factual context omitted from the complaint. *Aubrey* v. *New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022) ("[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned under Federal Rule of Evidence 201." (citation omitted)); *Cosgrove* v. *Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 582 n.5 (S.D.N.Y. 2021) (same).  Defendants previously requested judicial notice of the archived Coinbase webpages and other materials cited herein, which was unopposed by Plaintiffs. *See* Defendants' Request for Consideration of Documents Incorporated by Reference and for Judicial Notice (ECF No. 58).

"profited…from the WLUNA market collapse," AC ¶ 42 but does not contain any facts regarding those positions, how they created any conflict, or how Defendants profited.  As to conscious misbehavior or recklessness, Plaintiffs allege that "Coinbase maintained a close and conflicted relationship with Terraform Labs," *id.* at ¶ 2, and "had direct and privileged access to non-public information regarding Terra's blockchain development, market strategies, and potential vulnerabilities," *id.* at ¶ 33; *see also id.* at ¶ 50, but Plaintiffs do not plead what, if any, information was shared between Terraform and Defendants, or when, why, and how such information was shared, or when, why, and how senior management (or Defendant Armstrong specifically) became apprised of any information contradicting any alleged misstatement.  Plaintiffs' allegations fail to raise any scienter inference, let alone a strong one that outweighs any non-culpable inference.

*Fourth*, the AC itself fails to plead, and in fact contradicts, any claim Plaintiffs reasonably and directly relied on Defendants' alleged misstatements and were misled.  Plaintiffs ***cannot*** have relied on alleged misstatements regarding the suspension of WLUNA trading, because the AC does not allege any Plaintiff purchased or sold WLUNA after Coinbase announced the trading suspension on May 27, 2022.  Similarly, allegations that Coinbase's "account statements and tax documentation" were wrong, even if misstatements, by the AC's own allegations did not mislead, because on their face they "falsely indicated ***an impossible*** acquisition cost of approximately $76 million in WLUNA tokens."  *Id.* at ¶ 39 (emphasis added).

*Fifth*, Plaintiffs fail to plead loss causation.  Any losses Plaintiffs suffered were caused by the collapse of the Terraform ecosystem and resulting crash in the market price of WLUNA—not any conduct by Defendants.  Plaintiffs admit that "the Terra blockchain ecosystem experienced a rapid and catastrophic collapse" in May 2022, leading to "a near-total crash in the market value of Terra's native cryptocurrency, LUNA, and consequently, its Ethereum-wrapped counterpart,

WLUNA."  AC ¶ 34.  Yet Plaintiffs fail to explain how Defendants' alleged misrepresentations, rather than the Terra collapse, resulted in their alleged losses.

*Sixth*, all claims against Coinbase Global[3] should be dismissed to the extent they are not referred to arbitration.  There are no properly pleaded claims against Coinbase Global in the AC; it is a distinct legal entity from Coinbase, it does not provide any of the trading services at issue here, and Plaintiffs never allege that they transacted with it.

## STATEMENT OF FACTS

### I.    Allegations in the Amended Complaint

The AC concerns WLUNA, a digital asset created by a third party, Terraform Labs.  *Id.* at ¶¶ 30–31.  Terraform developed a cryptocurrency ecosystem, including a native cryptocurrency called LUNA.  *Id.* at ¶ 30.  Because LUNA was not compatible with other blockchains, Terraform Labs allegedly introduced "Wrapped LUNA," or WLUNA, which "bridged" LUNA to the Ethereum blockchain, creating the ability to trade the digital asset on other systems, including on Coinbase's exchange.  *Id.* at ¶ 31.  Plaintiffs allege that they each purchased WLUNA tokens through Coinbase's platform at unspecified dates prior to May 27, 2022.  *Id.* at ¶¶ 6–17.

Plaintiffs claim that all Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 (Count I) and that Coinbase Global and Brian Armstrong violated § 20(a) of the Exchange Act (Count II).  Plaintiffs' securities law claims specifically rely on three alleged misstatements:

> a. Coinbase described the suspension of WLUNA trading as temporary, misleading investors into believing the token's trading and conversion functionalities would resume, despite Coinbase's internal knowledge that it would not restore trading or properly process conversions.

---

[3]    Coinbase Global, Inc. is the parent company of wholly owned subsidiary Coinbase, Inc. Any descriptions of Coinbase's business or services herein refer to Coinbase, Inc., not Coinbase Global, Inc.

b. Coinbase misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token.  After the collapse, Coinbase failed to honor or accurately implement this peg, rendering its prior assurances materially false.

c. Coinbase's account statements and tax documentation provided to Plaintiffs were materially inaccurate, generated from internal systems distinct from blockchain-ledger records, further misleading investors regarding their holdings and transaction histories.  *Id.* at ¶ 49.

## II.    The User Agreement Explained the Risks of Trading in Digital Assets

Coinbase regulates its relationship with customers through the Coinbase User Agreement (the "User Agreement").[4]  There is no dispute that Plaintiffs agreed to the User Agreement to access Coinbase's platform, and that the agreement governed their use of the exchange.  *See* AC ¶ 69 ("Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the…Coinbase[] User Agreement."); Totkov Decl., Ex. 15 at Preamble.  Plaintiffs certified that, by signing up for an account, they "read, underst[ood], and accept[ed] all of the terms and conditions contained" in the User Agreement.  *Id.* at Ex. 14 at Preamble (2022 User Agreement, same).[5]

In contrast to the AC's allegations of misrepresentations regarding the WLUNA peg or its stability, the User Agreement expressly warned Plaintiffs that "underlying software protocols

---

[4]    The Court may consider the 2025 User Agreement under Fed. R. Evid. 201 or under the incorporation by reference doctrine because the AC quotes, cites, or references this agreement, making it an integral part of the AC.  *See, e.g.*, ECF No. 16 at ¶¶ 68–70.  Because Plaintiffs' claims depend on the terms of the User Agreement, the Court can—and should—refer to them in their entirety for their context and content in evaluating Plaintiffs' claims.  *See Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("[D]ocuments that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" are incorporated by reference in the complaint); *In re Diebold Nixdorf Inc. Sec. Litig.*, 2021 WL 1226627, at *10 n.14 (S.D.N.Y. Mar. 30, 2021) ("It is proper for the Court to take judicial notice" of documents "quoted and referred to by the [complaint]").

[5]    As explained in Defendant's motion to compel arbitration filed contemporaneously herewith (at 9–13), the 2025 User Agreement is the operative agreement for purposes of this litigation.  Regardless, the 2022 User Agreement, if applicable, would not change the result for both the motion to compel arbitration and this motion to dismiss.  If the Court determines that the 2022 User Agreement applies to Plaintiffs' claims, then that version of the User Agreement is incorporated by reference in the AC for the same reasons stated above.  *See Rothman*, 220 F.3d at 88; *Diebold*, 2021 WL 1226627, at *10 n.14.

which govern the operation of Digital Assets," such as WLUNA, "may be subject to sudden changes in operating rules [that] may materially affect the availability, value, functionality, and/or the name of the Digital Asset." Totkov Decl., Ex. 15 at § 2.6. The User Agreement further cautioned that "such changes are outside of Coinbase's control" and that "Coinbase's response to any operating change is subject to its sole discretion and may include deciding not to support any new Digital Asset[.]" *Id.* And, indeed, Plaintiffs expressly agreed in the User Agreement to "***acknowledge and accept the risks of operating changes to Digital Asset protocols***" and that "***Coinbase is not responsible for such operating changes and not liable for any loss of value you may experience as a result***[.]" *Id.* (emphasis in original).

### III.    The Terra Collapse and Suspension in Trading of WLUNA

Plaintiffs allege that "[i]n early May 2022, the Terra blockchain ecosystem experienced a rapid and catastrophic collapse, triggered by severe instability in its primary algorithmic stablecoin, UST." AC ¶ 34. This instability directly resulted in a crash in the market value of LUNA, and, in turn, WLUNA. *Id.* Coinbase ultimately suspended trading of WLUNA on the Coinbase platform on May 27, 2022. *Id.* at ¶ 35. To the extent that the AC specifies when certain Plaintiffs purchased WLUNA (and it does not for many of them), every purchase was prior to this suspension. *See id.* at ¶¶ 12 (Moran "invested in WLUNA during May 2022"); 16 (Miller "invested in WLUNA in April and May 2022"); 11, 13, 14 (Smith, Duncan, and Heabeart made purchases prior to May 27, 2022). Despite the "volatility involving Terra ecosystem assets," holders of WLUNA maintained the ability to "store, send, and receive WLUNA." Luskey Decl., Ex. 2 (Screenshot of 2022 WLUNA page as of June 2, 2022).[6]

---

[6]    The AC, through its use of quotations, suggests the use of the word "temporarily" comes from a Coinbase communication. AC ¶ 35. But the AC fails to plead that Coinbase ever used this word in connection with WLUNA or communicated such a limited intention. The Court may take judicial notice of this archived version of Coinbase's WLUNA page for the fact that the word

## IV.    Procedural History

Plaintiffs[7] filed an initial complaint against Coinbase, Coinbase Global, and Brian Armstrong in the United States District Court for the Northern District of California on May 27, 2025 (ECF No. 1). Plaintiffs subsequently filed the AC on July 22, 2025 (ECF No. 16), which contains the same eight causes of action for securities fraud (Count I), control person liability (Count II), RICO (Count III), breach of contract (Count IV), breach of implied covenant of good faith and fair dealing (Count V), conversion (Count VI), unjust enrichment (Count VII), and common law fraud (Count VIII) as the initial complaint, but removed "six non-existent plaintiffs" from the initial complaint, "update[d] plaintiff residences and statements, and enhance[d] jurisdictional and legal allegations without altering the case's core claims." ECF No. 11 at 2.

On September 22, 2025, Defendants filed a motion to transfer venue, a motion to compel arbitration, and a motion to dismiss Plaintiffs' securities law claims. ECF Nos. 55, 57 & 57. Without ruling on the motions to compel arbitration or dismiss, on November 3, 2025, Judge Donato entered an order granting Defendants' motion to transfer this case to the Southern District of New York. ECF No. 71; Luskey Decl., Ex. 3 (transcript of Oct. 30, 2025 hearing). On November 4, 2025, the case was assigned to this Court. On December 19, 2025, following a joint telephone conference, the Court directed the parties to submit new briefing. Defendants now move to dismiss Plaintiffs' securities law claims with prejudice.

---

"temporarily" does not appear. *Aubrey*, 624 F. Supp. 3d at 408; *Cosgrove*, 520 F. Supp. 3d at 582 n.5.

[7]    Plaintiff Myburgh moved to dismiss all of his claims against the Defendants and was dismissed from the case on October 9, 2025. ECF No. 62. The remaining plaintiffs are Joel Heabeart, Joel Miller, Dylan Michaud, Kyle Kelley, Justin Moran, María Cecilia Lucanera, Noel Yount, Israel Alatriz, Aaron Duncan, James Michael Smith, and Edward C. Toal (together, "Plaintiffs").

## LEGAL STANDARD

Plaintiffs' Section 10(b) claims must "plead: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Ark. Pub. Emp. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 351–52 (2d Cir. 2022). Plaintiffs must plead fraud with particularity under Fed. R. Civ. P. 9(b) and satisfy the PSLRA's heightened pleading standards, 15 U.S.C. § 78u-4(b)(1); Plaintiffs must "stat[e] with particularity the circumstances constituting fraud," including by "specify[ing] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" and pleading particularized facts raising a strong inference of scienter. *ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase, Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citation omitted). The heightened pleading standard means that a complaint like the AC "cannot survive a motion to dismiss where the complaint fails to explain why [the alleged] statements and omissions were fraudulent." *Wilbush* v. *Ambac Fin. Grp.*, 271 F. Supp. 3d 473, 484 (S.D.N.Y. 2017). Failure to satisfy these stringent pleading standards requires dismissal. *See, e.g.*, *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 35–36 (2d Cir. 2012).

## ARGUMENT

### I.    The AC Fails to Allege Securities Fraud[8]

The securities law claims fail for a number of independent reasons, each warranting dismissal: (1) The claims are barred by the statute of limitations, which expired approximately a year before this action was filed; (2) Plaintiffs have not identified any false or misleading statements made by Defendants or how any statements on which Plaintiffs potentially rely are

---

[8]    Coinbase does not and has never conceded that WLUNA transactions on its platform constituted securities transactions. While the AC should be dismissed with prejudice for the reasons set forth in this Motion, Coinbase reserves the right to make future arguments on this ground, and others as appropriate.

misleading; (3) Plaintiffs fail to plead any facts showing Defendants acted intentionally or recklessly to defraud purchasers; (4) Plaintiffs do not plead that they justifiably relied on any of Coinbase's alleged statements; and (5) Plaintiffs do not sufficiently allege loss causation, particularly given that Plaintiffs' losses were directly caused by the Terra collapse—a factor entirely outside of Defendants' control.

### A.    Plaintiffs' Section 10(b) Claims Are Time-Barred

Plaintiffs' Section 10(b)/Rule 10b-5 claims must be dismissed because, on the face of the AC, Plaintiffs discovered the facts giving rise to these claims around May 2022, but only asserted their claims in May 2025—a year after the statute of limitations expired.  A 10(b) claim must be brought "not later than…2 years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b); *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 638 (2010).  "[D]iscovery refers…to a plaintiff's actual discovery of certain facts, [as well as] to the facts that a reasonably diligent plaintiff would have discovered."  *Merck*, 559 U.S. at 644; *see also  Arco Cap. Corp. Ltd.* v. *Deutsche Bank AG*, 949 F. Supp. 2d 532, 545–46 (S.D.N.Y. 2013) (plaintiff's Section 10(b) claim time barred because it could have discovered the facts underlying its scienter allegations over two years before its complaint filing).

On the face of the AC, the series of events that gave rise to Plaintiffs' claims occurred on or around May 27, 2022, when Coinbase suspended WLUNA trading.  Plaintiffs do not point to any facts "constituting the violation" that they discovered—or a diligent plaintiff would have discovered—after May 2022.  Specifically, the AC alleges that, to the extent each Plaintiff actually purchased WLUNA on Coinbase, Plaintiffs made these purchases on various unspecified dates prior to or during May 2022.  AC ¶¶ 6–17.  The AC also alleges that the Terra ecosystem collapsed "[i]n early May 2022," and that "[a]s a result of this collapse, retail investors holding WLUNA faced significant financial losses."  AC ¶ 34.  The AC next alleges that, on May 27, 2022, following

- 10 -

the collapse, "Coinbase announced via public statements…that trading in WLUNA would be 'temporarily' suspended due to market conditions." AC ¶ 35. The allegations thus make clear that Plaintiffs "knew, or through the exercise of reasonable diligence should have known, 'the facts constituting the violation'" by late May 2022 and therefore Plaintiffs' claims are time-barred. *Merck*, 559 U.S. at 642–43.

    *Arco Capital Corporation Ltd.* v. *Deutsche Bank AG*, 986 F. Supp. 2d 296 (S.D.N.Y. 2013) is instructive. There, the court dismissed plaintiffs' Section 10(b) claims as time-barred because they were brought more than two years after defendant defaulted on its obligations under certain swap agreements, finding that plaintiffs "alleged only facts available contemporaneous with default." *Id.* at 304. Here, too, Plaintiffs' allegations originate in May 2022, when the alleged misstatements occurred and all facts were known or should have been known by Plaintiffs at that time, and thus their claims, which were brought more than two years later, are barred.

    Plaintiffs allege that Defendants "prolong[ed] [the] suspension of WLUNA trading," "alter[ed] the displayed asset name" of WLUNA, and "provided false, misleading, and incomplete communications to investors regarding the status of WLUNA" on an unspecified date. *See* AC ¶¶ 36–38, 49. But these undated allegations are not sufficient to prevent dismissal on statute of limitations grounds. On any reading of the AC, all these allegations must have taken place before May 2023, and are therefore still outside the statute of limitations. Thus, "it is clear on the face of the complaint that plaintiffs filed this action after the expiration of the governing statute of limitations," *Satco Inc.* v. *Gas Turbine Controls Corp.*, 2018 WL 1115777, at *3 (S.D.N.Y. Feb. 26, 2018), and Plaintiffs' additional claims will not save them.

    In their reply to Defendants' earlier motion to dismiss, rather than dispute the black-letter law above, Plaintiffs asserted that their claims are timely because a court did not hold that WLUNA

- 11 -

was a security until December 28, 2023.  ECF No. 65 at 3–4.  This assertion is contrary to Plaintiffs' entire securities fraud theory—if WLUNA was not a security at the time of Plaintiffs' purchases, they have no claims under the federal securities laws; Section 10(b) requires that any misrepresentation be "in connection with the purchase or sale of any security."  15 U.S.C. § 78j(b); *Rodgers-King* v. *Candy Digital Inc.*, 2024 WL 382092, at *3 (S.D.N.Y. Feb. 1, 2024) (dismissing 10(b) claims where plaintiff did "not plausibly allege[] that any misrepresentations were made in connection with the sale of securities").  It is also contrary to law holding that only the facts giving rise to the violation that need to be discoverable by a reasonably diligent plaintiff, not whether the conduct is illegal.[9]  *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 340 (S.D.N.Y. 2021) (interpretation as to whether crypto token was a security "may assist the plaintiff in crafting a legal argument…[but] did not extend the statute of limitations period for his claims" under discovery rule).  Plaintiffs' backup theory to make their claims timely therefore also fails.

Accordingly, Plaintiffs' first (and, as explained below regarding control person liability, second) cause of action is barred by the statute of limitations.

### B.    The AC Fails to Plead Actionable Misstatements

To plead falsity, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Comms., Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why [it] is misleading[.]"  15 U.S.C. § 78u-4(b)(1)(B); *ECA*, 553 F.3d at 196.  "[P]laintiffs must do more than say that the statements…were false and

---

[9]    Indeed, as this Court is well aware, the very case that Plaintiffs relied on was based on public facts from before May 2022, all of which were reasonably discoverable at the time they were made.  *See SEC* v. *Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 473 (S.D.N.Y. 2023) (Rakoff, J.).

misleading; they must demonstrate with specificity why and how that is so." *Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (affirming dismissal where "nothing in the complaint explain[ed] with adequate specificity how [] statements were actually false or misleading"). Here, the AC is devoid of any context, detail, or even source of the false or misleading statements in question, and lacks any explanation of how any representation by Defendants was misleading. None of the alleged misrepresentations meet the demanding pleading standards of the PSLRA, warranting dismissal. *See id.* Moreover, Plaintiffs' claim fails for the independent reason that Defendants' representations regarding WLUNA were not misleading "taken together and in context." *Id.* (quoting *I. Meyer Pincus & Assoc.* v. *Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991)). Specifically:

*Peg*. Plaintiffs claim that Defendants "misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," AC ¶ 49, but the AC fails to identify when or how that statement was made, falling short of the PSLRA heightened pleading standard. To the extent that the AC means to refer to what Coinbase's website *actually* stated at the time, those statements were not misleading in context. *See Lululemon Secs. Litig.*, 14 F. Supp. 3d 553, 577–79 (S.D.N.Y. 2014) (finding alleged misstatements were not misleading when examined in their context). Coinbase's website said the following: "Wrapped Luna (WLUNA) is an Ethereum token that's *intended* to represent Terra (LUNA) on the Ethereum blockchain. It is not LUNA, but rather a separate ERC-20 token that's *designed* to track LUNA's value.…Through a WLUNA partner, 1 LUNA can be exchanged for 1 WLUNA, and vice-versa." Luskey Decl., Ex. 1 (archived copy of WLUNA Coinbase page as of May 23, 2022) (emphasis added). Those statements did not "misrepresent[] WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," as the AC claims, but instead accurately represented the process by which

LUNA could be exchanged for WLUNA at the time, and there is no mention of the peg being "immutable."  In another case focused on a related digital asset in the Terra-Luna ecosystem, the Court rejected similar claims that Coinbase misled purchasers regarding the maintenance of a peg or the stability of the price of an asset.  *See Pearl* v. *Coinbase Global, Inc.*, 2024 WL 3416505, at *3 (N.D. Cal. July 15, 2024) (rejecting claim that Coinbase misrepresented nature and stability of UST based on plain language and context of representations).  Nor are Plaintiffs' claims reasonable inferences in light of additional disclosures by Coinbase that "the underlying software protocols which govern the operation of Digital Assets…may be subject to sudden changes in operating rules" that "are outside of Coinbase's control" and "may materially affect the availability, value, functionality, and/or the name of the Digital Assets."  Totkov Decl., Ex. 15 § 2.6.  And in any event, the AC does not plead facts showing that WLUNA did not track LUNA's value during the relevant period.

Further, if Plaintiffs' complaint is an alleged "systematic failure to correctly process the immutable smart contract peg to the new LUNA token," AC ¶ 22, which was launched by Terraform after the suspension on May 27, *see id.* at ¶ 14, that allegation is also woefully short of an actionable misrepresentation.  No statement by Defendants is cited at all, and how Defendants' statements prior to the Terra-Luna collapse pertained to the ecosystem relaunched by Terraform after the collapse is entirely unexplained.

***Trading Suspension***.  Although Plaintiffs allege that Defendants "explicitly labeled the May 27, 2022, trading suspension as temporary," AC ¶ 48, Plaintiffs have not identified a statement by Defendants labeling the suspension as "temporary."[10]  In fact, Coinbase stated that

---

[10]    Tellingly, when Defendants confronted Plaintiffs' counsel regarding the fact that no announcement used that term, Plaintiffs amended their complaint to remove the quotation marks around the term "temporary," only confirming that no such announcement exists. *Compare* ECF

"Coinbase has suspended trading in WLUNA on May 27, 2022," making no mention of the suspension being temporary. Luskey Decl., Ex. 2 (Screenshot of June 2, 2022 WLUNA page). To the extent that Plaintiffs claim that **this** statement was somehow false or misleading, no reasonable investor could interpret Coinbase's announcement, which never uses the word temporary, as "explicitly label[ing] the May 27, 2022 trading suspension as temporary," as Plaintiffs claim in the AC.

**Tax and Account Statements**. The AC alleges that "Coinbase issued materially inaccurate tax and account statements," with some "falsely indicat[ing] an impossible acquisition cost…contradicting blockchain ledger entries." AC ¶ 39. Similarly, the AC argues that Defendants "falsely reported" Plaintiff Duncan's "holdings as worth less than $150." *Id.* at ¶ 13. However, these allegations do not detail where the inaccuracies or contradiction lay or how they are actionably misleading. Even taking as true the contention that Plaintiff Duncan's WLUNA holdings were previously reported as worth $757,928,713.65, *id.*, the claim does not allege how he could or would be misled by such an allegedly obviously false statement of his holdings. *See Louros* v. *Kreicas*, 367 F. Supp. 2d 572, 591 (S.D.N.Y. 2005) ("[F]ailure to disclose information so basic that any investor could be expected to know it is not actionable under the securities laws." (cleaned up)).

In sum, Plaintiffs fail to provide sufficient detail or context to show that Defendant's statements were false, material, or actionable. Instead, Plaintiffs impermissibly ask the Court to supply detail lacking in the AC and to ignore the PSLRA's heightened pleading standards. *See Nandkumar* v. *AstraZeneca PLC*, 2023 WL 3477164, at *2, *5 (2d Cir. May 16, 2023) (affirming

---

No. 1 at ¶¶ 3, 29, 48, 49, 57 *with* AC ¶¶ 3, 29, 48, 49, 57; *but see id.* at ¶ 35 (sole reference retaining quotation marks).

dismissal of claim where plaintiffs fail to "demonstrate with specificity why and how each statement is materially false or misleading" (cleaned up)).  The AC should be dismissed for failure to plead falsity with particularity.

### C.    The Complaint Fails to Plead a Strong Inference of Scienter

Plaintiffs also do not "state with particularity facts giving rise to a strong inference" of scienter as required by the PSLRA, which is another independent basis for dismissal.  15 U.S.C. § 78u-4(b)(2)(A).  The PSLRA imposes an unusually high burden on plaintiffs to plead scienter: they must allege particularized facts giving rise to a strong inference that defendants acted with "an intent to deceive, manipulate or defraud."  *Westchester Teamsters Pension Fund* v. *UBS AG*, 604 F. App'x 5, 7 (2d Cir. 2015).  Although courts "normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because the PSLRA requires particular allegations giving rise to a strong inference of scienter."  *ECA*, 553 F.3d at 196.  Thus, "[t]o qualify as 'strong'…an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 111 (2d Cir. 2009) (quoting *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (emphasis omitted)).  To plead the requisite scienter, Plaintiffs must allege "facts to show either (1) that the defendants had the motive and opportunity to commit the fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA*, 553 F.3d at 198.  "General, conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient."  *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. 2014).

When a defendant is a corporation, "the pleaded facts must create a strong inference" of scienter as to "someone whose intent could be imputed to the corporation."  *Teamsters Local 445*

*Freight Div. Pension Fund* v. *Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).  The AC does not plead any particularized facts supporting scienter on the part of any Defendant, let alone plead facts raising a strong inference of scienter that is as at least as compelling as any non-fraudulent inference.

### 1.      Plaintiffs Fail to Allege Motive and Opportunity to Commit Fraud

In order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiffs must allege that Defendants "benefitted in a concrete and personal way from the purported fraud." *Novak* v. *Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  But Plaintiffs fail to identify any motive for Defendants to mislead here—the AC vaguely and conclusorily alleges that Defendants "held substantial positions in Terra assets, placing it in an inherently conflicted position" and profited from the collapse.  AC ¶¶ 33, 42.  But Plaintiffs plead no facts regarding those "positions" or how they created "an inherently conflicted position," or explain how Defendants profited, falling well short of showing scienter.  *Id.*  Generic "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable," are not sufficient.  *ECA*, 553 F.3d at 198; *Novak*, 216 F.3d at 307–08 (Motives "possessed by virtually all corporate insiders" insufficient to plead scienter).  The AC therefore fails to plead any motive to commit securities fraud.  *Rombach*, 355 F.3d at 177 (complaint failed to plead motive and opportunity where it alleged "no personal interest sufficient to establish motive").

### 2.      Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness

Absent any motive allegations, Plaintiffs' scienter theory necessarily rests entirely on purported circumstantial evidence of conscious misbehavior or recklessness.  Because motive "is not apparent…the strength of circumstantial allegations must be correspondingly greater." *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  In other words, the "uphill battle to plead a strong inference of scienter becomes that much steeper." *City of N. Miami Beach Police Officers' &*

*Firefighters' Ret. Plan* v. *Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *11 (S.D.N.Y. Jan. 21, 2021). To show recklessness, Plaintiffs must plead conduct that is "highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Shemian* v. *Res. In Motion Ltd.*, 570 F. App'x 32, 35 (2d Cir. 2014). At minimum, this amounts to a "state of mind approximating actual intent and not merely a heightened form of negligence." *S. Cherry St.*, 573 F.3d at 109. And Plaintiffs must also "plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *15 n.11 (S.D.N.Y. Mar. 31, 2022) (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)).

For each Defendant, Plaintiffs therefore must allege particularized facts showing that, at minimum, they had actual access to information contradicting the alleged misstatements and "they must specifically identify the reports or statements containing" the contradictory information. *Maloney* v. *Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780 (S.D.N.Y. 2021) (quoting *Novak*, 216 F.3d at 309). But the AC is devoid of such allegations. Instead, Plaintiffs repeatedly contend in a conclusory fashion that Defendants had an "intent to deceive" or a "reckless disregard for the truth," *e.g.*, AC ¶ 51, but fail to plead any facts *whatsoever* showing that Mr. Armstrong (or other senior management) received any information internally or from Terraform Labs apprising them that any Coinbase statements regarding the purported peg, the trading suspension, specific account statements, or any other Coinbase statement was false. Plaintiffs do not identify, for example, *any* meetings, calls, or briefings where WLUNA or the Terra ecosystem was discussed. This alone requires dismissal. *See Jackson* v. *Halyard Health, Inc.*, 2018 WL 1621539, at *9 (S.D.N.Y. Mar. 30, 2018) (no scienter where complaint did not "include any specific allegations as to the information actually discussed at the alleged meetings").

At most, Plaintiffs allege that "Coinbase maintained a close and conflicted relationship with Terraform Labs," AC at ¶ 2, and "had direct and privileged access to non-public information regarding Terra's blockchain development, market strategies, and potential vulnerabilities," *id.* at ¶ 33; *see also id.* at ¶ 50. But Plaintiffs point to no particularized facts about this purported relationship and what specific contradictory information, if any, Terraform provided to Defendants and when, to whom it was provided, and whether it was relayed to any senior management of the Coinbase entities. *Maloney*, 518 F. Supp. 3d at 780 ("[T]he complaint must specifically allege defendants' knowledge of facts or access to information contradicting their public statements" to plead scienter. (cleaned up)); *Jackson*, 2018 WL 1621539, at *8 (no scienter where plaintiff failed to allege defendants "personally received" an adverse internal report or attended meetings where issues discussed).

Instead, the AC suggests a far more compelling, and entirely non-culpable inference for Defendants' statements and actions: Coinbase did not restore WLUNA trading due to factors outside of its control and independent of any alleged fraud, specifically, the collapse of the entire Terra-Luna ecosystem. Indeed, Coinbase warned digital asset purchasers that its services may become degraded or unavailable during times of significant volatility or volume, Totkov Decl., Ex. 15 at § 1.4, and that "operating changes may materially affect the availability, value, functionality, and/or the name of Digital Assets in your Digital Asset Wallet or other wallet." *Id.* at § 2.6. These warnings are inconsistent with any intent to defraud. *See Saltz* v. *First Frontier, L.P.*, 485 F. App'x 461, 464 (2d Cir. 2012) (dismissing complaint where plaintiffs "fail[ed] to allege any facts which would lead a reasonable person to deem the inference of scienter to be at least as strong as any opposing inference").

### D.    Plaintiffs Fail to Allege Reliance on Coinbase's Statements

Plaintiffs fail to plead any facts to support that they reasonably relied on the alleged misstatements, nor do they attempt to show that they are entitled to a presumption of reliance based on a fraud-on-the-market theory.[11]   To invoke the presumption of reliance, a plaintiff must plead facts showing, among other elements, that the asset "was traded in an efficient market." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) (citation omitted); *In re Shanda Games Ltd. Secs. Litig.*, 2019 WL 11027710, at *8 (S.D.N.Y. Sept. 30, 2019), *rev'd in part on other grounds*, 128 F.4th 26 (2d Cir. 2025) ("To plead reliance based on the presumption created by the fraud on the market theory…a Plaintiff must first allege that the relevant market was open and developed or, in other words efficient." (cleaned up)).   Here, Plaintiffs fail to plead facts showing that WLUNA was traded in an efficient market—the AC contains no factual allegations that WLUNA was traded in an "open and developed" market, thus requiring dismissal. *See In re Converium Holding AG Sec. Litig.*, 2006 WL 3804619, at *13 (S.D.N.Y. Dec. 28, 2006), *on reconsideration in part on other grounds*, 2007 WL 1041480 (S.D.N.Y. Apr. 9, 2007) (no reliance where plaintiffs did not allege market efficiency for purposes of invoking the fraud-on-the-market presumption).

Absent the presumption, Plaintiffs must plead reasonable and direct reliance on the alleged misstatements.   *Halliburton*, 573 U.S. at 269.   The AC conclusorily asserts that Plaintiffs "justifiably relied on Coinbase's representations or assurances when deciding to hold or purchase WLUNA."  AC ¶¶ 52, 97.  But this is insufficient; Plaintiffs must show that they were "aware of

---

[11]    Nor do Plaintiffs earn the presumption of investor reliance applicable to omissions described in *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972), because they allege reliance primarily on affirmative misrepresentations.  *See Waggoner* v. *Barclays*, 875 F.3d 79, 93 (2d Cir. 2017) (*Affiliated Ute* presumption does not apply to cases relying on "affirmative misstatements).

a [defendant's] statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation." *Halliburton*, 573 U.S. at 267 (citation omitted). Crucially, the relevant transaction must be made *after* the alleged misrepresentation. "[W]here, as here, a plaintiff alleges that the misrepresentation or omission was made after the securities transaction at issue in the complaint, that plaintiff has not pleaded" reliance. *Batson* v. *Rim San Antonio Acquisition, LCC*, 2016 WL 6901312, at *9 (S.D.N.Y. Nov. 22, 2016). Moreover, Plaintiffs' transactions must involve a purchase or sale; merely holding an asset cannot establish reliance, requiring dismissal of Plaintiffs' claims to the extent they allege that they decided to "hold" WLUNA in reliance on any representations. AC ¶¶ 52, 97; *First Equity Corp. of Fla.* v. *Standard & Poor's Corp.*, 869 F.2d 175, 180 n.2 (2d Cir. 1989) ("[P]laintiffs suing under Section 10(b)…may recover only for the losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading."); *see also In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 559 (S.D.N.Y. 2005) ("[I]t has been long established that holders of securities cannot bring federal securities law claims.").

The AC fails to plead any facts showing ***how*** Plaintiffs relied on any alleged misrepresentation in making any specific purchase of WLUNA. The AC does not even allege that the Plaintiffs read or were aware of any specific misrepresentation, which is fatal to their claims. *In re Lehman Bros. Secs. & ERISA Litig.*, 2013 WL 5730020, at *4 (S.D.N.Y. Oct. 22, 2013) (no reliance where plaintiffs did "not allege that they read the SEC Filings" that contained purported misrepresentations or that they made purchases "in direct reliance upon the specific misrepresentations cited in the amended complaint"). Moreover, reliance is foreclosed on the face of the AC as to any Coinbase statements after May 27, 2022 because the AC is devoid of any

allegation that Plaintiffs made even a single purchase or sale of WLUNA after that date, when Coinbase's website announced the WLUNA trading suspension.

Nor are there any allegations of purchases or sales in reliance on the allegedly "false and misleading account records and tax documents." AC ¶ 4. While the complaint vaguely points to "financial and legal complications" as a result of the allegedly false documentation, AC ¶ 13, it never identifies a single purchase or sale made by any Plaintiff in reliance on those documents. Finally, to the extent there were any inaccuracies in the account statements, any reliance was not reasonable on the face of the AC because, based on Plaintiffs' own allegations, it was obvious that the inaccuracies were errors. AC ¶ 4 ("[T]ax documents indicated an ***impossibly high*** transaction value of approximately $76 million." (emphasis added)); *Frio Energy Partners, LLC* v. *Fin. Tech. Leverage, LLC*, 2024 WL 4493644, at *21 (S.D.N.Y. Oct. 15, 2024) ("A person is not justified in relying upon an obviously false representation or a representation whose falsity is known to him").

Plaintiffs do not adequately plead reliance under any theory.

### E.    Plaintiffs Fail to Plead That Coinbase's Misrepresentations Caused Their Losses

Finally, Plaintiffs must plead loss causation or a "causal connection" between Defendants' alleged misrepresentations and Plaintiffs' losses. *Dura Pharms., Inc.* v. *Broudo,* 544 U.S. 336, 342 (2005). Plaintiffs must demonstrate that their "loss was caused by the alleged misstatements as opposed to intervening events." *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005). The AC fails to plead any facts showing that the alleged misrepresentations caused Plaintiffs' losses; indeed, Plaintiffs' own pleading forecloses any argument to the contrary. The AC acknowledges that it was the "rapid and catastrophic collapse" of the "Terra blockchain ecosystem…triggered by severe instability in its primary algorithmic stablecoin, UST" that ***precipitated*** the "near-total crash in the market value of…LUNA, and consequently,…WLUNA."

- 22 -

AC ¶ 34.  It was therefore this chain of events that caused Plaintiffs' losses, not the falsity of anything Defendants did or said.  Plaintiffs therefore fail to plead loss causation.  *See In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 602 (S.D.N.Y. 2010) (plaintiffs failed to adequately plead loss causation where they do not address "actions of third parties or other circumstances of the market" caused the decline in share price).

## II.    Plaintiffs Fail to Allege a Violation of Section 20(a) (Count II)

Plaintiffs also fail to state a Section 20(a) claim.  *First*, this claim is time-barred for the same reasons as Plaintiffs' Section 10(b) claim.[12]  *Second*, Plaintiffs otherwise fail to allege a primary violation of Section 10(b) for the reasons described above.  *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 2009 WL 4823923, at *15 (S.D.N.Y. Dec. 14, 2009) (where complaint failed to allege a "primary violation" by defendant, "plaintiff likewise necessarily fail[ed] to state a viable § 20(a) claim").  *Third*, no facts are alleged to support an "individualized determination" that any of the Defendants were "culpable participant[s]" in any alleged fraud because they have failed to plead a strong inference of scienter on the part of any Defendant.  *See supra* Section I.C.; *Lapin* v. *Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) ("[A] section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness.").  Accordingly, this claim must also be dismissed.

## III.   All Claims Against Coinbase Global, Inc. Should Be Dismissed

Plaintiffs assert claims against two Coinbase entities, but Plaintiffs' claims arise solely from the provision of trading services—all of which were provided by Coinbase, Inc.  Totkov Decl., Ex. 15 at Preamble (agreement is "between you…and **Coinbase, Inc.** ('Coinbase,' 'we,'

---

[12]    A Section 20(a) claim has the same statute of limitations as the underlying violation.  *Schiro* v. *Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 200 (S.D.N.Y. 2020).  As described *supra* Section I.A, this period has lapsed, and therefore the Section 20(a) claim is also out of time.

'us,' and 'our')" and "governs your use of the services provided by Coinbase" (emphasis added)). The AC asserts that Coinbase Global "was involved in, and had knowledge of, the misconduct described herein," AC ¶ 19, but pleads no facts to support this conclusion, or that the two legally separate entities should be conflated. *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418–19 (S.D.N.Y. 2011) (dismissing claims against parent company where allegations were insufficient to pierce the corporate veil); *Pearl*, 2024 WL 3416505, at *9 (dismissing claims against Coinbase Global based on conclusory allegations that Coinbase and Coinbase Global "operate as a single company"). Because Plaintiffs allege no facts regarding Coinbase Global's actions, all claims against Coinbase Global should be dismissed to the extent the claims are not referred to arbitration (*see supra* n.1).

## IV. Plaintiffs' Securities Law Claims Should be Dismissed with Prejudice

Although leave to amend is generally to be liberally granted, the Court should not grant leave when the underlying facts can never support the legal claims asserted, especially when "additional allegations…would not render [plaintiffs'] complaint timely." *Onibokun* v. *Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) ("Leave to amend is futile when a plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his claim."). Here, Plaintiffs' claims are plainly and irredeemably time-barred, stemming from events that happened far more than two years after the facts constituting the alleged violation, and cannot be saved by repleading.

Moreover, "amendment should be granted less freely when a complaint subject to the PSLRA is dismissed." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 392 (S.D.N.Y. 2013) (the "PSLRA restricts the circumstances in which amendment should be granted" and "increases the probability that a proposed amendment will be futile"). Indeed, this Court has dismissed such claims with prejudice even in an initial complaint where "the allegations of the Complaint are insufficient to meet the requirements for pleading securities fraud and [] there is no

likelihood of rectifying these deficiencies." *Chleck* v. *Gen. Elec. Co.*, 287 F. Supp. 2d 457, 460 (S.D.N.Y. 2003) (Rakoff, J.); *Shapiro* v. *TG Therapeutics, Inc.*, 652 F. Supp. 3d 416, 426 (S.D.N.Y. 2023) (Rakoff, J.) (dismissing Section 10(b) and Section 20(a) claims in first amended complaint with prejudice). Here, Plaintiffs have already amended their complaint once, yet the AC remains woefully insufficient to state a claim under the PSLRA, lacking any non-conclusory allegations of actionable misstatements, scienter (let alone the required "strong" inference) or reliance on Defendants' alleged acts or statements. And, as with the statute of limitations, repleading would necessarily be futile because the very basis of the AC stems from losses not caused by Defendants—thus, Plaintiffs' securities law claims should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Counts I and II against all Defendants, and all other claims against Defendant Coinbase Global, Inc. (to the extent not referred to arbitration) should be dismissed with prejudice.

Dated:    January 9, 2026

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:  */s/ Randall Scott Luskey*

Randall Scott Luskey (admitted *pro hac vice*)

535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100
rluskey@paulweiss.com

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
pbrachman@paulweiss.com

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
kbunting@paulweiss.com
mpisem@paulweiss.com

*Attorneys for Defendants Coinbase, Inc.,*
  *Coinbase Global, Inc. and Brian Armstrong*

## **WORD COUNT CERTIFICATION**

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1.  I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 8,219 words.

*/s/ Randall Scott Luskey*
Randall Scott Luskey