UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

JOEL HEABEART, *et al*.,

            Plaintiff,

V.

COINBASE, INC., *et al*.,

           Defendants.

------------------------------------------------

Case No.: 1:25-cv-09197-JSR

Honorable Jed S. Rakoff


# PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Bulldog Law, P.C.
Mario Tafur (admitted *pro hac vice*)
500 N. Central Ave. Ste. 610
Glendale, CA 91203
Telephone: (818) 646-8990
mario@thebulldog.law
Philip R. Berwish
Berwish Law
2 Anderson Lane
Princeton, NJ 08540
Telephone: (800) 547-8717
berwish@gmail.com

*Attorneys for Plaintiffs*

# Table of Contents

I. INTRODUCTION ................................................................................................................ 4

II. FACTUAL BACKGROUND ............................................................................................. 6

   A. The Deceptive Promotion and Collapse of WLUNA ................................................. 6

III. ARGUMENT ...................................................................................................................... 7

   A. Under *Suski*, the Court Must Decide Which Contract Governs.................................. 7

   B. The Arbitration Clause is Unenforceable Under New York Law................................. 8

      I. Procedural Unconscionability ................................................................................ 9

      II. Substantive Unconscionability.............................................................................. 9

   A. The Arbitration Agreement Was Induced by Fraud .................................................. 10

V. There Is No Legitimate Basis For A Stay & Defendants' Request Is Purely Dilatory ..........10

VI. CONCLUSION................................................................................................................. 11

PRAYER FOR RELIEF ............................................................................................................. 11

# TABLE OF AUTHORITIES

*Buckeye Check Cashing, Inc. v. Cardegna*,

546 U.S. 440 (2006) .......................................................................... 9

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,

17 N.Y.3d 269 (2011) ....................................................................... 9

*Coinbase, Inc. v. Suski*,

602 U.S. ___ (2024) ....................................................................... 4,6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,

388 U.S. 395 (1967) .......................................................................... 9

*SEC v. Ripple Labs Inc.*,

No. 20-cv-10832 (S.D.N.Y.) .............................................................. 9

*SEC v. Terraform Labs Pte. Ltd.*,

No. 23-cv-1346 (S.D.N.Y.) ................................................................ 9

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,

263 F.3d 26 (2d Cir. 2001) ................................................................ 9

*Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015)…………..11

*Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887, 895 (2d Cir. 2015)
…………………………………………………………………….9

## Statutes

9 U.S.C. §§ 1–16 (Federal Arbitration Act) .............................. _6,8_

18 U.S.C. §§ 1961–1968 (Racketeer Influenced and Corrupt Organizations Act)
................................................................................................. 8

I.      INTRODUCTION

Plaintiffs respectfully submit this Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings. Defendants seek to divert this action—alleging widespread securities fraud, market manipulation, and deceptive practices involving Wrapped LUNA ("WLUNA")—into a private arbitration forum unilaterally designed and controlled by Defendants.

Defendants' motion relies almost exclusively on a 2025 Coinbase User Agreement imposed by mass email shortly before this litigation commenced[1]. Defendants contend that Plaintiffs' continued use of the platform constituted assent to arbitration and a waiver of their right to seek judicial relief. That contention fails as a matter of federal law.

Under the Supreme Court's recent decision in *Coinbase, Inc. v. Suski*, this Court—not an arbitrator—must decide which contract governs where multiple agreements contain conflicting dispute-resolution provisions. Plaintiffs' claims arise from asset-specific promotions, representations, and contractual terms governing WLUNA, many of which contemplate judicial resolution and predate the 2025 Agreement. Moreover, the arbitration provision is unenforceable because assent was procured through fraud, the agreement is illusory and unconscionable under New York law, and enforcement would undermine federal securities and RICO 18 U.S.C. §§ 1961–1968 statutes that demand judicial oversight.

First, under the Supreme Court's decision in *Coinbase, Inc. v. Suski*, this Court—not an arbitrator—must determine which agreement governs where multiple contracts contain conflicting dispute-resolution provisions. Plaintiffs' claims arise from asset-specific representations, promotions,

---

[1] The 2025 User Agreement contains provisions by which Coinbase recites the applicability of the Uniform Commercial Code and Division 8 of the California Uniform Commercial Code, further stating:
    "**Coinbase is a "securities intermediary"** as used in Division 8 with respect to Supported Digital Assets, and your Digital Asset Wallet is a "securities account" as used in Division 8." [emphasis supplied]

and contractual terms governing WLUNA that conflict with the generalized arbitration clause Defendants invoke, requiring judicial resolution of that threshold issue.

Second, Plaintiffs seek forward-looking injunctive and equitable relief to halt Defendants' ongoing deceptive marketing and custodial practices affecting market participants. These claims underscore the Court's obligation to determine whether a valid agreement to arbitrate was ever formed and that the arbitration provision is not being used as a mechanism to shield alleged misconduct from judicial scrutiny under federal law.

Third, the arbitration provision is unenforceable because it is both procedurally and substantively unconscionable under applicable contract law. It was imposed on a take-it-or-leave-it basis, incorporates batch arbitration procedures that function to delay adjudication, and exposes retail investors to disproportionate fee-shifting risks. In addition, Defendants procured purported assent to the 2025 Agreement through fraudulent concealment of the true nature and risks of the assets at issue, including deceptive tax reporting, rendering the arbitration provision unenforceable. Notably, Defendants have not substantively addressed the merits of Plaintiffs' claims. Instead, Defendants have pursued a sequence of procedural maneuvers, including an unsuccessful attempt to consolidate this action with separate litigation in the Northern District of California, followed by motions to dismiss based on an expansive and strained (and inaccurate) interpretation of the statute of limitations, motions to transfer venue, and the present motion to compel arbitration.

This litigation posture underscores why threshold judicial scrutiny is necessary. Defendants seek to resolve this dispute through procedural displacement rather than adjudication on the merits, while simultaneously urging the Court to hold retail investors to an unreasonable and impracticable standard of certainty that even federal courts required years to clarify.

## II.     FACTUAL BACKGROUND

### A. *The Deceptive Promotion and Collapse of WLUNA*

Between January and May 2022, Coinbase aggressively marketed Wrapped LUNA or WLUNA to retail investors as a stable and secure asset ostensibly pegged one to one to the LUNA token of Terra. Coinbase profited immensely from transaction fees driven by these representations. On May 27, 2022, following the catastrophic collapse of the Terra ecosystem, Coinbase suspended trading. Crucially, Coinbase misrepresented this suspension as temporary, inducing Plaintiffs to hold their depreciating assets rather than liquidate them.

During this period, Coinbase issued and relied upon tax forms and financial account records, including but not limited to Forms 1099-MISC, Forms 1099-B (pre-2025), Forms 1099-DA (post-2026), gain/loss reports, transaction histories, and account statements (CSV and PDF formats). Coinbase acted as a securities intermediary and custodial platform, maintaining exclusive control over Plaintiffs' WLUNA holdings. As such, Coinbase was obligated under Article 8 of the Uniform Commercial Code—adopted in both New York and California—to maintain financial assets sufficient to satisfy customer security entitlements and to act in good faith and with due care in executing entitlement orders. This act of fraudulent concealment lulled Plaintiffs into a false sense of regulatory security and obscured the fact that Coinbase was acting as an unlicensed securities broker.

### A. *The Patchwork of Agreements and the 2025 Update*

Plaintiffs' relationship with Coinbase is governed not by a single agreement, but by a series of overlapping user agreements, asset-specific representations, promotional rules, and platform disclosures. Defendants concede that Plaintiffs originally agreed to earlier versions of the User Agreement. The 2025 User Agreement states, in pertinent part, "The Revised Agreement shall be effective as of the time it is posted but will not apply retroactively."

In April 2025—after WLUNA losses were realized and claims were foreseeable—Coinbase distributed a revised User Agreement by mass email. This update introduced batch arbitration procedures and expanded delegation language. Plaintiffs did not negotiate these terms, nor were they meaningfully disclosed as extinguishing existing claims arising from earlier WLUNA transactions.

### III. ARGUMENT

#### A. Under *Suski*, the Court Must Decide Which Contract Governs

Arbitration is governed by the Federal Arbitration Act 9 U.S.C. §§ 1–16, which requires courts to compel arbitration only where the parties actually agreed to arbitrate the dispute at issue. Where multiple agreements contain conflicting dispute-resolution provisions, the Supreme Court has held that a court must determine which contract governs. *Coinbase, Inc. v. Suski*, 602 U.S. ___ (2024).

Here, Defendants rely on a generalized 2025 User Agreement containing a delegation clause. Plaintiffs' claims, however, arise from WLUNA-specific transactions governed by earlier representations, promotional terms, and asset listings that conflict with mandatory arbitration. Because the source of Plaintiffs' claims is those WLUNA transactions—not the later User Agreement—this Court must determine which agreement controls before arbitration can be compelled.

The delegation clause does not alter this analysis. As *Suski* makes clear, delegation provisions do not empower arbitrators to decide which of multiple contracts governs a dispute. That threshold determination remains with the Court.

A court may not compel arbitration where assent to the arbitration agreement itself was induced by fraud. Plaintiffs allege that Coinbase secured continued platform use—and purported assent to the 2025 Agreement—through deceptive concealment of the true nature of WLUNA.

Coinbase issued tax forms and financial account records—including Forms 1099-MISC, Forms 1099-B, Forms 1099-DA, gain/loss reports, and transaction histories—that mischaracterized

WLUNA and obscured the true nature of Plaintiffs' holdings. These misrepresentations prevented Plaintiffs from understanding the scope of their rights and the consequences of accepting new dispute-resolution terms. Fraud going to contract formation must be resolved by the Court, not an arbitrator.

The 2025 User Agreement (which is not conceded to be the governing document) states in pertinent part:

> "**Disputes about whether the Dispute is arbitrable**. You and we agree that any Disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including Disputes about the enforceability, revocability, scope, or validity of the Dispute Resolution section or any portion of the Dispute Resolution section (including the Arbitration Agreement) **shall be resolved in a court of competent jurisdiction, not arbitration.** This includes, but is not limited to, any dispute about whether the Batch Arbitration provision applies to the Dispute."
> [emphasis supplied]

The 2025 User Agreement goes on to state, in pertinent part, as follows:

> "Disputes about whether you or we have violated state or federal securities laws. **In the event that there is a Dispute about whether you or we have violated state or federal securities laws**, you and we agree that such Disputes **shall be resolved by a court of competent jurisdiction**. This means, for example, if you have a Dispute that contains causes of action under the state or federal securities laws and other causes of action that are arbitrable, then the arbitrable causes of action must proceed in arbitration and the state or federal securities laws causes of action must proceed in a court of competent jurisdiction." [emphasis supplied]

Plaintiff contends the issues raised in its Amended Complaint must be determined in a court of competent jurisdiction and any related, pendent or supplemental claims are subject to this court's jurisdiction. Additionally, judicial economy dictates all issues be resolved together for efficiency, reduced cost of litigation and to avoid the probability of conflicting factual and legal determinations.

### B. *The Arbitration Clause is Unenforceable Under New York Law*

Even if contract formation were assumed, the arbitration provision is unenforceable under New York law because it is both procedurally and substantively unconscionable.

*I. Procedural Unconscionability*

The 2025 User Agreement was imposed on a take-it-or-leave-it basis through mass email. Plaintiffs had no meaningful opportunity to negotiate and no practical ability to reject the agreement while their assets were frozen and withdrawals blocked. The arbitration provisions were buried in a lengthy update and did not clearly disclose that Plaintiffs were forfeiting the right to pursue existing claims. This procedural unconscionability was compounded by Defendants' issuance of misleading account statements and tax records, which concealed material facts at the time Plaintiffs were purportedly bound to arbitration.

Coinbase's procedural advantage was compounded by its role as a custodial securities intermediary. Under New York law and Article 8 of the Uniform Commercial Code, intermediaries exercising custody and control over customer assets must act in good faith and in accordance with reasonable commercial standards. Where, as here, Coinbase exercised unilateral control over Plaintiffs' accounts, blocked withdrawals, and dictated the terms under which assets could be accessed, the relationship was one of trust and confidence sufficient to impose fiduciary or fiduciary-like duties.

*II. Substantive Unconscionability*

The arbitration scheme is unreasonably favorable to Coinbase. It permits unilateral modification, imposes batch arbitration procedures designed to delay adjudication, and exposes individual investors to potentially ruinous fee-shifting risks. These provisions render Coinbase's promise to arbitrate Unilateral Modification: The Preamble allows Coinbase to amend the agreement at any time which renders their promise to arbitrate illusory.

- Batch Arbitration Obstruction: Appendix 5 imposes a Batch Arbitration protocol that forces claimants to wait years for their cases to be heard in small groups which effectively denies

them access to justice. This is not an efficient process but rather a mechanism to kill claims through attrition.

- <u>Fee Shifting</u>: Section 9.7 purports to entitle the prevailing party to attorneys fees. Given the billion dollar stakes, this imposes a chilling risk of ruin on retail investors and violates the principle that arbitration must be an accessible alternative to litigation.

### A. The Arbitration Agreement Was Induced by Fraud

A contract is void if assent is procured by fraud. Plaintiffs allege that Coinbase secured their continued use of the platform and thus their assent to the 2025 terms through fraudulent concealment. By issuing 1099 MISC forms treating WLUNA as property rather than securities, Coinbase actively misled Plaintiffs about the legal nature of their assets and their rights. This deception prevented Plaintiffs from understanding the necessity of legal action or the risks of agreeing to new terms that waived their rights to sue for securities violations. Under the Federal Arbitration Act 9 U.S.C. §§ 1–16 and New York contract law, where fraud is alleged to have induced assent to the agreement and the arbitration provision itself, the Court, not an arbitrator, must determine enforceability, and the agreement is voidable at the election of the defrauded party. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–46 (2006); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31–32 (2d Cir. 2001); *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276–77 (2011).

Moreover, Plaintiffs' RICO and federal securities claims implicate complex statutory schemes and allegations of nationwide market manipulation that weigh strongly in favor of federal judicial oversight at the threshold, particularly where Defendants seek to enforce arbitration provisions imposed after the alleged misconduct. Count III alleges violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961–1968  or RICO based on a pattern of wire and mail

fraud spanning multiple states. The sheer scale of the alleged fraud involving over $1 billion in losses and parallel enforcement actions by the SEC implicates vital national interests.

The determination of whether crypto assets like WLUNA are securities is a matter of intense public importance and unsettled federal law as evidenced by the conflict between *SEC v. Ripple* and *SEC v. Terraform Labs*. These are issues for Article III judges and not private arbitrators.

## VI. THERE IS NO LEGITIMATE BASIS FOR A STAY & DEFENDANTS' REQUEST IS PURELY DILATORY

Defendants' successfully sought and secured a transfer of the instant action from the Northern District of California where the action was originally filed. Now Defendants' seek a stay. There is no legal or equitable basis for a stay and the request is purely dilatory and prejudicial to the Plaintiffs.

Second Circuit decisions such as *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) hold, a stay is mandatory only if arbitrable; otherwise, proceed to merits; and *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015), held, no stay if the agreement is unenforceable.

In the instant action, the agreement (2025 User Agreement) states violations of securities violations are to be tried in a court of competent jurisdiction (see pp. 7-8, above, quoting the 2025 User Agreement.) Consequently, a stay is not proper.

Coinbase, a self-described "securities intermediary" has legal obligations to maintain financial assets in sufficient quantity to match their customers' security entitlements. Coinbase is required to act in good faith and exercise due care in accordance with reasonable commercial standards to comply with entitlement orders. Coinbase, a securities intermediary, acting in a custodial role requires it manage assets for the client's benefit, as they are considered fiduciaries if a relationship of trust and confidence is established.

The request for a stay should be denied.

## VII. CONCLUSION

Defendants have not met their burden to show a valid and enforceable agreement to arbitrate these disputes. Under *Coinbase v. Suski*, this Court must determine which contract governs. The arbitration provision is unenforceable due to fraud in the inducement, unconscionability, and lack of mutual assent, and its enforcement would undermine federal statutory schemes requiring judicial supervision. A stay should be denied and arbitration denied in favor of a judicial determination.

### PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

1. DENY the Motion to Compel Arbitration and Stay Proceedings filed by Defendants;

2. RETAIN jurisdiction over all claims or alternatively over the non arbitrable claims for public injunctive relief and RICO violations; and

Dated: January 21, 2026

                                                          */s/ Mario Tafur*
Mario Tafur (admitted *pro hac vice*)
Bulldog Law, P.C.
500 N. Central Ave. Ste. 610
Glendale, CA 91203
Telephone: (818) 646-8990
mario@thebulldog.law
Philip R. Berwish – *Of Counsel*
Berwish Law
2 Anderson Lane
Princeton, NJ 08540
Telephone: (800) 547-8717
berwish@gmail.com
*Attorneys for Plaintiff*