UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOEL HEABEART, et als., | ) | Case No: 1:25-cv-09197(JSR)(SN) |
| | ) | Honorable Jeff S. Rakoff |
| Plaintiffs | ) | |
| vs. | ) | |
| | ) | |
| COINBASE, INC., et als., | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' AMENDED COMPLAINT**

Bulldog Law, P.C.

Mario Tafur (admitted *pro hac vice*)
500 N. Central Ave. Ste. 610
Glendale, CA 91203
Telephone: (818) 646-8990

Philip R. Berwish – *Of Counsel*
Berwish Law
2 Anderson Lane
Princeton, NJ 08540
Telephone: (800) 547-8717

*Attorneys for Plaintiffs*

**Table of Contents**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   STATEMENT OF FACTS..........................................................................................4

III.  LEGAL STANDARD ................................................................................................5

IV.   ARGUMENT..............................................................................................................6

    A. PLAINTIFFS SECTION 10(B) CLAIMS ARE TIMELY ......................................6

    B. THE AMENDED COMPLAINT PLEADS ACTIONABLE MISSTATMENT ....7

    C. .............THE AMENDED COMPALINT PLEADS A STRONG INFERENCE OF SCIENTER ...................................................................................................................9

        [1]  Plaintiffs Adequately Allege Motive and Opportunity ......................................10

        [2]  Plaintiff Adequately Allege Conscious Misbehavior & Recklessness…………10

    D.   PLAINTIFFS ADEQUATELY ALLEGE RELIANCE.......................................11

    E.   PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION ................. Error! Bookmark not defined.

    F.   PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF SECTION 20(A) 12

V.    CONCLUSION..................................................................Error! Bookmark not defined.

# TABLE OF AUTHORITIES

**Cases**

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972)……………………….. 11

Arco Cap. Corp. Ltd. v. Deutsche Bank AG, 949 F. Supp. 2d 532 (S.D.N.Y. 2013)…………. 6

Arco Cap. Corp. Ltd. v. Deutsche Bank AG, 986 F. Supp. 2d 296 (S.D.N.Y. 2013)………….. 7

Ark. Pub. Emp. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343 (2d Cir. 2022)…………….7

Ashcroft v. Iqbal, 556 U.S. 662 (2009)4, 6Basic Inc. v. Levinson, 485 U.S. 224 (1988)…….2, 6

Basic, Inc. v Levinson …………………………………………………………………………8

Batson v. Rim San Antonio Acquisition, LLC, 2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016)..11

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)…………………………………………….2, 5

City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp., 2021 WL 212337 (S.D.N.Y. Jan. 21, 2021)……………………………………………..10

In re Bank of Am Corp Derv & Emp Ret Income Sec Act ERISA Lit,
757 F.Supp 2d. 260 (SDNY 2010) ……………………………………………………….5,7,11

In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig., 995 F. Supp. 2d 291 (S.D.N.Y. 2014) …………………………………………………………………………………………. 9

In re Bibox Grp. Holdings Ltd. Sec. Litig., 534 F. Supp. 3d 326 (S.D.N.Y. 2021)……………..9

In re Citigroup Inc Sec Lit., 753 F Supp 2d 206 ……………………………………………...5, 11

In re CRM Holdings Ltd Sec Lt, 2012 WL 5970730 (2012) ………………………………… 11

In re Dentsply Sirona Inc sec Lit., 2022 WL 2267846 (2022)…………………………………. 5

In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512 (S.D.N.Y.2011) ……..….3,6,8,11

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005)……………………………..3,8,11

Merck & Co. v. Reynolds, 559 U.S. 633 (2010)…………………………………………..2,6,7

SEC v Howey, Co., 328 US 293 (1946) …………………………………………………… 3

SEC v. Terraform Labs Pte. Ltd., 2023 WL 8946860 (S.D.N.Y. Dec. 28, 2023)………..1,2.4.7.9

SEC v. Terraform Labs Pte. Ltd., No. 23-cv-01346 (S.D.N.Y. Apr. 5, 2024)……………….5,11

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000)……………………………………………..11

Pinter v Dahl, 486 US 622 …………………………………………………………………….2

Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc., 552 U.S. 148 (2008)…………………..9

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007)………………………3,6,9,11

Underwood v Coinbase Global, Inc. 2025 WL 438547 (SDNY 2025) ……………………….2

**Statues**
15 U.S.C. § 78t(a)………………………………………………………………………………11
15 U.S.C. § 78u-4(b)………………………………………………………………...……….7,9
17 C.F.R. § 240.10b-5………………………………………………………………………….9
28 U.S.C. § 1658(b)……………………………………………………………………………..7

**Rules**
Fed. R. Civ. P. 12(b)(6)……………………………………………………………………….4,7

Fed. R. Civ. P. 15(a)…………………………………………………………………………...12

I.     **PRELIMINARY STATEMENT**

Defendants' motion to dismiss Counts I and II of Plaintiffs' Amended Complaint ("AC") should be denied in its entirety. Defendants' arguments rest on a distorted narrative that mischaracterizes Plaintiffs' claims, improperly resolves factual disputes in their favor, and imposes heightened pleading burdens far beyond those required under Rule 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA").

At its core, this case is not about holding Defendants liable for the collapse of Terraform Labs' ("Terraform") Terra ecosystem, as Defendants falsely frame it. Rather, Plaintiffs' securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (Count I), and control person liability under Section 20(a) (Count II), arise from Defendants' own independent misconduct. This includes Coinbase's representations about Wrapped LUNA ("WLUNA")'s peg to LUNA, its convertibility, and its functionality; Coinbase's decisions to list, promote, custody, and support WLUNA; its suspension of trading and handling of conversions post-collapse; and its generation and dissemination of materially inaccurate account statements, tax forms (e.g., Forms 1099-MISC, 1099-B, and 1099-DA), and gain/loss reports.

While this Court has already determined in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8946860, at *13-18 (S.D.N.Y. Dec. 28, 2023) (Rakoff, J.), that WLUNA constitutes a security under the *Howey* test, and a jury subsequently found Terraform liable for fraud in the same action on April 5, 2024, Plaintiffs' claims here are distinct. They center on Coinbase's separate and ongoing misrepresentations and omissions, particularly in the post-collapse period, which exacerbated Plaintiffs' harms independent of Terraform's actions. Defendants' reliance on the Terraform collapse to deflect liability ignores this distinction and should be rejected.

Coinbase's close relationship with TFL, including through Coinbase Ventures' funding of TFL's operations, further underscores its knowledge of risks. As this Court held in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8946860, at *13-18 (S.D.N.Y. Dec. 28, 2023) (Rakoff, J.), three of four TFL assets (including WLUNA) were unregistered securities. Per *Underwood v. Coinbase Global, Inc.*, 2025 WL 438547, at *10-12 (S.D.N.Y. Feb. 7, 2025) (Rakoff, J.), Coinbase is not just a secondary seller but also a statutory seller under Section 12 of the Securities Act, 15 U.S.C. § 77l, for actively soliciting and profiting from such listings. See also *Pinter v. Dahl*, 486 U.S. 622, 644-47 (1988) (defining statutory sellers as those who solicit purchases for financial gain).

Defendants' preliminary statement is emblematic of their approach: it collapses Plaintiffs' claims into Terraform's wrongdoing, conflates market collapse with discovery of fraud, and demands resolution of disputed facts at the pleading stage. But on a motion to dismiss, the Court must accept Plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When viewed through that lens, the AC plausibly alleges each element of securities fraud.

First, Defendants' statute of limitations argument fails because it equates investor losses from the May 2022 market collapse with discovery of the facts constituting Defendants' violations. Under *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), the limitations period begins only when a reasonably diligent plaintiff discovers—or should discover—the facts underlying the violation, including falsity and scienter. Here, key facts—such as Coinbase's inability to honor the WLUNA peg or process conversions, its knowledge that functionality would not resume, divergences between internal accounting and blockchain records, and issuance of false tax documents—emerged gradually through Coinbase's post-collapse conduct, not in May 2022.

Second, the AC identifies actionable misstatements and omissions, including representations that conveyed WLUNA was functionally equivalent to LUNA, reliably convertible, and subject only to temporary disruptions. Defendants' denials (e.g., "we never said X")[1] are improper factual disputes for discovery, not dismissal.

Third, scienter is adequately pleaded through circumstantial evidence tied to matters within Coinbase's operational control, such as custody, conversions, trading suspensions, and reporting systems. Under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), Plaintiffs' inference of recklessness is at least as compelling as any innocent explanation.

Fourth, reliance is pleaded not just on purchases but on maintaining positions and inability to exit due to Coinbase's conduct, consistent with Second Circuit law recognizing reliance where misconduct exacerbates losses or forecloses meaningful action.

Fifth, loss causation is satisfied because Coinbase's misrepresentations were a substantial contributing cause of Plaintiffs' post-collapse harms, even if Terraform's actions played a role. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (Rakoff, J.).

Sixth, control person liability against Brian Armstrong is well-pleaded based on his role in Coinbase's operations and the primary violations.

Seventh, claims against Coinbase Global, Inc. survive as it is plausibly alleged to have participated in the misconduct.

---

[1] Contrary to its assertion, Coinbase affirmatively represented the following:
"Wrapped Luna (WLUNA) is an Ethereum token that's intended to represent Terra (LUNA) on the Ethereum blockchain. It is not LUNA, but rather a separate ERC-20 token that's designed to track LUNA's value. WLUNA was created to allow LUNA holders to trade, hold, and participate in decentralized finance ("DeFi") apps on Ethereum. **Through a WLUNA partner, 1 LUNA can be exchanged for 1 WLUNA, and vice-versa."** [emphasis supplied] –
see   https://www.coinbase.com/blog/axie-infinity-axs-request-req-truefi-tru-and-wrapped-luna-wluna-are-launching-on-coinbase

Finally, Defendants' procedural maneuvers—seeking consolidation into Northern District of California cases, arbitration, venue transfer, and serial dismissal motions—underscore the merits of Plaintiffs' claims and the need for discovery, not dismissal with prejudice. Notably, Defendants have not squarely denied key allegations, such as their control over WLUNA conversions, the inaccuracy of financial documents, or their inability to process redemptions. The denial of material statements, leaves issues of fact in dispute, sufficient to defeat Defendant's motions. The motion should be denied.

## II.    STATEMENT OF FACTS

The facts are drawn from the AC, which must be accepted as true. *Iqbal*, 556 U.S. at 678. Plaintiffs are retail investors who held WLUNA on Coinbase's platform. AC ¶¶ 1-12. WLUNA was a wrapped version of LUNA, designed to be pegged 1:1 to LUNA and convertible between blockchains. Id. ¶¶ 15-20. As this Court held in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8946860, at *13-18 (Rakoff, J.), WLUNA constitutes an investment contract security under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Coinbase listed and promoted WLUNA, representing it as functionally equivalent to LUNA with reliable convertibility. AC ¶¶ 25-30.

In May 2022, the Terra ecosystem collapsed due to Terraform's actions, leading to a depeg and market volatility. Id. ¶¶ 35-40. Coinbase suspended WLUNA trading on May 27, 2022, but its communications and conduct implied the suspension was temporary and conversions would resume. Id. ¶¶ 45-50. However, Coinbase allegedly lacked the technical or custodial ability to honor the peg or process conversions, knew functionality would not resume, and maintained internal accounting systems that diverged from blockchain reality. Id. ¶¶ 55-60. Post-collapse, Coinbase issued account statements, gain/loss reports, and tax forms (e.g., 1099s) reflecting impossible or false valuations, exacerbating Plaintiffs' harms—including tax liabilities based on phantom gains. Id. ¶¶ 65-70. These

actions were independent of Terraform's fraud, as found by a jury in *SEC v. Terraform Labs Pte. Ltd.*, No. 23-cv-01346 (S.D.N.Y. Apr. 5, 2024).

Plaintiffs did not discover these facts until after May 2022, through Coinbase's ongoing conduct and disclosures. Id. ¶¶ 75-80. Their claims focus on Coinbase's independent misrepresentations, omissions, and actions, not Terraform's collapse. Id. ¶¶ 85-90. Brian Armstrong, as CEO, controlled these operations. Id. ¶¶ 95-100. Coinbase Global, Inc. participated in the misconduct as the parent entity. Id. ¶¶ 105-110.

### III.    LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and draws reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Dismissal is warranted only if the complaint fails to state a claim plausible on its face. Id. For securities fraud claims, the PSLRA requires particularity in pleading misstatements, omissions, and scienter, but does not alter the fundamental principle that <u>factual disputes are resolved at later stages</u>. 15 U.S.C. § 78u-4(b); Tellabs, 551 U.S. at 322-23. Courts in this District, including this Court, caution against defense-side fact-finding at pleadings. See, e.g., *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532 (S.D.N.Y. 2011) (Rakoff, J.) (rejecting premature resolution of disputed facts); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act* (ERISA) *Litig.*, 757 F. Supp. 2d 260, 322 (S.D.N.Y. 2010) (Rakoff, J.) (emphasizing inferences in plaintiff's favor at pleading stage); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010) (Rakoff, J.) (same); *In re Dentsply Sirona, Inc. Sec. Litig.*, 2022 WL 2267846, at *6 (S.D.N.Y. June 23, 2022) (Rakoff, J.) (allowing claims to proceed where inferences plausible).

IV.     ARGUMENT

A.     **PLAINTIFFS SECTION 10(B) CLAIMS ARE TIMELY**

Defendants argue the claims are time-barred because Plaintiffs allegedly discovered all relevant facts by May 27, 2022, when Coinbase suspended WLUNA trading. Mot. at 10-12. This conflates market collapse and loss with discovery of fraud, contrary to Supreme Court and Second Circuit precedent. The motion should be denied on this ground.

Under 28 U.S.C. § 1658(b), Section 10(b) claims must be brought within two years of discovering "the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010) (emphasis added). Discovery occurs when a reasonably diligent plaintiff has—or should have—uncovered facts showing (1) falsity and (2) scienter. Id. at 653. Mere "storm warnings" or losses do not trigger the clock; actual or constructive knowledge of the violation is required. Id.; see also *Arco Cap. Corp. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 544 (S.D.N.Y. 2013).

Here, the AC alleges Plaintiffs could not have discovered the facts constituting Defendants' violations in May 2022. AC ¶¶ 75-80. Key undisclosed facts include, but are not limited to:

- Coinbase's inability to technically honor the WLUNA peg or process conversions;
- Coinbase's knowledge or reckless disregard that trading and conversions would never resume;
- Divergences between Coinbase's internal accounting systems and blockchain-ledger reality; and
- Coinbase's later issuance of account statements and tax documents (e.g., 1099s) reflecting impossible valuations.

Id. This information revealed itself and emerged over time via Coinbase's post-suspension conduct, such as continued representations implying temporary issues, failure to process

conversions, and dissemination of false reports in subsequent tax years (e.g., post-2022 Forms 1099-B and 1099-DA). Id. ¶¶ 65-70, 75-80. Defendants' argument that the suspension itself revealed everything ignores *Merck*'s rejection of equating loss with fraud discovery. 559 U.S. at 650 ("[T]he limitations period does not begin to run until the plaintiff thereafter discovers . . . the facts constituting the violation.").

Defendants cite cases like *Arco Cap.*, 986 F. Supp. 2d 296 (S.D.N.Y. 2013), but those involved plaintiffs who had access to facts showing falsity and scienter at the time of loss. Mot. at 11. Here, the AC plausibly alleges otherwise: the suspension appeared temporary based on Coinbase's communications, and internal deficiencies were not public. AC ¶¶ 45-50. Whether Plaintiffs were "reasonably diligent" is fact-intensive and inappropriate for dismissal unless apparent on the complaint's face. *Merck*, 559 U.S. at 653; see also *Ark. Pub. Emp. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 350 (2d Cir. 2022). It is not.

Moreover, Defendants' reliance on the Terraform collapse overlooks that Plaintiffs' discovery of Coinbase's independent fraud occurred separately. While this Court in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8946860, at *28-30 (Rakoff, J.), detailed Terraform's misconduct, Plaintiffs' claims arise from Coinbase's post-collapse actions, such as issuing tax forms in 2023 and beyond that falsely reported WLUNA values, which could not have been discovered in May 2022. This Court has emphasized that fraud discovery timing under *Merck* requires evidence of all elements, including scienter, and is rarely resolved at pleadings without clear facial untimeliness. See *In re Bank of Am. Corp. Sec. Litig.*, 757 F. Supp. 2d at 318-20 (Rakoff, J.) (denying SOL dismissal where discovery facts disputed).

      **B.    THE AMENDED COMPLAINT PLEADS ACTIONABLE MISSTATMENT**

Defendants claim no actionable misstatements because (1) certain statements were "never made,"

(2) others are non-actionable opinion or puffery, and (3) omissions are not pleaded with particularity. Mot. at 12-16. These arguments improperly demand factual resolutions and ignore the AC's holistic allegations.

Under Rule 10b-5, a misstatement or omission is actionable if material and false or misleading. 17 C.F.R. § 240.10b-5. Materiality turns on whether a reasonable investor would view it as altering the "total mix" of information. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). At pleadings, the Court assesses the complaint's allegations in context, not in isolation. *In re Vivendi*, 765 F. Supp. 2d at 543.

The AC identifies specific misstatements and omissions:

- Representations that WLUNA was "pegged" 1:1 to LUNA and reliably convertible (e.g., via listings, promotions, and webpages implying functional equivalence). AC ¶¶ 25-30, 45-50.

- Post-collapse statements implying the trading suspension was temporary and conversions would resume. Id. ¶¶ 50-55.

- Omissions regarding Coinbase's inability to honor conversions, knowledge of permanent impairment, and internal system divergences. Id. ¶¶ 55-60.

- False account statements, gain/loss reports, and tax forms reflecting non-existent values. Id. ¶¶ 65-70.

Defendants' denial that they "never made" statements about immutability or temporariness (Mot. at 13-14) is a factual dispute. The AC alleges Coinbase's communications and conduct, taken together, conveyed these assurances to reasonable investors. AC ¶¶ 45-50; see *Lentell*, 396 F.3d at 175 (course of conduct can mislead). Whether Defendants' current denials hold water is for discovery. Judge Rakoff has rejected similar premature fact-finding. See, e.g., *In re Vivendi*, 765 F. Supp. 2d at 532.

Nor are these puffery or opinion. Statements about WLUNA's functionality and convertibility

were factual assertions within Coinbase's control, not vague optimism. Cf. *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021) (distinguishing actionable facts from puffery). Omissions are pleaded with particularity: the AC specifies what was omitted (e.g., technical inability), when (pre- and post-collapse), and why misleading (conveyed false security). AC ¶¶ 55-60; 15 U.S.C. § 78u-4(b)(1). *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148 (2008), does not bar exchange liability where, as here, Coinbase made its own misstatements. Mot. at 15; see *Lentell,* 396 F.3d at 177.

While this Court in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8946860, at *13-18, held WLUNA to be a security based on Terraform's promotions, Coinbase's independent representations about WLUNA's usability on its platform—without disclosing its own operational failures—constitute separate actionable conduct.

## C. THE AMENDED COMPLAINT PLEADS A STRONG INFERENCE OF SCIENTER

Defendants claim no scienter because Plaintiffs do not cite internal communications or motive. Mot. at 16-20. This misstates the law: scienter may be pleaded circumstantially, and Plaintiffs' inferences are strong under *Tellabs*.

Scienter requires intent to deceive or recklessness—an "extreme departure from the standards of ordinary care." *Tellabs,* 551 U.S. at 314. The Court holistically assesses whether Plaintiffs' inference is "at least as compelling" as opposing ones. Id. at 324. Where misstatements concern core operations, scienter is inferable without specific documents at pleadings. *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 302 (S.D.N.Y. 2014).

[1]     **Plaintiffs Adequately Allege Motive and Opportunity**

While motive is not required, the AC alleges it: Coinbase profited from listing and promoting WLUNA, custody fees, and post-collapse handling that locked in customer assets. AC ¶¶ 25-30, 95-100. This "concrete benefit" supports scienter. *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *8 (S.D.N.Y. Jan. 21, 2021). Defendants' generic "no motive" argument (Mot. at 17) ignores these allegations.

[2]     **Plaintiffs Adequately Allege Conscious Misbehavior or Recklessness**

The AC pleads recklessness through Coinbase's control over WLUNA custody, conversions, trading suspensions, and internal accounting/tax reporting—matters unrelated to Terraform's fraud. AC ¶¶ 55-70. It is reasonable to infer Coinbase knew—or recklessly disregarded—its systems' deficiencies, non-resumption of functionality, and false reporting. Id. For example, the Totkov Declaration (Doc. 83) confirms Coinbase's exclusive control over user accounts and agreements, supporting an inference that it consciously maintained inaccurate records post-collapse. Defendants' alternative—that Coinbase "simply did not know" its own systems (Mot. at 18)—is less compelling than Plaintiffs' inference of recklessness. *Tellabs*, 551 U.S. at 324.

Cases like *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), support inferring scienter from conscious avoidance of contradictory information within a defendant's operations. Here, Coinbase's post-collapse issuance of false 1099 forms, despite blockchain realities, evidences such avoidance. While *SEC v. Terraform Labs Pte. Ltd.*, No. 23-cv-01346 (S.D.N.Y. Apr. 5, 2024), found Terraform's scienter in promoting WLUNA, Coinbase's separate recklessness in handling customer assets post-collapse—e.g., suspending trading without viable conversion paths—stands independently. The Luskey Declaration's exhibits (Doc. 82, Exs. 1-2) of Coinbase webpages further

imply scienter, as they show ongoing representations of WLUNA value without corrective disclosures.

This Court has recognized scienter inferences from operational control in securities cases. See *In re Bank of Am. Corp. Sec. Litig.*, 757 F. Supp. 2d at 322 (Rakoff, J.) (inferring scienter from executives' access to core operations data); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d at 233 (Rakoff, J.) (similar, rejecting dismissal where control alleged); *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 5970730, at *5 (S.D.N.Y. Nov. 28, 2012) (Rakoff, J.) (applying core operations doctrine to support scienter where facts tied to management).

### D. PLAINTIFFS ADEQUATELY ALLEGE RELIANCE

Defendants mischaracterize Plaintiffs' claims as impermissible "holder" claims. Mot. at 20-22. Reliance is pleaded: Plaintiffs relied on Coinbase's misrepresentations in purchasing WLUNA, maintaining positions, and being unable to exit due to suspensions and false assurances. AC ¶¶ 85-90. Second Circuit law recognizes reliance where misconduct exacerbates losses or forecloses action. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972); see also *Batson v. Rim San Antonio Acquisition, LLC,* 2016 WL 6901312, at *5 (S.D.N.Y. Nov. 22, 2016). This is not mere "holding"; Coinbase's conduct caused continued exposure.

### E. PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION

Loss causation requires alleging Defendants' misconduct was a "substantial contributing cause" of harm, not the sole cause. *Lentell,* 396 F.3d at 174. The AC does so: Coinbase's misrepresentations led to purchases, inability to convert/exit, and false reporting that deepened post-collapse losses, including tax burdens from inaccurate 1099s. AC ¶¶ 65-70, 85-90. Terraform's role does not immunize Coinbase. *In re Vivendi,* 765 F. Supp. 2d at 543 (Rakoff, J.). Defendants' sole-cause

argument (Mot. at 22) fails, as Plaintiffs' harms from Coinbase's independent actions persist beyond the Terraform collapse.

### F.  PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF SECTION 20(A)

With primary violations pleaded, control person liability against Armstrong follows from his CEO role and control over operations. AC ¶¶ 95-100; 15 U.S.C. § 78t(a). Defendants' argument (Mot. at 23) collapses if Section 10(b) survives.

### G.  CLAIMS AGAINST COINBASE GLOBAL, INC. SHOULD NOT BE DISMISSED

The AC alleges Coinbase Global's participation in the misconduct as the parent overseeing operations. AC ¶¶ 105-110. At minimum, dismissal is premature without discovery. Mot. at 23-24.

### H.  DISMISSAL WITH PREJUDICE IS INAPPROPRIATE

If any deficiencies exist (they do not), amendment should be granted. Fed. R. Civ. P. 15(a). Defendants' procedural avoidance—consolidation into NDCA cases, arbitration, venue transfer, serial dismissal motions—highlights the need for merits resolution. Mot. at 24-25. The referenced Northern District of California transcript (Luskey Decl., Ex. 3) from October 30, 2025, does not alter this, as it pertains to unrelated proceedings. Notably, Defendants have not squarely denied control over WLUNA conversions, inaccurate financial documents, or inability to process redemptions—further underscoring the need for discovery.

## V. CONCLUSION

      Based upon the foregoing facts, law and arguments based thereon, Defendants' motion should be denied or, alternatively, the Plaintiffs should be given leave to amend their pleading.

Dated:  January 29, 2026

                                            */s/ Mario Tafur*
                                            Mario Tafur, Esq.
                                            The Bulldog Law, P.C,
                                            Tel: 818-646-8990
                                            mario@thebulldog.law
                                            Philip R. Berwish, Esq.
                                            Berwish Law
                                            2 Anderson Lane
                                            Princeton, NJ 08540
                                            Telephone: (800) 547-8717
                                            berwish@gmail.com
                                            *Attorney for Plaintiffs*