**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOEL HEABEART, *et al.*,

                                        Plaintiffs,

                vs.

COINBASE, INC., *et al.*,

                                        Defendants.

1:25-cv-09197(JSR)(SN)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

Randall Scott Luskey (admitted *pro hac vice*)
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000

*Attorneys for Defendants Coinbase, Inc., Coinbase*
*Global, Inc. and Brian Armstrong*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     THE PARTIES FORMED AN AGREEMENT TO ARBITRATE ................................... 3

III.    THE PARTIES' ARBITRATION AGREEMENT IS ENFORCEABLE ......................... 5

        A.      The Parties' Arbitration Agreement Is The Product of Fair Dealing ..................... 6

        B.      The Parties' Arbitration Agreement Is Not Unfairly One-Sided ........................... 8

        C.      Under the 2022 Agreement, Questions About Enforceability Are
                Arbitrable ............................................................................................................. 9

IV.     PLAINTIFFS' CLAIMS ARE ARBITRABLE .............................................................. 9

V.      THE COURT SHOULD STAY PLAINTIFFS' ARBITRABLE CLAIMS ..................... 10

VI.     CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benihana, Inc.* v. *Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015)..................................................................................................10

*Bielski* v. *Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ...............................................................................................7

*Buckeye Check Cashing, Inc.* v. *Cardegna*,
    546 U.S. 440 (2006)..............................................................................................................5

*Centro Empresarial Cempresa S.A.* v. *América Móvil, S.A.B. de C.V.*,
    17 N.Y.3d 269 (2011) ...........................................................................................................5

*Coinbase* v. *Suski*,
    602 U.S. 143 (2024)..............................................................................................................4

*Cordero* v. *Coinbase, Inc.*,
    2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) ................................................... *passim*

*Curtis* v. *JPMorgan Chase Bank, N.A.*,
    2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ................................................................5, 6, 7

*Donovan* v. *Coinbase Glob., Inc.*,
    649 F. Supp. 3d 946 (N.D. Cal. 2023) ............................................................... 5-6, 9

*Green Tree Fin. Corp.* v. *Randolph*,
    531 U.S. 79 (2000)................................................................................................................5

*Guerrero* v. *GoPuff*,
    2025 WL 3539105 (S.D.N.Y. Dec. 10, 2025) ................................................................2, 5

*Kamath* v. *Coinbase, Inc.*,
    2024 WL 950163 (N.D. Cal. Mar. 5, 2024)......................................................................2, 4

*Katz* v. *Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)................................................................................................10

*Olsen* v. *Charter Commc'ns, Inc.*,
    2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019).......................................................................4

*Pearl* v. *Coinbase Glob., Inc.*,
    2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) .......................................................................6

*Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ................................................................................................5

*Reznik* v. *Coinbase, Inc.*,
  2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) ................................................5, 6, 8

*Shearson/Am. Express, Inc.* v. *McMahon*,
  482 U.S. 220 (1987) .............................................................................................5, 10

*Silkiss* v. *Lee*,
  2018 WL 11471621 (N.D. Cal. Nov. 19, 2018) ......................................................9

*Smith* v. *Spizzirri*,
  601 U.S. 472 (2024) ................................................................................................10

*Sphere Drake Ins. Ltd.* v. *Clarendon Nat'l Ins. Co.*,
  263 F.3d 26 (2d Cir. 2001) ......................................................................................5

*Wall St. Assocs., L.P.* v. *Becker Paribas, Inc.*,
  818 F. Supp. 679 (S.D.N.Y. 1993) .........................................................................3

*Warren* v. *eBay Inc.*,
  2024 WL 662594 (S.D.N.Y. Jan. 8, 2024) .............................................................10

*Ziboukh* v. *Whaleco, Inc.*,
  795 F. Supp. 3d 349 (E.D.N.Y. 2025) ....................................................................9

*Zimmerman* v. *UBS AG*,
  2018 WL 4054860 (S.D.N.Y. 2018) .......................................................................10

**Statutes**

9 U.S.C. § 3 ...................................................................................................................10

## I.    INTRODUCTION

Defendants' motion to compel arbitration should be granted because the undisputed evidence shows that the Parties entered into an arbitration agreement and Plaintiffs have not carried their burden to show that agreement is unenforceable.  To the contrary, the record confirms that each Plaintiff accepted the Coinbase User Agreement, which includes an arbitration agreement that is fully enforceable and applicable in this case.

***The Parties formed an agreement to arbitrate.***  There is no dispute that Plaintiffs each accepted the Coinbase User Agreement, which contains an arbitration agreement.  Plaintiffs alleged in their Amended Complaint that "Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set forth in Coinbase's User Agreement."  AC ¶ 69.[1] The transferor court in the Northern District of California granted Coinbase's motion to transfer the case to this Court because it concluded, based on the undisputed evidence, that Plaintiffs each "accept[ed] the May 15, 2025 [U]ser [A]greement."  Luskey Decl. (ECF No. 82), Ex. 3 at 4:15– 5:19, 6:10–9:9.  That ruling is law of the case.  MTCA Br. 8–11.  Plaintiffs do not contest the basis for the transferor court's ruling or make any argument why that ruling should not be considered law of the case.  Indeed, Plaintiffs do not address the transferor court's ruling on contract formation at all.  Nor do Plaintiffs provide any evidence to contradict or rebut the facts proving assent on which the transferor court relied.  *See* MTCA Br. 3–5.  Those undisputed facts show that each Plaintiff agreed to the 2022 version of the User Agreement through a classic clickwrap process that courts have repeatedly found sufficient to show the formation of an agreement to arbitrate. *Cordero* v. *Coinbase, Inc.*, 2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025) (collecting cases).

---

[1]    Capitalized, defined, and abbreviated terms have the same meaning as in Defendants' Motion to Compel Arbitration and Stay Proceedings (ECF No. 84) ("MTCA Br.").

Coinbase then sent each Plaintiff an email in April 2025 advising that Coinbase was updating the terms of the User Agreement, and each Plaintiff thereafter continued using Coinbase's services. "The email and [Plaintiffs'] continued use of Coinbase's services" are "enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement, as the transferor court recognized. *Kamath* v. *Coinbase, Inc.*, 2024 WL 950163, at \*4 (N.D. Cal. Mar. 5, 2024) (analyzing 2022 User Agreement update); Luskey Decl., Ex. 3 at 4:15–5:19.

Instead of contesting contract formation, Plaintiffs assert that "this Court must determine which agreement controls before arbitration can be compelled." Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings 7 (ECF No. 88) ("MTCA Opp."). That argument fails because Plaintiffs identify no other agreement apart from the 2025 User Agreement that applies here. Alternatively, Plaintiffs assert that their assent to the 2025 User Agreement is invalid because it was "induced by fraud." *Id.* at 7, 8, 10. That argument fails because Plaintiffs assert—without any evidence—that Coinbase made alleged misrepresentations about **WLUNA**; they have not, however, "demonstrate[d] that the arbitration provision was induced by fraud" based on "particularized facts specific to the **arbitration clause**." *Guerrero* v. *GoPuff*, 2025 WL 3539105, at \*13 (S.D.N.Y. Dec. 10, 2025) (quotation omitted and emphasis added). Plaintiffs do not argue that Coinbase made any misrepresentation about the terms of the arbitration agreement, and have submitted no evidence that could support such a theory.

***The Parties' arbitration agreement is enforceable.*** Plaintiffs have not carried their burden to show that the Parties' arbitration agreement is unenforceable. Plaintiffs argue the agreement is procedurally unconscionable and unenforceable because it was offered "on a take-it-or-leave-it basis." MTCA Opp. 5, 9. That argument "does not give rise to procedural unconscionability because Coinbase users were not beholden to the website nor forced to accept its terms." *Cordero*,

2025 WL 2223495, at *7.  Plaintiffs alternatively argue that the arbitration agreement is substantively unconscionable because it allows Coinbase to modify the terms of the agreement unilaterally, includes a batch arbitration provision, and provides for fee-shifting.  MTCA Opp. 9–10.  Courts have rejected each of those arguments, too.  *See Cordero*, 2025 WL 2223495, at *5 (explaining that similar batching provision contains none of "the problematic attributes" of other mass arbitration provisions); *id.*, at *7 & n.3 (rejecting challenge to unilateral modification provision); *id.*, at *8 (rejecting challenge to fee shifting).

***Plaintiffs' claims are arbitrable.***  Plaintiffs do not dispute that Counts III through VIII of the Amended Complaint fall within the scope of the arbitration clause in the 2025 User Agreement; they make no argument whatsoever on this point.

In short, there is no dispute that the Parties formed an arbitration agreement, Plaintiffs' claims fall within the scope of that agreement, and the agreement is fully enforceable. Accordingly, Defendants' motion to compel arbitration should be granted.

## II.  THE PARTIES FORMED AN AGREEMENT TO ARBITRATE

There is no dispute that each Plaintiff agreed to the 2022 and 2025 Coinbase User Agreements, each of which contains a binding arbitration provision.  MTCA Br. 3–6.

In granting Defendants' motion to transfer, the transferor court squarely held that Plaintiffs agreed to the 2025 User Agreement.  Luskey Decl., Ex. 3 at 4:15–5:19, 6:10–9:9.  That ruling is the law of the case.  MTCA Br. 8–11.  Plaintiffs do not discuss the transferor court's ruling on contract formation, and provide no "cogent or compelling reasons" to revisit the transferor court's holding.  *Wall St. Assocs., L.P.* v. *Becker Paribas, Inc.*, 818 F. Supp. 679, 683 (S.D.N.Y. 1993).

The transferor court's ruling settles the question of contract formation.  But even without that decision, it is clear that the Parties agreed to arbitrate.  Each Plaintiff agreed to the 2022 User Agreement by affirmatively clicking a button or clicking a checkbox indicating assent after being

presented with a pop-up window containing the contract terms or a link to the contract terms. Totkov Decl. (ECF No. 83) ¶¶ 23–38.  The 2022 User Agreement, like prior versions, informed users that Coinbase could modify the terms of the agreement and that continued use of the Coinbase platform would constitute acceptance of the updated terms.  *Id.*, Ex. 14, Preamble, "Amendment of these Terms."  The undisputed evidence shows that, between April 9 and April 12, 2025, Coinbase sent each Plaintiff an email providing notice of the User Agreement update and providing a link to the updated terms.  Totkov Decl. ¶¶ 40–54.  Each Plaintiff continued to use Coinbase's platform after the updated User Agreement took effect.  *Id.* at ¶¶ 56–66.  Plaintiffs have no evidence to rebut these facts, and do not distinguish any of the cases Defendants cited in their opening brief showing that Coinbase's email and Plaintiffs' continued use constitutes assent to the 2025 User Agreement.  MTCA Br. 12–13; *Kamath*, 2024 WL 950163, at *4; *see also Olsen* v. *Charter Commc'ns, Inc.*, 2019 WL 3779190, at *6 (S.D.N.Y. Aug. 9, 2019).

Instead of disputing assent to the User Agreement, Plaintiffs assert that their claims are "governed not by a single agreement, but by a series of overlapping user agreements, asset-specific representations, promotional rules, and platform disclosures."  MTCA Opp. 6.  They argue under *Coinbase* v. *Suski*, 602 U.S. 143 (2024), that the Court "must decide which contract governs where multiple agreements contain conflicting dispute-resolution provisions."  MTCA Opp. 4, 7.  *Suski* has no application here, because Plaintiffs never explain what other contracts they are referring to or how their terms purportedly conflict with the arbitration agreement in the User Agreement.

Plaintiffs alternatively argue their assent was induced by fraud because Coinbase "mischaracterized and obscured the true nature of Plaintiffs' holdings" in WLUNA.  MTCA Opp. 7–8, 10.  Plaintiffs' fraudulent inducement argument is contradicted by their allegation that "Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the terms of which are set

forth in Coinbase's User Agreement." AC ¶ 69. They also cannot meet the standard for fraudulent inducement because they have not "demonstrate[d] that the arbitration provision was induced by fraud" through "particularized facts specific to the arbitration clause." *GoPuff*, 2025 WL 3539105, at *13 (quotation omitted). Plaintiffs submit no evidence, and make no argument, as to any misleading statement Coinbase made about the *arbitration agreement*, as opposed to *WLUNA*.[2]

## III. THE PARTIES' ARBITRATION AGREEMENT IS ENFORCEABLE

The Parties' arbitration agreement is presumptively valid and enforceable, *see Shearson/Am. Express, Inc.* v. *McMahon*, 482 U.S. 220, 226–27 (1987), and Plaintiffs bear the burden to show otherwise, *Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 91–92 (2000).

An arbitration agreement is unenforceable only if it is both procedurally and substantively unconscionable. *Reznik* v. *Coinbase, Inc.*, 2024 WL 1055002, at *4 (S.D.N.Y. Mar. 11, 2024) ("Under California law, a finding of unconscionability requires a procedural and a substantive element." (cleaned up)); *Curtis* v. *JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *4 (S.D.N.Y. Jan. 25, 2024) (same under New York law). The two forms of unconscionability work as a "sliding scale" and "[t]he ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* (citation omitted); *see also Donovan* v. *Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 952 (N.D. Cal.

---

[2]    Plaintiffs' cited cases (MTCA Opp. 10) confirm that a plaintiff must show fraud related specifically to the making of the arbitration clause. *See Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (valid arbitration clause precludes consideration of "claims of fraud in the inducement of the contract generally"); *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 446 (2006) ("[B]ecause respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable[.]"); *Sphere Drake Ins. Ltd.* v. *Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31–32 (2d Cir. 2001) ("[U]nder *Prima Paint*, a party is not entitled to a trial on the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable and provides some evidence in support of its allegation."); *see also Centro Empresarial Cempresa S.A.* v. *América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276–77 (2011) (discussing rules for release of fraud claims; not arbitration).

2023) ("The party resisting arbitration bears the burden of demonstrating unconscionability." (citation omitted)).  Plaintiffs have not carried their burden.

### A.    The Parties' Arbitration Agreement Is The Product of Fair Dealing

Procedural unconscionability focuses on the elements of oppression and surprise.  *Reznik*, 2024 WL 1055002, at *4 (finding of unconscionability requires "focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results" (citation omitted)).

Plaintiffs argue the Coinbase User Agreement is procedurally unconscionable and unenforceable because it was offered "on a take-it-or-leave-it basis."  MTCA Opp. 5, 9.  That argument fails because Coinbase was not the only option available to consumers interested in trading digital assets.  *Pearl* v. *Coinbase Glob., Inc.*, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023) (explaining that "nothing in the record suggests that Coinbase was Plaintiffs' only option for cryptocurrency services" (cleaned up)).  The facts here simply "do[] not give rise to procedural unconscionability because Coinbase users were not beholden to the website nor forced to accept its terms."  *Cordero*, 2025 WL 2223495, at *7; *Curtis*, 2024 WL 283474, at *5 ("While Plaintiffs were offered the agreements on a 'take-it-or-leave-it' basis, this is insufficient in itself to render an arbitration agreement procedurally unconscionable.").  In an attempt to show otherwise, Plaintiffs assert "their assets were frozen and withdrawals blocked," MTCA Opp. 9, but they submit no evidence supporting that claim.  The only evidence in the record on this issue shows that Coinbase offers users the option to "transfer assets in their Coinbase account to a different platform" if they do not wish to accept Coinbase's User Agreement.  *See* Totkov Decl. ¶ 23(c) (discussing 2022 User Agreement update).

Plaintiffs alternatively argue that "arbitration provisions were buried in a lengthy update and did not clearly disclose that Plaintiffs were forfeiting the right to pursue existing claims."

MTCA Opp. 9.  Plaintiffs have not "forfeited" the right to pursue their claims; they simply agreed to arbitrate those claims.  In any event, the Ninth Circuit has held that a similar version of the Coinbase arbitration agreement is "clearly presented," and "written in plain language and in a legible-sized font."  *Bielski* v. *Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023).  The arbitration agreement in the 2025 User Agreement is equally clear and fairly presented.[3]  *Curtis*, 2024 WL 283474, at *5 (under New York or California law, arbitration clauses at issue not unconscionable where presented in all-caps under bold headers).  And Coinbase's email announcing the 2025 User Agreement specifically explained that the arbitration agreement was being updated.  Totkov Decl. ¶¶ 42–54; Ex. 16.  There was no unfair surprise here.

Finally, Plaintiffs suggest that Coinbase had a "procedural advantage" because it purportedly is "a custodial securities intermediary" pursuant to "Article 8 of the Uniform Commercial Code," and "exercised unilateral control over Plaintiffs' accounts, blocked withdrawals, and dictated the terms under which assets could be accessed."  MTCA Opp. 9.  Plaintiffs cite no evidence or case law in support of this argument.  To the extent they mean to suggest that Coinbase extracted assent to arbitration by "holding hostage" their digital assets, the evidence shows otherwise.  As discussed above, Coinbase users who did not wish to agree to arbitration updates can take their assets to a different platform.  *See* Totkov Decl. ¶ 23.  And courts have rejected the argument that Coinbase's arbitration agreements are procedurally unconscionable because "Coinbase users were not beholden to the website nor forced to accept its terms."  *Cordero*, 2025 WL 2223495, at *7.

---

[3]    The User Agreement in its first paragraphs immediately alerts users in all-caps, bolded text that Appendix 5 "**INCLUDES AN AGREEMENT TO ARBITRATE**" and urges users to "**READ…CAREFULLY.**"  Totkov Decl., Ex. 15, Preamble, "Dispute Resolution."  Similarly, "**APPENDIX 5: DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT…)**" is a clear label and easy to identify.  *Id.* at Appendix 5.

### B.    The Parties' Arbitration Agreement Is Not Unfairly One-Sided

Under California law, an agreement is substantively unconscionable only if its terms are so "overly harsh or one-sided that they shock the conscience." *Cordero*, 2025 WL 2223495, at *7 (cleaned up); *Reznik*, 2024 WL 1055002, at *4.  This is a high bar that Plaintiffs cannot clear.

Plaintiffs first argue the agreement is unconscionable because it allows "unilateral modification." MTCA Opp. 9.  That is wrong as a matter of fact and law.  Coinbase may amend or modify the User Agreement by posting the revised agreement or providing a copy, but Plaintiffs can choose to assent by continuing to use Coinbase's services or choose to take their business elsewhere.  And Plaintiffs make no argument that Coinbase modified the User Agreement in an unfair, much less unconscionable, manner.   There is no unconscionability under those circumstances.  *See Cordero*, 2025 WL 2223495, at *7 & n.3 (rejecting challenge to modification provision where there was no indication that provision was used unfairly and explaining that Coinbase users retain the option to reject modifications by taking business elsewhere).

Plaintiffs next argue the agreement's batch arbitration provisions render it unconscionable.  The batch arbitration provision is not triggered here, because there are fewer than 25 plaintiffs.  *See* Totkov Decl., Ex. 15 at Appendix 5, "Batch Arbitration."  But this argument also fails on the merits.  As one court analyzing the batching provision in the 2022 User Agreement explained, Coinbase's batching mechanism contains none of "the problematic attributes" of other mass arbitration provisions because it does not employ a "bellwether" system that binds absent parties, but instead streamlines the process by providing for consolidated batches of bilateral individual arbitrations. *Cordero*, 2025 WL 2223495, at *5.  The batch arbitration provision in the 2025 User Agreement employs the same mechanism.

Finally, Plaintiffs argue the arbitration agreement's fee shifting provisions are unconscionable.  Plaintiffs cite no case law in support of this argument, and New York and

- 8 -

California courts hold that bilateral fee shifting provisions in arbitration agreements are not unconscionable. *Ziboukh* v. *Whaleco, Inc.*, 795 F. Supp. 3d 349, 394-95 (E.D.N.Y. 2025) (collecting cases); *Silkiss* v. *Lee*, 2018 WL 11471621, at *7 (N.D. Cal. Nov. 19, 2018) ("[I]t is not substantively unconscionable to award attorneys' fees to the prevailing party in arbitration, where the attorneys' fees clause applies to both parties, as here."). The provision in the Coinbase agreement is bilateral, and applies only if an arbitrator determines a dispute is frivolous or brought for an improper purpose, or if a party is required to move in court to compel arbitration or prove that conditions precedent to arbitration have been satisfied. Totkov Decl., Ex. 15, Appendix 5, "Attorneys' Fees and Costs." Awarding prevailing party fees on a bilateral basis in those narrow circumstances is not unconscionable. *See Donovan*, 649 F. Supp. at 954.

### C. Under the 2022 Agreement, Questions About Enforceability Are Arbitrable

If the Court concludes that the 2022 User Agreement applies to Plaintiffs' claims, then disputes about the enforceability of the arbitration agreement are delegated to the arbitrator. The 2022 arbitration agreement contains a clear delegation provision that has been repeatedly and uniformly enforced. MTCA Br. 17 (collecting cases). Plaintiffs do not discuss the delegation provision in the 2022 agreement or argue that it is unenforceable.

## IV. PLAINTIFFS' CLAIMS ARE ARBITRABLE

Plaintiffs do not dispute that Counts III through VIII in the Amended Complaint fall within the scope of the arbitration agreement in the 2025 User Agreement, or that questions of scope are delegated to the arbitrator under the 2022 User Agreement.

Plaintiffs instead argue that "forward-looking injunctive and equitable relief" claims cannot be arbitrated. MTCA Opp. 5. But the Amended Complaint does not ask for any specific injunctive relief; Plaintiffs seek only damages for injuries they allegedly suffered, *see* AC, Prayer for Relief, and have previously represented they are pursuing "personal claims for losses." ECF

No. 66 at 10:10–11; ECF No. 41 at 10:5–6 (same).  Plaintiffs similarly argue their RICO and federal securities claims weigh "strongly in favor of federal judicial oversight[.]"  MTCA Opp. 10. But civil RICO claims are arbitrable, *McMahon*, 482 U.S. at 238–42; *Warren* v. *eBay Inc.*, 2024 WL 662594, at *4, *8 (S.D.N.Y. Jan. 8, 2024), and Plaintiffs' securities claims are exempt from arbitration under the 2025 User Agreement, a point Plaintiffs concede.  MTCA Opp. 8.

## V.    THE COURT SHOULD STAY PLAINTIFFS' ARBITRABLE CLAIMS

Plaintiffs do not dispute that the FAA requires courts to stay arbitrable claims.  9 U.S.C. § 3; *Smith* v. *Spizzirri*, 601 U.S. 472, 475–76 (2024).  Here, the Court can and should stay the arbitrable claims pending the completion of arbitration while deciding any claims that are not subject to arbitration.  *See, e.g.*, *Zimmerman* v. *UBS AG*, 2018 WL 4054860, at *6 (S.D.N.Y. 2018) (dismissing securities claims, referring remainder to arbitration and then staying action).[4]

## VI.    CONCLUSION

Defendants' motion to compel arbitration and stay proceedings should be granted.

---

[4]    Plaintiffs' cited cases do not hold otherwise.  *Katz* v. *Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015), confirms that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."  And *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015), is irrelevant, concerning preliminary relief prior to arbitration.

Dated:    February 13, 2026

<div style="margin-left:50%">

PAUL, WEISS, RIFKIND, WHARTON & 
  GARRISON LLP

By:    */s/ Randall Scott Luskey*

Randall Scott Luskey (admitted *pro hac vice*)

535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5100
rluskey@paulweiss.com

Paul D. Brachman
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
pbrachman@paulweiss.com

Kristina A. Bunting
Michael J. Pisem
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
kbunting@paulweiss.com
mpisem@paulweiss.com

*Attorneys for Defendants Coinbase, Inc.,
  Coinbase Global, Inc. and Brian Armstrong*

</div>

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1.  I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,212 words.

/s/ Randall Scott Luskey
Randall Scott Luskey